IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOUREY NEWELL, individually and on behalf of a class of all persons and entities similarly situated,<br><br>    Plaintiff<br><br>vs.<br><br>LENDVIA LLC<br><br>    Defendant. | Case No. 25-1018 |

**CLASS ACTION COMPLAINT**

**Preliminary Statement**

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. However, the TCPA doesn't only restrict robocalls.

3. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices,

Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id…*This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5. Plaintiff Jourey Newell ("Plaintiff") brings this action under the TCPA alleging that LendVia LLC called the Plaintiff, whose number is on the National Do Not Call Registry,

including some calls which utilized highly-illegal prerecorded messages. Those calls were made without the call recipient's prior express written consent.

6. Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing calls.

7. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

8. Plaintiff Jourey Newell is a person.

9. Defendant LendVia LLC is a company that sells various sorts of personal loans, including debt consolidation loans.

## Jurisdiction & Venue

10. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

11. This Court has general personal jurisdiction over Defendant LendVia LLC, because it has registered to do business in Pennsylvania, thereby consenting to the exercise of general personal jurisdiction in Pennsylvania.

12. Venue is proper under 28 U.S.C. § 1391(b)(1) because the Defendant is a resident of this State.

## The Telephone Consumer Protection Act

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

14. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

16. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Prerecorded Calls to Cell Phones

17. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

18. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service, specialized mobile radio service, or other

radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A).

19.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

20.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

21.     Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services for which the called party is charged, thus shifting the cost of automated or prerecorded messages onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

22.     This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6 (E.D. Pa. July 15, 2021).

23.     "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of

the called party." This includes calls made using artificial or prerecorded voices pitching services. *See* FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

24. Non-consensual, non-emergency calls placed using an ATDS or an artificial or prerecorded voice violate 47 U.S.C. § 227(b)(1)(A), regardless of the purpose of the call. *Victory Phones*, 2021 WL 3007258, at *6 (rejecting claim that noncommercial survey calls were exempt and holding that "[T]he operative language of the TCPA is unambiguous. Section 227(b)(1)(A) prohibits placing artificial and prerecorded voice calls to a variety of telephone numbers."). To hold otherwise would read the words "any person" and "any call" out of the statute. *See id.*

### Factual Allegations

25. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

26. Defendant LendVia LLC is a seller of various loan products.

27. To generate business, LendVia places illegal telemarketing calls to numbers on the National Do Not Call Registry, including using highly-illegal prerecorded messages.

28. Mr. Newell's cellular telephone number, (484) XXX-XXX, is a non-commercial telephone number.

29. The number is a residential telephone line because it is assigned to a residential cellular telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

30. Mr. Newell uses the number for personal, residential, and household reasons.

31. Mr. Newell's telephone number has been listed on the National Do Not Call Registry since he personally registered it there for over a year prior to the calls at issue.

32. Plaintiff has never been a customer of LendVia, never did business with LendVia, nor asked or inquired to be a customer of LendVia.

33. Plaintiff never consented to receive calls or text messages from LendVia

34. Despite that, starting on December 10, 2024, and continuing through the *very day of filing of this Complaint*, the Plaintiff received at least nineteen calls from the Defendant from various caller IDs, including "spoofed" or non-existent numbers, including 502-761-6776, 701-807-6328, 502-798-3996, 775-218-6284, 970-307-8970, 401-324-3185, 405-281-4326, 206-415-1215, 645-203-9949, 216-425-2516, 475-376-1667, 835-251-7806, 480-679-1398, 216-497-3214, 917-516-5374, 475-376-6690, and 502-798-9985.

35. The calls all played the same substantially similar message and encouraged the called party to call a toll free number back, in each instance either 877-867-5139 or 855-356-2569. For example, one of the messages stated:

> Hi! This is Jessica from the loan approval team. I'm calling regarding your loan inquiry. We're almost finished processing your loan, but we need to verify a few details, specifically about your income. Please return my call at 877-867-5139, ideally before 5 p.m. Pacific Time today. When you call, mention your application ID. A as in Apple, H as in Hotel, Z as in Zebra, 34578. Again, that is A as in Apple, H as in Hotel, Z as in Zebra, 34578.My number is 877-867-5139, and your application ID, once again, is AHZ34578. I'm looking forward to getting this wrapped up for you. Talk soon. Thank you.

36. The same voice, "Jessica," left several identical messages on several occasions, for example the following message, which contained the same cadence, tone, and length, as well as a clearly audible distortion at the point indicated:

7

> Hey there, this is Jessica again from your loan processing team. I've been trying to reach out to you regarding your loan application, but we haven't been able to connect yet. We just need to verify a few final details, mostly related to your income and a few other minor items just to complete your approval. Could you please return my call at 877-867-5139? It would be ideal if we could finalize this before 5 p.m. Pacific time today. [audible distortion] However, if you've changed your mind, would like to cancel your application, or no longer wish to proceed, please feel free to let us know as well. When you give us a call back, make sure to mention your application ID just for a faster process. Your application ID is A as in Apple, H as in Hotel, Z as in Zebra, 3-4-5-7-8. Once again, that number is A as in Apple, H as in Hotel, Z as in Zebra, 3-4-5-7-8. And also, just a reminder, my number is 877-867-5139. I'm looking forward to hearing from you soon. Thank you so much, and have a wonderful day.

37.  One of the calls was placed on January 29, 2025 from the caller ID 206-415-1215 and played a similar message to the one voiced by "Jessica:"

> Hi, this is a courtesy follow-up regarding your eligibility for an economic relief loan. Based on your updated credit profile, you may qualify for a consolidation loan designed to assist families struggling with high-interest credit card debt. This program offers rates starting as low as 6.99%, making it easier to simplify your payments and reduce financial stress. Please call us back at 855-356-2569 to speak directly with underwriting about your options. Our team is available Monday through Friday, 7 a.m. PST to 6 p.m. PST, and Saturdays, 8 a.m. PST to 2 p.m. PST. Again, that's 855-356-2569. We look forward to helping you achieve financial relief. Thank you for your time.

38.  The Plaintiff also received two of the following identical recorded messages on February 10 and 11, 2025 from the caller ID 835-251-7806, 480-679-1398:

> Hello, this is an update from Community Lending Union. We've been trying to reach you regarding your pending pre-approval for a personal loan or line of credit. You are pre-qualified for a loan up to $65,000 based on your credit profile and current economic situation. This loan could help you consolidate high-interest debt or lower your monthly payments into a single, more manageable and affordable payment, with rates starting as

```
low as 6.99%. To review your options and finalize your approval, please
call us back at 855-356-2569 as soon as possible. Our underwriting team
is available Monday through Friday from 7 a.m. to 6 p.m. and Saturdays
from 8 a.m. to 3 p.m. Again, that's 855-356-2569. Please note, this
offer expires at the end of February and is available for a limited
time. We look forward to assisting you.
```

39. In order to ascertain the identity of the caller behind these aforementioned calls that was calling him illegally, the Plaintiff called the 855-356-2569 number back, as the message instructed, and was connected to an individual named Kevin Parsons, who is a Loan Specialist at LendVia. Mr. Parsons attempted to sell Mr. Newell on LendVia's debt consolidation loan products, and that sales pitch culminated in the Plaintiff requesting an email from Mr. Parsons to verify that he worked for LendVia, which Mr. Parsons sent:

All of the information that you requested is below, Jourey.

Better Business Bureau Page

--

**Kevin Parsons | Lendvia**
Loan Specialist
(949) 606-7447    (800) 216-5799
kparsons@lendvia.com
www.lendvia.com
2525 Main St Suite 420, Irvine, CA 92614

LENDVIA

Google    ★Trustpilot ★★★★★

CONFIDENTIALITY NOTICE: This e-mail transmission and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or if you are not responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. For legal advice, please consult with an attorney. For tax advice, please consult with an accountant.

40. Mr. Newell also connected the tranche of calls with the 877-867-5139 number to LendVia as well. By the time that Mr. Newell began his investigative process in February of this year, the 877-867-5139 number had been disconnected, as confirmed by telephone company records. However, one of the few caller IDs that was not spoofed and which provided the 877-867-5139 number, 701-807-6328, when called back, resulted in the Plaintiff getting connected to another employee, Jonathan, at LendVia, who also sent the Plaintiff an email.

9

41. Thereafter, on February 13, 2025, the Plantiff requested that LendVia place the Plaintiff's number on its internal Do Not Call list, which such request was personally acknowledged by Kevin Parsons:

> No problem Jourey.
>
> If I may ask, what changed your mind?
>
> Before you mentioned you were looking for a loan and interested in doing business with us so I am just curious why the sudden change of heart?
>
> On Thu, Feb 13, 2025 at 8:59 AM Jourey Newell <elom227@gmail.com> wrote:
>> Good morning,
>>
>> I am hereby requesting to be placed on your company's internal Do not call list.
>>
>> Sincerely,
>>
>> Jourey Newell
>>
>> (484) 213-4132
>
> --
> 
> **Kevin Parsons | Lendvia**
> Loan Specialist
> 📞(949) 606-7447  ☎ (800) 216-5799
> ✉kparsons@lendvia.com
> 🌐www.lendvia.com
> 📍2525 Main St Suite 420, Irvine, CA 92614
>
> LENDVIA
>
>    

42. The calls continued and continue to accrue through the filing of this Complaint, despite this opt-out and confirmation of the same. For example, on Valentine's Day, February 14, 2025, the Plaintiff received the following call from the "spoofed" caller ID 262-464-0112, which such message repeated twice:

> Hello. This is an update from Community Lending Union. We've been trying to reach you regarding your pending preapproval for a personal loan or line of credit up to $65,000. To speak with an underwriting specialist now, press 1 to be connected to underwriting. We just need to verify a few details to finalize your approval. Based on your credit profile and current economic situation, this loan option could help you

```
consolidate high interest debt or lower your monthly payment into a
single, more manageable and affordable payment with rates starting as
low as 6.99%. If you are no longer interested in loan options and wish
to be removed from our contact list, press 9. Please note, a live
representative or underwriting specialist cannot assist with opt out or
DNC requests. You must press 9 to be removed. Please note, this offer
expires at the end of February and is available for a limited time.
Press 1 now to be connected with underwriting.
```

43. The Plaintiff received identical messages on February 19, 2025 from the "spoofed" Caller ID 475-376-4935 and February 21, 2025 from the caller ID 913-372-7229.

44. The Plaintiff continues to receive calls, including through the filing of this complaint, and despite the aforementioned requests not to call, including from 475-376-6690 on February 24, 2025 and from 502-798-9985 with substantially similar language to the February 14 and 19 calls, and same non-compliant opt-out instructions.

45. The Plaintiff never provided his consent to receive any of the aforementioned calls, nor requested to receive any information for loans, as the Plaintiff has no need for such loans.

46. In fact, as described above, the Plaintiff explicitly revoked any purported consent to receive calls from the Defendant, but the calls continued.

47. The Defendant had the ability to immediately honor Plaintiff's do not call requests, including by confirming that they did, but they did not. Instead, they continued to harass the Plaintiff for daring to make such a request.

48. Upon information and belief, Defendant uses bogus, fake names like "Community Lending Union" and references to fake "application IDs" to inject urgency and confusion into the calls so that customers are more likely to call the numbers on the prerecorded messages back, where LendVia's employees like Kevin and Jonathan then make sales pitches.

11

49. Moreover, it would be illogical for a legitimate company, let alone one who thought it had obtained legally requisite consent to contact potentially interested customers, to use fake names on the highly-illegal prerecorded calls like "Community Lending Union" or engage in the highly illegal and completely unjustifiable practice of caller ID spoofing various random telephone numbers to telephone numbers which do not even exist. These actions further demonstrate that the calls were placed without consent.

50. LendVia has a serious compliance problem, and this is not the only case in which LendVia has been accused of violating the TCPA.

51. The aforementioned calls were all placed using and beginning with prerecorded voices because: (a) the various voices sounded as if they were scripted and recorded in advance with a professional voice actor, (b) the voices sometimes delivered identical messages, as if they were playing back a recording, (c) the voices had no ability to engage in dialogue, (d) it would be illogical for a human to call someone and ask them to press touch tones or call a different number, let alone have the ability to interpret those touch tones or just speak with the person directly, and, (e) when the Plaintiff called the numbers back, as outlined above, the Plaintiff spoke to two LendVia employees who were obviously human.

52. The aforementioned calls to the Plaintiff were unwanted.

53. The calls were nonconsensual encounters.

54. Plaintiff's privacy has been violated by the above-described telemarketing calls.

55. Plaintiff never provided his consent or requested the calls.

56. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded. They were not provided

legally compliant opt out mechanisms. Furthermore, the calls unnecessarily used battery life, storage space, bandwidth, and wear and tear.

57. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

**Class Action Statement**

58. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

59. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

60. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**Robocall Class:** All persons in the United States who, (1) within four years prior to the commencement of this litigation until the class is certified (2) received one or more calls on their cellular telephone or any other protected telephone service (3) from or on behalf of LendVia, (4) sent using the same, or substantially similar, pre-recorded message used to contact the Plaintiff.

**National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call, text message, or combination thereof, from Defendant or a third party acting on Defendant's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

**Internal Do Not Call Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls in a 12-month period, (3) who were not current customers of the Defendant at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

61. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the Class members.

13

62. Excluded from the Classes are counsel, Defendant, and any entities in which Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

63. Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

64. This Class Action Complaint seeks injunctive relief and money damages.

65. The Class as defined above, are identifiable through Defendant's dialer records, other phone records, and phone number databases.

66. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

67. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

68. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

69. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

70. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

    a. Whether Defendant made multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

      b.       Whether Defendant made calls using artificial or prerecorded voices to Plaintiff and members of the Robocall Class;

      c.       Whether Defendant's conduct constitutes a violation of the TCPA; and

      d.       Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

71. Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

72. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

73. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or its agents.

74. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

75. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION

**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(b)(1)(A)(iii)) on behalf of the Robocall Class**

76. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

77. The Defendant violated the TCPA by sending or causing to be sent calls to the cellular telephones and other protected telephones of Plaintiff and members of the Robocall Class using a pre-recorded messages without their prior express written consent.

78. As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

79. The Plaintiff and Robocall Class members are entitled to an award of treble damages if the Defendant's actions are found to have been knowing or willful.

80. Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Defendant from using a pre-recorded voice in the future, except for emergency purposes.

## SECOND CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

81. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

82. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227. by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

83. Defendant's violations were negligent, willful, or knowing.

84. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

85. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

### THIRD CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act
(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(d) on behalf of Plaintiff and the Internal Do Not Call Registry Class)**

86. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

87. The foregoing acts and omissions of Defendant, and/or their affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf, constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop.

88. Defendant's violations were negligent, willful, or knowing.

89. As a result of Defendant's, and/or its affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf's, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled

to an award of up to $500 and in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendant from calling telephone numbers advertising their goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B. Injunctive relief prohibiting Defendant from calling telephone number who had previously asked not to be called except for emergency purposes, in the future;

C. Injunctive relief prohibiting Defendant from using artificial or prerecorded voices to contact cell phones and other protected lines, except for emergency purposes, in the future;

D. That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

F. Such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff requests a jury trial as to all claims of the complaint so triable.

RESPECTFULLY SUBMITTED AND DATED this February 26, 2025.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
E.D. Pa. Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Plaintiff and the Proposed Class*