Corey M. Scher, Esquire (Pa Bar # 326838)
Fox Rothschild LLP
2001 Market Street, Suite 1700
Philadelphia, PA 19103
Tel./Fax: (215) 299-2000/2150
cscher@foxrothschild.com

-and-

Jenniffer Cabrera (*pro hac vice pending*)
Troutman Amin LLP
1825 NW Corporate Blvd - Suite 100
Boca Raton, Florida 33431
Tel.: 561-834-0883
jenniffer@troutmanamin.com

*Attorneys for Defendant LendVia LLC*

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CASE NO. 2:25-cv-01018-GJP

**JOUREY NEWELL**, *individually and on behalf of all persons and entities similarly situated,*

      Plaintiff,

v.

**LENDVIA LLC**

      Defendant.

_____/

## DEFENDANT LENDVIA LLC'S MEMORANDUM OF LAW IN SUPPORT OF

## MOTION TO STRIKE CLASS ALLEGATIONS

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   PLAINTIFF'S FACTUAL ALLEGATIONS ................................................... 2

III.  LEGAL STANDARD ......................................................................................... 3

IV.   ARGUMENT—PLAINTIFF'S PROPOSED CLASS DEFINITIONS MUST BE STRICKEN BECAUSE THEY ARE FACIALLY UNCERTIFIABLE AS A MATTER OF LAW. ............................................................................................................ 4

    A.    The Proposed Classes Are Overly Broad As Defined. .......................... 4

        1.    *The Three Proposed Class Definitions Are Also Overly Broad Because LendVia is Not Liable for All Calls Made on Its "Behalf."* ......................... 6

        2.    *Plaintiff's Proposed "Robocall" Class and the National DNC Class Are Overly Broad Because They Includes Members That Consented To Receive Calls From LendVia.* .................................................................................. 7

        3.    *The Classes Are Overly Broad Because They Improperly Include Individuals Who Have Not Personally Registered Their Telephone Numbers On The National DNC Registry.* ............................................... 9

        4.    *The National DNC Class Definition Is Overly Broad Because It Includes Members That Have An EBR With LendVia.* .............................................11

        5.    *The Internal DNC Class Definition Is Overly Broad Because It Fails To Exclude Members Who Reconsented.* ...........................................................11

    B.    The Proposed Class Members Lack Commonality. .............................. 12

    C.    The Proposed National DNC Class And Internal DNC Class Are Uncertifiable Because They Are Not Defined On Objective Criteria And Instead Depends On Resolution of Merits Inquiries. .............................. 14

    D.    The Proposed "Robocall" Class Definition Is Unduly Vague. ............. 16

V.    CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

*A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*,
   2018 WL 488257 (N.D. Ill. Jan. 18, 2018) ................................................. 5,7,11-12

*Am. Pipe & Constr. Co. v. State of Utah*,
   414 U.S. 538 (1974) ................................................................................... 1

*Barnes v. Coca-Cola Co.*,
   2025 WL 1027431 (E.D. Cal. Apr. 7, 2025) ............................................... 5, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2006) ................................................................................... 4

*Brazil v. Dell, Inc.*,
   585 F. Supp. 2d 1158 (N.D. Cal. 2008) ...................................................... 4

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3rd 1121 (9th Cir. 2017) .................................................................. 14

*Broking v. Green Brook Buick GMG Suzuki*,
   2017 WL 3610490 (D.N.J. Aug. 22, 2017) ................................................ 15

*Brown v. Electrolux Home Products, Inc.*,
   817 F.3d 1225 (11th Cir. 2016) ................................................................. 15

*Campbell v. Wash. Cnty. Tech. Coll.*,
   219 F.3d 3 (1st Cir. 2000) ......................................................................... 9

*Campbell-Ewald Co. v. Gomez*,
   577 U.S. 153 (2016) ................................................................................... 7

*Controllable On-Site Prot. Sec. Sys., Inc. v. Telular Corp.*,
   2016 WL 11778133 (E.D. Ark. Apr. 12, 2016) .......................................... 12

*Daniel v. Five Stars Loyalty, Inc.*,
   2015 WL 7454260 (N.D. Cal. Nov. 24, 2015) ........................................... 15-16

*de Lacour v. Colgate-Palmolive Co.*,
   338 F.R.D. 324 (S.D.N.Y. 2021), lv. to app. den., No. 21-1234, 2021 WL 5443265 (2d Cir.
   Sept. 16, 2021) .......................................................................................... 14

171091083.1

*DuRocher v. Nat'l Collegiate Athletic Ass'n*,
    2015 WL 1505675 (S.D. Ind. Mar. 31, 2015) ........................................................ 5

*Ebert v. Gen. Mills, Inc.*,
    823 F.3d 472, 477-478 (8th Cir. 2016) ................................................................ 12

*Garlanger v. Verbeke*,
    223 F. Supp. 2d 596, 609 (D.N.J. 2002) .............................................................. 3

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147, 161 (1982) ...................................................................................... 12

*Hill v. Wells Fargo Bank, N.A.*,
    946 F.Supp.2d 817, 829 (N.D. Ill. 2013) .......................................................... 3-4

*In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
    18 FCC Rcd. 14014 (2003). ................................................................................ 10

*Jamison v. First Credit Servs.*,
    2013 WL 387217 (N.D. Ill. July 29, 2013) ........................................................ 8

*Kent v. SunAmerica Life Ins. Co.*,
    190 F.R.D. 271 (D.Mass.2000) ........................................................................... 16

*Klein v. Com. Energy, Inc.*,
    256 F. Supp. 3d 563 (W.D. Pa. 2017) .............................................................. 6-7

*Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*,
    571 F.3d 672 (7th Cir. 2009) ......................................................................... 4, 5, 6

*Lackawanna Chiropractic P.C. v. Tivity Health Support, LLC*,
    2019 WL 7195309 (W.D.N.Y. Aug. 29, 2019) ............................... 4-5, 9, 10, 11, 12

*Ligon v. City of New York*,
    288 F.R.D. 72 (S.D.N.Y. 2013) ......................................................................... 16

*Lucoff v. Navient Sols., LLC*,
    981 F.3d 1299 (11th Cir. 2020) ........................................................................ 11

*Manning v. Boston Med. Ctr. Corp.*,
    725 F.3d 34 (1st Cir. 2013) ................................................................................. 1

iii

*Martin v. Struthers*,
    319 U.S. 141 (1943)...................................................................................... 10

*Massaro v. Beyond Meat, Inc.*,
    2021 WL 948805 (S.D. Cal. Mar. 12, 2021) ............................................ 15

*McElhaney v. Eli Lilly & Co.*,
    93 F.R.D. 875 (D.S.D. 1982) ................................................................5, 9, 11, 12

*McInerney v. Moyer Lumber and Hardware, Inc.*,
    244 F. Supp. 2d 393 (E.D. Pa. 2002) ........................................................ 3

*Mira v. Nuclear Measurements Corp.*,
    107 F.3d 466 (7th Cir.1997)...................................................................... 14

*MSP Recovery Claims v. Plymouth Rock Assur. Corp., Inc.*,
    404 F. Supp. 3d 470 (D. Mass. 2019) ....................................................... 15

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ............................................................... 16, 17

*Perez v. Metabolife Int'l, Inc.*,
    218 F.R.D. 262 (S.D.Fla.2003)); ............................................................. 16

*PFT of Am., Inc. v. Tradewell, Inc.*,
    1999 WL 179358 (S.D.N.Y. Mar. 31, 1999) ........................................... 3

*Pilgrim v. Univ. Health Card, LLC*,
    660 F.3d 943 (6th Cir. 2011) .................................................................... 3

*Rikos v. Procter & Gamble Co.*,
    799 F.3d 497 (6th Cir. 2015) .................................................................... 14

*Rivera v. Harvest Bakery Inc.*,
    312 F.R.D. 254 (E.D.N.Y. 2016).............................................................. 5

*Rombough v. Robert D. Smith Ins. Agency, Inc.*,
    2022 WL 2713278 (N.D. Iowa June 9, 2022)...................................... 6, 9, 13

*Ruiz Torres v. Mercer Canyons Inc.*,

iv

835 F.3d 1125 (9th Cir. 2016). ....................................................................................... 6

*Saf–T–Gard Int'l, Inc. v. Wagener Equities, Inc.*,
251 F.R.D. 312 (N.D.Ill.2008) .................................................................................... 15

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,
821 F.3d 992 (8th Cir. 2016) ....................................................................................... 14

*Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*,
2014 WL 2946421 (W.D. Ky. June 30, 2014).........................................5, 9, 11, 12

*St. Louis Heart Ctr., Inc. v. Vein Centers for Excellence, Inc.*,
2017 WL 2861878 (E.D. Mo. July 5, 2017) ....................................................... 14, 15

*Ung v. Universal Acceptance Corp.*,
319 F.R.D. 537 (D. Minn. 2017)..................................................................................7-8

*Vega v. T-Mobile USA, Inc.*,
564 F.3d 1256 (11th Cir. 2009). .................................................................................. 12

*Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*,
274 F.R.D. 229 (S.D. Ill. 2011) .............................................................................4-5, 8

*W.R. ex rel. Joseph R. v. Connecticut Dep't of Child. & Fams.*,
2004 WL 2377142 (D. Conn. Sept. 30, 2004)).................................................... 16

*Walewski v. Zenimax Media, Inc.*,
502 F. App'x 857 (11th Cir. 2012) ...............................................4, 9, 10, 11, 12

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).............................................................................................. 3, 14

*Warnick v. Dish Network LLC*,
301 F.R.D. 551 (D. Colo. 2014)..................................................................................... 8

*Weister v. Vantage Point AI, LLC*,
2022 WL 3139373 (M.D. Fla. Aug. 3, 2022), motion to certify appeal denied, No. 8:21-CV-
1250-SDM-AEP, 2022 WL 7026495 (M.D. Fla. Oct. 12, 2022) ....................................... 15

*Wisdom v. Easton Diamond Sports, LLC*,

No. CV 18-4078 DSF (SSX), 2019 WL 580670 (C.D. Cal. Feb. 11, 2019), *vacated and remanded*, 824 F. App'x 537 (9th Cir. 2020) ................................................................. 3, 16

*Worsham v. TSS Consulting Grp., LLC*,
2023 WL 5016558 (M.D. Fla. Aug. 7, 2023) ......................................................... 5

*Yagman v. Allianz Ins.*,
2015 WL 5553460 (C.D. Cal. May 11, 2015) ....................................................... 4

*Young v. Nationwide Mut. Ins. Co.*,
693 F.3d 532 (6th Cir. 2012) ............................................................................... 17

### Other Authorities

47 U.S.C. 277(b) ........................................................................................................ 8

Fed. R. Civ. P. 23(c)(1)(A) ....................................................................................... 4

2 Herbert Newberg & Alba Conte, Newberg on Class Actions § 6.20, at 6–82 (3d ed.1992)
.......................................................................................................................... 12

5 James W. Moore et al., Moore's Federal Practice § 23.21[1] (Matthew Bender 3d ed. 1997)
.......................................................................................................................... 17

7A Wright & Miller, Fed. Prac. & Proc. § 1760 (3d ed. 2005) .................................. 7

47 C.F.R. § 64.1200 ....................................................................................... *passim*

171091083.1

Defendant LendVia LLC ("LendVia"), by and through its undersigned counsel, respectfully moves this Court for an order striking Plaintiff Jourey Newell's ("Plaintiff") class allegations from the Complaint for the following reasons:

## I.    **INTRODUCTION**

Plaintiff seeks to represent three inherently uncertifiable classes. Each proposed class definition is fatally flawed, and no amount of discovery can salvage them. To avoid needless burden on the Court and the parties, the class allegations should be stricken now.

All three proposed classes are overly broad and, as a result, their members lack the commonality required under Rule 23. First, the "Robocall" Class is overly broad because it includes individuals who: 1) received third-party calls for which LendVia is not vicariously liable, and 2) lack any grievances against LendVia because those individuals consented to receive prerecorded calls from Lendvia. Second, the National Do Not Call ("DNC") Class is overly broad because it includes individuals who: 1) did not personally register their numbers on the National DNC Registry, 2) received third-party calls for which LendVia is not vicariously liable, 3) consented to calls from LendVia, and 4) have an established business relationship ("EBR") with LendVia. Last, the Internal DNC Class is overly broad because it includes individuals who: 1) received third-party calls for which LendVia is not vicariously liable and 2) renewed consent to LendVia after initially requesting that LendVia stop calling. These individualized issues also defeat the commonality required under Rule 23 and preclude resolution of the claims through classwide proof.

Additionally, the National DNC Class and the Internal DNC Class definitions are impermissibly based on merits-based criteria because membership turns on whether a consumer received "telephone solicitation" or "telemarketing" messages, respectively. Using merits-based criteria runs afoul with the rule against one way intervention and is generally a prohibited practice in a class action. *Am. Pipe & Constr. Co. v. State of Utah*, 414 U.S. 538, 547 (1974) ("One-way

171091083.1

intervention occurs when potential members of a class are allowed to await...final judgement on the merits in order to determine whether participation [in the class] would be favorable to their interests.").

Finally, the "Robocall" Class definition is impermissibly vague. It turns on whether an individual received the "same, or substantially similar" prerecorded message—a phrase pleaded in the disjunctive and lacking any objective standard. Because the definition omits the word "and," it is unclear whether it includes only those who received identical messages, only those who received similar ones, or both. Worse still, "substantially similar" is a subjective and undefined term that provides no reliable basis for determining class membership. This ambiguity prevents the Court from identifying who falls within the class and frustrates any meaningful application of Rule 23.

Since the class definitions are fatally flawed for critical reasons that cannot be cured in discovery, Plaintiff's class allegations must be stricken here and now.

## II.     PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff alleges LendVia made "at least nineteen" unsolicited calls that utilized prerecorded messages to his residential phone number listed on the National DNC Registry. Complaint ("Compl.") ¶¶ 28-38. Plaintiff further alleges that, despite requesting to be placed on LendVia's internal DNC list on February 13, 2025, he continued to receive calls from LendVia. *Id*. at ¶¶ 41-44.

Based on those allegations, he seeks to certify the following classes:

**"Robocall" Class:** All persons in the United States who, (1) within four years prior to the commencement of this litigation until the class is certified (2) received one or more calls on their cellular telephone or any other protected telephone service (3) from or on behalf of LendVia, (4) sent using the same, or substantially similar, pre-recorded message used to contact the Plaintiff.

**National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call, text message, or combination thereof, from Defendant or a third party acting on Defendant's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

171091083.1

**Internal Do Not Call Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls in a 12 month period, (3) who were not current customers of the Defendant at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

*Id*. at ¶ 60.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading…any redundant, immaterial, impertinent, or scandalous matter." "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber and Hardware, Inc.,* 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002) (citing *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002)). While motions to strike are not favored, they will be granted where "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Id*.

A class action complaint must plead "the existence of a group of putative class members whose claims are susceptible of resolution on a classwide basis." *Manning v. Boston Med. Ctr. Corp*., 725 F.3d 34, 59 (1st Cir. 2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "If it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations." *Id*.; *see also Wisdom v. Easton Diamond Sports, LLC*, No. CV 18-4078 DSF (SSX), 2019 WL 580670, at *5 (C.D. Cal. Feb. 11, 2019) vacated and remanded, 824 F. App'x 537 (9th Cir. 2020).

Decisions on class certification should be made "[a]t an early practicable time after a person sues." Fed. R. Civ. P. 23(c)(1)(A); *see also Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) ("[E]ither plaintiff or defendant may move for a determination of whether the action may be certified under Rule 23(c)(1)."); *Hill v. Wells Fargo Bank, N.A*., 946 F.Supp.2d 817, 829

(N.D. Ill. 2013) ("The rule's text plainly indicates that the court may decide to reject a plaintiff's attempt to represent a class as soon as it becomes obvious that the plaintiff will be unable to satisfy Rule 23.").

Striking a class definition at the pleadings stage is particularly appropriate when it is facially uncertifiable in a manner that discovery cannot resolve. *See, e.g., Brazil v. Dell, Inc.*, 585 F. Supp. 2d 1158, 1166-67 (N.D. Cal. 2008). Indeed, courts have recognized the dangers of allowing a facially uncertifiable class to proceed to discovery. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2006) (emphasizing the expense and burden of discovery in class actions and stressing that neither "careful case management," nor "careful scrutiny of [the] evidence at the summary judgment stage," will protect defendants from incurring enormous discovery costs); *see also Yagman v. Allianz Ins*., No. LACV1500921JAKJCX, 2015 WL 5553460, at *4 (C.D. Cal. May 11, 2015 (failing to strike plaintiff's class allegations "would inject significant uncertainty as to the scope of discovery and other pretrial proceedings").

## IV.    ARGUMENT—PLAINTIFF'S PROPOSED CLASS DEFINITIONS MUST BE STRICKEN BECAUSE THEY ARE FACIALLY UNCERTIFIABLE AS A MATTER OF LAW.

### A.    The Proposed Classes Are Overly Broad As Defined.

A class is overbroad and uncertifiable where it contains a large number of potential members who have "no grievance" with the defendant. *Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 678 (7th Cir. 2009) ("[A] class should not be certified if it contains a great many of persons who have suffered no injury."); *Walewski v. Zenimax Media, Inc.,* 502 F. App'x 857, 861 (11th Cir. 2012) (affirming denial of class certification where proposed class definition "impermissibly include[d] members who have no cause of action"); *Lackawanna Chiropractic P.C. v. Tivity Health Support, LLC*, No. 18-CV-00649-LJV-JJM, 2019 WL 7195309, at 3 (W.D.N.Y. Aug. 29, 2019), report and recommendation adopted, No. 18-CV-649, 2019 WL 7194525 (W.D.N.Y. Dec.

26, 2019) (citing *Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) ("[The plaintiff's] proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant] knowing the [defendant] would call those numbers to present special commercial offers. They have no grievance with the [defendant], and ... their inclusion in the proposed class definition renders it overbroad and the class unfit for certification"); *Rivera v. Harvest Bakery Inc.*, 312 F.R.D. 254, 268 (E.D.N.Y. 2016) (holding that the proposed class definition was overbroad). This is true because some class members do not "share a viable claim." *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 16 C 2513, 2018 WL 488257, at 4 (N.D. Ill. Jan. 18, 2018); *see Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489-TBR, 2014 WL 2946421, at 10 (W.D. Ky. June 30, 2014) (holding the class definition is overbroad in that it includes persons who have no claim under the TCPA.); *McElhaney v. Eli Lilly & Co*., 93 F.R.D. 875, 878 (D.S.D. 1982) ("The definition of a class cannot be so broad as to include individuals who are without standing to maintain the action on their own behalf."). And where overbreadth is apparent at the pleadings stage, a class is properly stricken. *See PFT of Am., Inc. v. Tradewell, Inc.*, No. 98 Civ. 6413, 1999 WL 179358, at *1 (S.D.N.Y. Mar. 31, 1999) (striking class claims where the class was not sufficiently defined).

Allowing an overbroad class to proceed past the pleadings stage creates an inherent unfairness to the defendant in view of the "in terrorem character of a class action." *Kohen*, 571 F.3d at 678 ("[A] class should not be certified if it contains a great many of persons who have suffered no injury."); *Barnes v. Coca-Cola Co.*, No. 1:22-CV-01511-KJM-EPG, 2025 WL 1027431, *5 (E.D. Cal. Apr. 7, 2025) ("Coca-Cola—like all defendants facing suit—is 'entitled to know the class definition being alleged against them.'") (citing *DuRocher v. Nat'l Collegiate Athletic Ass'n*, No. 13-01570, 2015 WL 1505675, at *7 (S.D. Ind. Mar. 31, 2015). This is particularly true in TCPA class actions where the statute provides for a minimum of $500 in statutory damages per violation. 47 U.S.C. § 227; *see also*

*Kohen,* 571 F.3d at 677-78 ("When the potential liability created by a lawsuit is very great, even though the probability that the plaintiff will succeed in establishing liability is slight, the defendant will be under pressure to settle rather than to bet the company, even if the betting odds are good.").

Here, the class definitions are overly broad for several reasons. First, all three proposed classes—the "Robocall" Class, the National DNC Class, and the Internal DNC Class—are overly broad because they include individuals who received calls from third parties for whom LendVia is not vicariously liable. Second, both the "Robocall" Class and the National DNC Class are overly broad because they include individuals who consented to receive calls. 47 C.F.R. § 64.1200(a)(1) (excluding calls "made with the prior express consent of the called party" from the regulation's prohibitions on prerecorded calls); 47 C.F.R. § 64.1200(f)(15) (defining "telephone solicitations" to exclude calls "[t]o any person with that person's prior express invitation or permission"). Third, the National DNC Class is also overly broad because it includes individuals who did not personally register their telephone numbers on the National DNC Registry. *Rombough v. Robert D. Smith Ins. Agency, Inc.,* No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022). Fourth, the National DNC Class includes individuals who had an established business relationship with LendVia. Finally, the Internal DNC Class includes individuals who initially opted out of calls but later renewed their consent.

Thus, as the class definitions are overly broad, striking Plaintiff's class allegations at this stage is warranted.

### 1.    *The Three Proposed Class Definitions Are Also Overly Broad Because LendVia is Not Liable for All Calls Made on Its "Behalf."*

To avoid "definitional overbreadth," a plaintiff's theory of injury must "actually map [] onto the membership of the class." *Ruiz Torres v. Mercer Canyons Inc*., 835 F.3d 1125, 1138 (9th Cir. 2016). That is, there must be "a reasonably close fit between the class definition and the chosen theory of liability." *Id*. at 1138 n.7.  And here, LendVia can only be liable for calls made on its behalf

where vicarious liability attaches. *Klein v. Com. Energy, Inc.*, 256 F. Supp. 3d 563, 583 (W.D. Pa. 2017). ("[A] party may be liable under the TCPA in accordance with tort-related vicarious liability rules.") (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016). Importantly, a mere allegation that calls are made "on behalf" of a party is not sufficient to create liability. *Worsham v. TSS Consulting Grp., LLC*, No. 6:18-CV-1692-LHP, 2023 WL 5016558, *3-4 (M.D. Fla. Aug. 7, 2023).

Here, Plaintiff's three proposed class definitions encompass individuals who received calls "on behalf of" LendVia. But there are no factual allegations that vicarious liability exists as to any third party. The Complaint contains no allegations regarding any agency relationship, ratification, or control between LendVia and any third parties who placed calls on its behalf. Without these necessary elements of vicarious liability, the classes as defined improperly include vast numbers of individuals who have no actionable claim against LendVia.

Because of this defect, Plaintiff's class definitions suffer from the same fatal flaw courts routinely reject: they sweep in persons who have no grievance against the defendant. *See supra* at pp. 5-6. As a result, the class definition to be overly broad and uncertifiable. 7A Wright & Miller, Fed. Prac. & Proc. § 1760 (3d ed. 2005) (a "class must not be defined so broadly that it encompasses individuals who have little connection with the claim being litigated; rather, it must be restricted to individuals who are raising the same claims or defenses as the representative").

### 2. Plaintiff's Proposed "Robocall" Class and the National DNC Class Are Overly Broad Because They Includes Members That Consented To Receive Calls From LendVia.

Courts routinely reject class definitions that include members for whom issues of consent arise. *See Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537, 540 (D. Minn. 2017) ("the issue of consent makes it nigh impossible to determine the members of the putative class without a member-by-member analysis and individualized proof….The 'disparate factual circumstances' regarding each class member's consent simply 'prevents the class from being cohesive and thus [renders] it unable

171091083.1

to be certified under Rule 23(b)(2).'"); *Brown v. Nano Hearing Tech Opco, LLC*, No. 3:24-CV-00221-BTM-JLB, 2024 WL 3367536, at *8-9 (S.D. Cal. July 9, 2024) (finding that the plaintiff's class was flawed because it included individuals who may have consented to receiving calls from the defendant, thereby lacking standing under the TCPA); *see also Martinez v. TD Bank USA*, N.A., No. CV 15-7712(JBS/AMD), 2017 WL 2829601, at *12 (D.N.J. June 30, 2017) (holding that a TCPA class was not ascertainable because it would require mini trials to identify individuals who did not provide prior express consent); *see also Warnick v. Dish Network LLC*, 301 F.R.D. 551, 559 (D. Colo. 2014) (denying class certification in a TCPA case and finding that the class was overbroad and not sufficiently ascertainable where, among other problems, one sub-class included persons called with consent); *Jamison v. First Credit Servs*., 2013 WL 387217, at *8 (N.D. Ill. July 29, 2013); *Vigus v. S. Ill. Riverboat/Casino Cruises, Inc*., 274 F.R.D. 229, 235 (S.D. Ill. 2011) (finding that because the inclusion of a substantial number of people who voluntarily provided their phone numbers to receive commercial calls rendered the proposed class "overbroad and the class unfit for certification").

Consent operates as a complete defense to TCPA claims. Telephone calls made with the prior express consent of the called party are exempt from the prohibition against using prerecorded messages to cellular phones. *See* 47 C.F.R. § 64.1200(a)(1). Consent operates as a complete defense to TCPA claims. Telephone calls made with the prior express consent of the called party are exempt from the prohibition against using prerecorded messages to cellular phones. *See* 47 C.F.R. § 64.1200(a)(1). Likewise, the TCPA's DNC provisions do not apply to calls made with prior express invitation or permission. *See* 47 C.F.R. § 64.1200(f)(15) (excluding from "telephone solicitation" any call to a person who has given prior express invitation or permission). As such, individuals who have consented cannot assert valid TCPA claims regarding such calls. *See Barnes*, 2025 WL 1027431, at *5 (striking class allegations as overbroad because the proposed class included individuals who may have consented to receiving calls from Coca-Cola).

Here, Plaintiff's proposed "Robocall" Class and National DNC Class are overly broad because they fail to exclude individuals who provided "prior express consent" and "prior express invitation or permission" to receive calls from LendVia. Including these individuals—who lack standing and have no viable claim under the TCPA—renders the classes overly broad. *Walewski,* 502 F. App'x at 861; *Lackawanna Chiropractic P.C.,* 2019 WL 7195309 at 3 (citation omitted); *A Custom Heating & Air Conditioning, Inc.,* 2018 WL 488257 at *4; *Spine & Sports Chiropractic, Inc.*, 2014 WL 2946421 at *10; *McElhaney,* 93 F.R.D. at 878. As such, the Court may properly strike these class definitions.

### 3. *The Classes Are Overly Broad Because They Improperly Include Individuals Who Have Not Personally Registered Their Telephone Numbers On The National DNC Registry.*

The threshold requirement for bringing a claim under the TCPA's DNC provisions is clear and unambiguous: only a "residential telephone subscriber **who has registered his or her** telephone number" may seek relief. 47 C.F.R. § 64.1200(c)(emphasis added). In *Rombough*, the Court confirmed that this language must be applied as written, holding that personal registration of the phone number on the National DNC Registry is a prerequisite to standing. *Rombough*, 2022 WL 2713278, at *2. As the Court explained: "The plain language of § 64.1200(c) clearly requires that a person register their own telephone number on the national do-not-call registry to have standing to sue under the TCPA's do-not-call provisions. The regulation's use of the phrase 'registered his or her telephone number' plainly contemplates that the person bringing suit must have been the one to place the number on the registry." *Id*.

This requirement cannot be reinterpreted in light of policy reasoning or legislative intent. Where a statute or regulation's language is plain, courts must give effect to that plain meaning. *Campbell v. Wash. Cnty. Tech. Coll.,* 219 F.3d 3, 6 (1st Cir. 2000) ("As in other cases involving statutory interpretation, we look first to the Act's plain language. Absent ambiguity, the inquiry ends with the text of the statute.") (internal citations omitted). The regulation's text expressly mandates

personal registration—no ambiguity exists that would justify looking beyond its clear language. Thus, standing under the TCPA depends upon the individual's own affirmative act of placing the number on the DNC Registry.

Legislative history indicates that Congress envisioned consumers proactively placing their numbers on the DNC list to obtain protection. *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14, 038-39 (2003). Nothing suggests that the protections flow automatically to a new subscriber who did not personally register the number. This interpretation is also consistent with First Amendment principles underlying the DNC framework, which empower individuals to opt in to restrictions on protected speech. *See Martin v. Struthers*, 319 U.S. 141, 148-49 (1943).

Plaintiff's proposed National DNC Class definition ignores this requirement and improperly sweeps in countless individuals who acquired phone numbers that were registered by previous owners but never personally took action to register the numbers themselves. Under Plaintiff's proposed definition, an individual could acquire a phone number that was registered on the DNC Registry by its previous owner and automatically become a class member upon receiving calls— despite never having taken any action to register the number themselves. This contravenes the plain language of 47 C.F.R. § 64.1200(c). Instead, under the logical reading of 47 C.F.R. § 64.1200(c), such individuals do not have standing to sue LendVia.

Thus, because the National DNC Class fails to limit membership to individuals who personally registered their telephone numbers on the National DNC Registry, it encompasses numerous individuals with no standing to assert claims under the TCPA. This alone warrants striking the class allegations at the pleadings stage. *See Walewski*, 502 F. App'x at 861; *Lackawanna Chriropractic P.C.*, 2019 WL 7195309, at *3.

171091083.1

####    4.    **The National DNC Class Definition Is Overly Broad Because It Includes Members That Have An EBR With LendVia.**

A "telephone solicitation" is required in order to have a violation of the TCPA's DNC provisions. *See* 47 C.F.R. § 64.1200(c). And 47 C.F.R. § 64.1200(c)(2)(iii) explicitly excludes calls made to individuals with whom the caller has an EBR from the definition of "telephone solicitation." In other words, where an EBR exists, calls—even to numbers on the National DNC Registry—do not qualify as prohibited telephone solicitations. Thus, including individuals with an EBR in a TCPA DNC class renders the class overly broad because these individuals, by definition, cannot assert a valid claim.

Here, Plaintiff's proposed National DNC Class does not exclude individuals who had an EBR with LendVia. As a result, it necessarily includes members who have no viable claim under the TCPA's DNC provisions. This defect renders the class definition overly broad, and as such, the definition must be stricken. *Walewski,* 502 F. App'x at 861; *Lackawanna Chiropractic P.C.,* 2019 WL 7195309 at 3 (citation omitted); *A Custom Heating & Air Conditioning, Inc.,* 2018 WL 488257 at *4; *Spine & Sports Chiropractic, Inc.*, 2014 WL 2946421 at *10; *McElhaney,* 93 F.R.D. at 878.

####    5.    **The Internal DNC Class Definition Is Overly Broad Because It Fails To Exclude Members Who Reconsented.**

Telemarketing calls made after revocation do not violate Section 64.1200(d) if the individual has subsequently reconsented to receiving such calls. *Lucoff v. Navient Sols., LLC*, 981 F.3d 1299, 1306 (11th Cir. 2020) (granting the defendant's summary judgment motion due to the plaintiff reconsenting to receive calls).

Plaintiff's proposed Internal DNC Class definition is overly broad because it fails to account for these individuals who reconsented to receive telemarketing calls after initially revoking consent, in accordance with Section 64.1200(d). This oversight results in a class that includes members without a valid grievance against LendVia—which renders the class definition as fatally overly

broad. *See Walewski*, 502 F. App'x at 861; *Lackawanna Chiropractic P.C*., 2019 WL 7195309 at 3 (citation omitted); *A Custom Heating & Air Conditioning, Inc*., 2018 WL 488257 at *4; *Spine & Sports Chiropractic, Inc*., 2014 WL 2946421 at *10; *McElhaney*, 93 F.R.D. at 878. Consequently, this class must be stricken.

### B.    The Proposed Class Members Lack Commonality.

"The commonality requirement [of Federal Rule of Civil Procedure 23] demands only that there be "questions of law or fact common to the class." *Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1268 (11th Cir. 2009). A class that lacks commonality is also not certifiable. *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 477-478 (8th Cir. 2016) ("Under Rule 23(a), a district court may certify a class only if it 'is satisfied, after a rigorous analysis,' that the four threshold requirements are met" which includes "commonality of legal or factual questions.") (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). Commonality requires more than simply whether class members have suffered a violation of the same provision of law. *Controllable On-Site Prot. Sec. Sys., Inc. v. Telular Corp.*, No. 4:14CV00487 JM, 2016 WL 11778133, at *2 (E.D. Ark. Apr. 12, 2016) (quoting *Wal–Mart*, 131 S. Ct. at 2551 ("Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,' [internal citation omitted]. This does not mean merely that they have all suffered a violation of the same provision of law."); *see also* 2 Herbert Newberg & Alba Conte, Newberg on Class Actions § 6.20, at 6–82 (3d ed.1992) (noting that "[t]he plaintiff's allegations must indicate sufficiently that the adjudication of his or her claim will necessarily involve one or more common questions concerning persons similarly situated," and that class action pleadings "should not be merely conclusory"). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Messner v. Northshore Univ. Health Sys*., 699 F.3d

802, 815 (7th Cir. 2012) (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir.2005). In other words, there must be at least one "common contention" that "is central to the validity" of the claims and that can be resolved "in one stroke." *Wal-Mart, supra*, 564 U.S. 338 at 349.

Here, the proposed classes fail to meet this commonality requirement because they encompass a range of individual factual and legal issues, making it impossible to adjudicate the claims uniformly across all members. The same reasons that render these classes overly broad also cause their members to lack the requisite Rule 23 commonality.

First, all three classes—the "Robocall" Class, the National DNC Class, and the Internal DNC Class—lack commonality because they include individuals who received calls from third parties for whom LendVia is not vicariously liable. Determining whether LendVia has liability for any given call would require fact-intensive, member-by-member inquiries into agency relationships, ratification, or control, precluding a common resolution.

Second, both the "Robocall" and National DNC Classes lack commonality because they include individuals who consented to receive calls from LendVia. Whether any class member provided prior express consent (or later reconsented) requires individualized analysis, defeating any common question capable of resolving liability across the class.

Third, the National DNC Class further lacks commonality because it includes individuals who did not personally register their telephone numbers on the National DNC Registry. Standing to bring a DNC claim under the TCPA requires personal registration, and determining whether each class member meets this threshold requires individualized inquiries. *See* 47 C.F.R. § 64.1200(c); *Rombough,* 2022 WL 2713278 at *2.

Fourth, the National DNC Class also includes individuals who had an EBR with LendVia. The determination as to whether an EBR exists requires member-specific analysis based on past transactions or inquiries.

171091083.1

Finally, the Internal DNC Class lacks commonality because it includes individuals who reconsented to receive calls from LendVia after initially opting out. Whether reconsent occurred for any given member is an inherently individualized inquiry that cannot be resolved on a classwide basis.

In sum, these issues make it impossible for the claims of all class members to be resolved "in one stroke." *Dukes*, 564 U.S. at 350. Therefore, the class allegations must be stricken.

C.   **The Proposed National DNC Class And Internal DNC Class Are Uncertifiable Because They Are Not Defined On Objective Criteria And Instead Depends On Resolution of Merits Inquiries.**

A class must be defined using administratively feasible, objective-based criteria. *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc*., 821 F.3d 992, 996 (8th Cir. 2016) (citing *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015) (For "a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria."); *Briseno v. ConAgra Foods, Inc*., 844 F.3rd 1121, 1123-24 (9th Cir. 2017); *see also de Lacour v. Colgate-Palmolive Co*., 338 F.R.D. 324, 339 (S.D.N.Y. 2021), lv. to app. den., No. 21-1234, 2021 WL 5443265 (2d Cir. Sept. 16, 2021) ("[A] class must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member, and must be defined by objective criteria that are administratively feasible," such that identifying its members would not require a mini-hearing on the merits of each case.") (internal quotation marks omitted) (citation omitted). A class defined based upon the merits of a claim is simply not certifiable. *St. Louis Heart Ctr., Inc. v. Vein Centers for Excellence, Inc*., No. 4:12 CV 174 CDP, 2017 WL 2861878, at *5-6 (E.D. Mo. July 5, 2017) (decertifying class where class was based on objective criteria and therefore, not ascertainable). This is so because merits determinations must not be made at the certification stage—yet a class defined based upon the merits of a claim assures that all members of a class have already won on a critical substantive issue. *MSP Recovery*

14

*Claims v. Plymouth Rock Assur. Corp., Inc*., 404 F. Supp. 3d 470, 485 (D. Mass. 2019); *see also*
*Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016) (explaining that a
"district court can consider the merits 'only' to the extent 'they are relevant to determining whether
the Rule 23 prerequisites for class certification are satisfied.'"). A class must therefore be
ascertainable without inquiring into the merits of the case. *St. Louis Heart Ctr., Inc*., 2017 WL
2861878 at *5 ("There is no objective criterion available to accurately identify potential class
members, making the class unascertainable."); *Saf–T–Gard Int'l, Inc. v. Wagener Equities, Inc*., 251
F.R.D. 312, 314 (N.D.Ill.2008); *Mira v. Nuclear Measurements Corp*., 107 F.3d 466, 474 (7th
Cir.1997).

Here, the proposed National DNC Class and Internal DNC Class's membership depends on
whether or not an individual received a "telephone solicitation" or "telemarketing" call, respectively.
To determine who is in the class, the Court would first need to review the content of the message for
each call sent to class members to assess whether the call constitutes a "telephone solicitation" or
"telemarketing." *See* 47 U.S.C. 277(b). These are plainly merit determinations. *Massaro v. Beyond*
*Meat, Inc*., No. 320CV00510AJBMSB, 2021 WL 948805 (S.D. Cal. Mar. 12, 2021) (denying a
motion to dis-miss under 12(b)(1) because the court could not resolve the jurisdictional issue without
also deciding the merits of the TCPA claim (i.e. whether or not a text message was set for a
commercial purpose)); *Weister v. Vantage Point AI, LLC*, No. 8:21-CV-1250-SDM-AEP, 2022 WL
3139373, at *7-8 (M.D. Fla. Aug. 3, 2022), motion to certify appeal denied, No. 8:21-CV-1250-
SDM-AEP, 2022 WL 7026495 (M.D. Fla. Oct. 12, 2022) (whether or not a call is "telemarketing" is
a merits challenge); *Broking v. Green Brook Buick GMG Suzuki*, No. CV151847BRMLHG, 2017
WL 3610490, *5-6 (D.N.J. Aug. 22, 2017) (finding that the at-issue call from the defendant did not
violate the TCPA because it did not constitute telemarketing); *Daniel v. Five Stars Loyalty, Inc.*, No.
15-CV-03546-WHO, 2015 WL 7454260, *6 (N.D. Cal. Nov. 24, 2015) (dismissing a complaint

where the text sent by defendant did not violate the TCPA because it was not telemarketing).

The assumption that any merit has been met by allowing, rather than striking, this class definition would be highly prejudicial to LendVia. Thus, this Court should strike the class allegations here and now.

**D.    The Proposed "Robocall" Class Definition Is Unduly Vague.**

"Courts have also rejected class definitions that are overly broad, amorphous or vague." *In re Fosamax Prod. Liab. Litig*., 248 F.R.D. 389 (S.D.N.Y. 2008) (citing *Perez v. Metabolife Int'l, Inc*., 218 F.R.D. 262, 269 (S.D.Fla.2003)); *Ligon v. City of New York*, 288 F.R.D. 72, 83 (S.D.N.Y. 2013) (amending a class definition because it was "too vague to enable a proper determination of who is a class member"); *W.R. ex rel. Joseph R. v. Connecticut Dep't of Child. & Fams.*, No. 3:02CV429 (RNC), 2004 WL 2377142 (D. Conn. Sept. 30, 2004) (denying class certification partly because the class definition was vague); *Wisdom v. Easton Diamond Sports, LLC*, No. CV 18-4078 DSF (SSX), 2019 WL 580670, at *6 (C.D. Cal. Feb. 11, 2019), *vacated and remanded*, 824 F. App'x 537 (9th Cir. 2020) (granting motion to strike class allegations where the putative class definition was "vague and overbroad"); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015)("Class definitions have failed [the ascertainability] requirement when they were too vague…"). "Vagueness is a problem because a court needs to be able to identify who will receive notice, who will share in any recovery, and who will be bound by a judgment." *Mullins*, 795 F.3d at 660 (citing *Kent v. SunAmerica Life Ins. Co.,* 190 F.R.D. 271, 278 (D.Mass.2000)).

Here, the class definition is impermissibly vague due to the use of the phrase "same, or substantially similar." Compl. ¶ 60. In the first place, the definition is pleaded with the disjunctive. So it is unclear whether class members include those who received *only* the same messages, on the one hand, or *only* substantially similar messages, on the other. Since the definition lacks the word "and," it must be one or the other, not both. Yet, there is no way to determine which it is. Hence, the

16

definition is inherently flawed. *Mullins*, 795 F.3d at 659 ("[C]lasses that are defined too vaguely fail to satisfy the "clear definition" component.").

Further, the definition simply lacks requisite clarity for the Court to accurately determine who is a member of the proposed class here because the phrase "substantially similar" is meaningless and turns on subjective criteria. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012) ("Before a court may certify a class pursuant to Rule 23, 'the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.'") (citing and quoting 5 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.21[1] (Matthew Bender 3d ed. 1997) ("Although the text of Rule 23(a) is silent on the matter, a class must not only exist, the class must be susceptible of precise definition. There can be no class action if the proposed class is 'amorphous' or 'imprecise.'")) (citation omitted). The Court would need to determine which messages are "substantially similar" to the one received by Plaintiff. However, without knowing what constitutes a "substantially similar" message, this is not feasible.

As such, the class should be stricken.

**V.    CONCLUSION**

For the foregoing reasons, LendVia respectfully requests the Court strike Plaintiff's class allegations.

Dated: April 23, 2025                    Respectfully submitted,

                                        */s/Corey M. Scher*
                                        Corey M. Scher, Esquire (Pa Bar # 326838)
                                        FOX ROTHSCHILD LLP

                                        -and-

                                        Jenniffer Cabrera (*pro hac vice pending*)
                                        TROUMAN AMIN LLP
                                        *Attorneys for Defendant LendVia LLC*