Corey M. Scher, Esquire (Pa Bar # 326838)
Fox Rothschild LLP
2001 Market Street, Suite 1700
Philadelphia, PA 19103
Tel./Fax: (215) 299-2000/2150
cscher@foxrothschild.com

-and-

Jenniffer Cabrera (*pro hac vice pending*)
Troutman Amin LLP
1825 NW Corporate Blvd - Suite 100
Boca Raton, Florida 33431
Tel.: 561-834-0883
jenniffer@troutmanamin.com

*Attorneys for Defendant LendVia LLC*

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

CASE NO. 2:25-cv-01018-GJP

**JOUREY NEWELL**, *individually and on behalf of all persons and entities similarly situated,*

                Plaintiff,

v.

**LENDVIA LLC**

                Defendant.

_____/

**DEFENDANT LENDVIA LLC'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO COMPEL ARBITRATION**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................................ 2

    A. **Plaintiff Completed an Online Form and Accepted the Terms of Use By Clicking "Submit."** .................................................................................................................. 2

    B. **Plaintiff Agreed to Arbitrate *Any* Dispute Against *Any* Party Arising from His Use of the Website on an Individual Basis.** ............................................................. 2

    C. **Plaintiff's Claims Arose From Providing His Consent On the Website.** ............. 3

III. LEGAL STANDARD ..................................................................................................... 4

IV. ARGUMENT .................................................................................................................. 5

    A. **Plaintiff's Claims Are Subject To Mandatory Arbitration.** ................................. 5

        1. *Plaintiff Entered a Valid and Enforceable Arbitration Agreement.* ............ 6

        2. *The Arbitration Agreement Contains a Valid Delegation Clause.* .............. 7

        3. *Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement.* .... 9

    B. **Arbitration is Required to Proceed on an Individual Basis, and Plaintiff's Class Claims Must be Dismissed or This Case Must Be Stayed.** ................................. 10

V. CONCLUSION .............................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Cases**

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ................................................................................................ 4, 5, 9

*Blair v. Scott Specialty Gases*,
  283 F.3d 595 (3d Cir. 2002) ............................................................................................ 6

*Blueprint Cap. Advisors, LLC v. Div. of Inv.*,
  2023 WL 8866554 (3d Cir. Dec. 22, 2023) ................................................................. 8, 9

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional*
  *Agreement Nos. 950548, 950549, 950646*,
  584 F.3d 513 (3d Cir. 2009) ............................................................................................ 6

*Clerk v. First Bank of Del.*,
  735 F. Supp. 2d 170 (E.D. Pa. 2010) ........................................................................... 11

*Cronin v. CitiFinancial Servs., Inc.*,
  352 F. App'x 630 (3d Cir. 2009) .................................................................................. 11

*Cullinane v. Uber Techs., Inc.*,
  893 F.3d 53 (1st Cir. 2018) ............................................................................................ 5

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ....................................................................................................... 4

*Dobbs v. Health IQ Ins. Servs.*,
  2022 WL 2974713 *4 (E.D. Pa. July 27, 2022) .............................................................. 6

*Epic Systems Corp. v. Lewis*,
  138 S.Ct. 1612 (2018) ................................................................................................. 3, 4

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995) .................................................................................................... 5, 9

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) .......................................................................................................... 4

*Gove v. Career Sys. Dev. Corp.*,
  689 F.3d 1 (1st Cir.2012) ............................................................................................... 5

*HealthplanCRM, LLC v. AvMed, Inc.*,
  458 F. Supp. 3d 308 (W.D. Pa. 2020) ........................................................................... 9

*Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524 (2019) ...................... 5, 8

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019). .................................................................................................. 11

*Liptak v. Accelerated Inventory Mgmt.*, LLC,
  2021 WL 650514 (W.D. Pa. Feb. 19, 2021) .................................................................. 7

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52 (1995). ........................................................................................................ 10

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983). ........................................................................................................ 4, 5

*Pricharda v. Checkr, Inc.*,
  2022 WL 16749033 (E.D. Pa. Nov. 7, 2022) .............................................................. 6

*Putt v. Tripadvisor Inc.*,
  2021 WL 242470 (E.D. Pa. Jan. 25, 2021) .................................................................. 6

*R & C Oilfield Servs., LLC v. Am. Wind Transp. Grp., LLC*,
  447 F. Supp. 3d 339 (W.D. Pa. 2020) .......................................................................... 11

*Rent-A- Center, West, Inc. v. Jackson,*
  561 U.S. 63 (2010) .......................................................................................................... 5

*Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd.*,
  559 Pa. 56, 739 A.2d 133 (1999) .................................................................................. 6

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) .................................................................................................. 4, 10

*Zabokritsky v. JetSmarter, Inc.*,
  2019 WL 2563738 (E.D. Pa., 2019) ............................................................................ 6

**Other Authorities**

9 U.S.C. § 1 et seq. ............................................................................................................ 1, 4, 5

AAA Rule R-7(a). .................................................................................................................. 8

Defendant LendVia LLC ("LendVia"), by and through its undersigned counsel, hereby moves this Honorable Court to compel Plaintiff Jourey Newell's ("Plaintiff") claims to arbitration and dismiss or stay this action.

I.     **INTRODUCTION**

Plaintiff's claims must be resolved in binding arbitration. By submitting his information on https://upfinances.com/apply, Plaintiff agreed to arbitrate, on an individual basis, any disputes arising from his use of the website (the "Website"). This agreement expressly covers the claims asserted here. Accordingly, under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., LendVia moves to compel arbitration and dismiss this case.

Plaintiff alleges violations of the TCPA's prerecorded call, National Do Not Call ("DNC") Registry, and Internal DNC List provisions. But this Court need not reach the merits, as two threshold questions control: (1) whether an arbitration agreement exists, and (2) whether arbitrability is delegated to the arbitrator.

First, a valid arbitration agreement was formed. On December 8, 2024, Plaintiff visited the Website, entered his phone number, and clicked "Submit," assenting to a clear disclosure stating: "I acknowledge and agree to the Privacy Policy and Terms of Use, which includes binding arbitration." Declaration of Brandi Wire ("Wire Decl.") ¶ 7, 9, 11; Declaration of Kashif Ali ("Ali Decl.") ¶¶ 6, 8-9. By clicking "Submit," Plaintiff accepted the Terms of Use, including the arbitration provision (the "Arbitration Agreement"), governed by the FAA, requiring arbitration before the American Arbitration Association ("AAA"). Wire Decl. ¶¶ 9, 11-12; Ali Decl. ¶ 10.

Second, the Arbitration Agreement includes a valid delegation clause, granting the arbitrator exclusive authority to decide gateway issues of enforceability and scope. Wire Decl. ¶ 12.

Because both issues must be answered in the affirmative, the Court must compel arbitration. Plaintiff's TCPA claims, which arise directly from his use of the Website, fall squarely within the

1

Arbitration Agreement's broad scope. Without admitting liability, LendVia notes that the only way it obtained Plaintiff's phone number was through his submission of the Website form, which incorporated the arbitration agreement. Accordingly, Plaintiff's claims must proceed in arbitration.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff Completed an Online Form and Accepted the Terms of Use By Clicking "Submit."

On December 8, 2024, Plaintiff visited the website https://upfinances.com/apply. Wire Decl. ¶ 9; Ali Decl. ¶ 6. While he was on the Website, he entered his phone number ending in 4132 and accepted the following disclosure:

> By checking this box and clicking SUBMIT, I express my understanding and consent electronically via E-sign that I acknowledge and agree to the Privacy Policy and Terms of Use, which includes binding arbitration. I consent to the electronic collection and storage of my application information necessary to evaluate my loan application. I grant express written consent for Better Debt Solutions and Lendvia to contact me by calls and/or text messages at the number provided, regarding my application status and scheduling, using any telephone dialing system, prerecorded/artificial voice messages, and/or automatic dialing devices. I understand that text messages may incur data and message rates and frequency varies (text HELP for help; text STOP to cancel). Even if my phone number is currently listed on any state, federal, or corporate Do-Not-Call list, this consent is provided. I understand I may revoke this consent at any time and am not required to consent as a condition of purchasing any property, goods, or services. Consent for SMS and calls will not be shared with third parties for their marketing purposes.

Wire Decl. ¶ 7; Ali Decl. ¶ 8. The disclosure language clearly states that by clicking the "Submit" button, which is located below the disclosure, the user is consenting to the Terms of Use of the Website, including "binding arbitration." Wire Decl. ¶ 7, 9; Ali Decl. ¶¶ 6, 8. Further, the Terms of Use are located in a bright blue underlined hyperlink within the disclosure. Ali Decl. ¶ 9.

### B.   Plaintiff Agreed to Arbitrate *Any* Dispute Against *Any* Party Arising from His Use of the Website on an Individual Basis.

The 'Terms of Use' contains a binding Arbitration Agreement. Wire Decl. at ¶ 12. In relevant part, the arbitration provision states:

2

> You and we each agree to resolve any and all disputes or claims that have arisen or may arise between you and us (including any affiliates, officers, directors, employees, and agents), whether or not such dispute or claim involves a third party, relating in any way to any aspect of our relationship or any contact between us, direct or indirect, or arising out of this or previous versions of these Terms, your use of or access to our Site or services, or any products or services sold, offered, or purchased through our Site or services including all claims under 47 U.S.C. § 227 et. seq. and related state statues ("Dispute") through negotiations and in good faith. If we don't resolve the Dispute within 60 days you and we each agree to resolve it exclusively through final and binding arbitration.
>
> You and we agree as follows:
> (a) To submit the Dispute to a single arbitrator under the then-current Commercial Arbitration Rules of the American Arbitration Association (AAA), including when applicable the Optional Rules for Emergency Measures of Protection and the Consumer Arbitration Rules, or, by separate mutual agreement, at another arbitration institution. The AAA's rules, information regarding initiating a claim, and a description of the arbitration process are available at www.adr.org. The location of the arbitration and the allocation of fees and costs for such arbitration shall be determined in accordance with the AAA rules. As an alternative, you or we may bring a claim in your local "small claims" court, if permitted by that small claims court's rules.

Because Plaintiff entered his personal information on the Website and accepted the disclosure, he expressly agreed to be bound by the terms contained therein, including mandatory arbitration under the AAA rules.

      **C.**      **Plaintiff's Claims Arose From Providing His Consent On the Website.**

In his Complaint, Plaintiff alleges that he received unsolicited prerecorded calls from LendVia on his telephone number in violation of the TCPA. Complaint ("Compl.") at ¶¶ 28, 33-38, 51. Without admitting any liability, it is stated that the only way LendVia could have obtained Plaintiff's number was as a result of him entering his number ending on the Website and explicitly consenting to be contacted at that number by LendVia regarding his "application status and scheduling, using any telephone dialing system, prerecorded/artificial voice messages, and/or automatic dialing devices." Wire Decl., at ¶¶ 9-10, 13. Therefore, Plaintiff's claims regarding the

3

171091299.1

alleged calls clearly arise out his "use of or access to the Website" and fall squarely within the Arbitration Agreement's scope.

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") codifies a strong federal policy in favor of enforcing arbitration agreements, including agreements to arbitrate statutory claims. *See* 9 U.S.C. § 2; *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612, 1621 (2018) ("The [FAA], this Court has said, establishes 'a liberal federal policy favoring arbitration agreements.'"); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-25 (1991) (holding that FAA provisions demonstrate federal policy that favors arbitration and its purpose was to reverse the longstanding judicial hostility to arbitration agreements); *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)(noting that the FAA's "principle purpose . . . is to ensure that private arbitration agreements are enforced according to their terms").

"[I]n Congress's judgment arbitration ha[s] more to offer than courts recognized – not least the promise of quicker, more informal, and often cheaper resolutions for everyone involved." *Epic Systems*, 138 S. Ct. at 1621; *see Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010)(noting that arbitration allows parties to resolve their claims for "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes"). Thus, "by agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer*, 500 U.S. at 26.

The FAA permits a party to move to compel arbitration when an opposing party refuses to arbitrate as required by a valid arbitration agreement. 9 U.S.C. §§ 3, 4. According to the Supreme Court, the FAA "leaves no place for the exercise of discretion by a [trial] court but instead mandates that [trial] courts shall direct the parties to proceed to arbitration" on all claims covered under the

agreement. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Any doubts concerning the scope of arbitrable issues "should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Courts, therefore, should "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses*, 460 U.S. at 22.

Principles of state contract law control whether a valid arbitration agreement exists. *Gove v. Career Sys. Dev. Corp.*, 689 F.3d 1, 4 (1st Cir.2012). "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 61 (1st Cir. 2018) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

IV. **ARGUMENT**

    A. **Plaintiff's Claims Are Subject To Mandatory Arbitration.**

The Arbitration Agreement Plaintiff entered is governed by the FAA. Wire Decl., at ¶ 12. Under the FAA, an agreement to arbitrate, like the one in the Terms of Use, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Moses*, 460 U.S. at 24.

The FAA reflects "the 'fundamental principle that arbitration is a matter of contract.'" *AT&T*, 563 U.S. at 339 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Because "arbitration is a matter of contract, courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

The Supreme Court has repeatedly made clear that "parties may agree to have an arbitrator decide gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. *Henry Schein, Inc.,* 139 S. Ct. at 529

(quoting *Rent-A- Center,* 561 U.S. at 68-69). "[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc.,* 139 S. Ct. at 530. When considering whether there is a valid delegation, the court undertakes a limited inquiry into whether the parties "clearly and unmistakably" delegated the power to decide arbitrability to the arbitrator. *Id*.

As demonstrated herein, Plaintiff entered a valid Arbitration Agreement. Because the arbitration provision in the Terms of Use clearly delegates questions of applicability and enforceability of the Arbitration Agreement to the arbitrator, this Court's inquiry should end here. Nonetheless, Plaintiff's claims are squarely covered by the Arbitration Agreement in the Terms of Use. Accordingly, Plaintiff should be compelled to arbitrate his claims against LendVia on an individual basis before the appropriate forum, which is the AAA, and this case should be dismissed.

### 1. *Plaintiff Entered a Valid and Enforceable Arbitration Agreement.*

In determining the validity of agreements to arbitrate which are subject to the FAA, courts generally apply ordinary state law principles governing the formation of contracts. *First Options of Chicago, Inc*, 514 U.S. at 944. "In general, to determine whether a contract was formed under Pennsylvania law, a court must look to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 533-34 (3d Cir. 2009) (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002); *Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd*., 559 Pa. 56, 739 A.2d 133, 136 (1999)).

Courts in the Eastern District of Pennsylvania have consistently held "that 'clickwrap' agreements manifest sufficient agreement to the terms in the contract." *Pricharda v. Checkr, Inc.*, No. 5:22-CV-3180, 2022 WL 16749033, *3 (E.D. Pa. Nov. 7, 2022) (citing *Dobbs v. Health IQ Ins.*

6

171091299.1

*Servs.*, No. 21-cv-5276, 2022 WL 2974713, *4 (E.D. Pa. July 27, 2022) (citing *Zabokritsky v. JetSmarter, Inc.*, No. 19-cv-273, 2019 WL 2563738, *3 n.30 (E.D. Pa., 2019)); *Putt v. Tripadvisor Inc.*, No. 20-cv-3836, 2021 WL 242470, at *6 (E.D. Pa. Jan. 25, 2021) ("Clickwrap agreements are 'routinely enforced by the courts.'" (internal citation omitted)).

The layout of the Website required Plaintiff to signify his affirmative acceptance of the disclosure containing the Terms of Use by clicking on the "Submit" button. Wire Decl. at ¶¶ 7, 9, 11. Notably, the Terms of Use were underlined and highlighted in bright blue font which a Pennsylvania court has found even less than this (i.e. a green un-underlined hyperlink) to be "reasonably conspicuous." *Liptak v. Accelerated Inventory Mgmt.*, LLC, 2021 WL 650514, *1 (W.D. Pa. Feb. 19, 2021) (finding an agreement that was not visible on the webpage but available through an un-underlined green hyperlink was reasonably conspicuous enough to enforce arbitration agreement contained in the hyperlink); Ali Decl. at ¶ 9. Plaintiff cannot argue that the Arbitration Agreement was "hidden" or "buried" on another screen, as the disclosure language above the "Submit" button conspicuously apprised Plaintiff that by clicking "Submit" he was agreeing to the Terms of Use including *binding arbitration.* Wire Decl. ¶¶ 7, 11; Ali Decl. ¶ 8.

Therefore, Plaintiff was provided reasonable notice of the Arbitration Agreement. Plaintiff also affirmatively accepted the Terms of Use and the Arbitration Agreement therein. As such, when he entered his information on the Website and clicked the "Submit" button, Plaintiff entered a valid and binding Arbitration Agreement contained in the Terms of Use.

### 2.   *The Arbitration Agreement Contains a Valid Delegation Clause.*

"If the parties have a valid arbitration agreement that delegates the issue of arbitrability to an arbitrator by 'clear and unmistakable' evidence, 'a court possesses no power to decide the arbitrability issue.'" *Blueprint Cap. Advisors, LLC v. Div. of Inv.*, No. 23-1116, 2023 WL 8866554, *2 (3d Cir. Dec. 22, 2023) (citing *Henry Schein, Inc.* 139 S. Ct. at 530, 529).

7

Here, the Arbitration Agreement clearly states that disputes are to be submitted to an arbitrator of the AAA. Wire Decl. ¶ 12. ("You and we agree as follows: (a) To submit the Dispute to a single arbitrator under the then-current Commercial Arbitration Rules of the American Arbitration Association (AAA)…"). Rule R–7(a) of the AAA Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Rule R-7(a). Therefore, Plaintiff agreed to submit questions of arbitrability, including questions regarding the validity of the agreement to arbitrate, to the arbitrator.

Further, the Arbitration Agreement itself clearly contemplates issues of arbitrability being decided by the arbitrator, explicitly providing as follows:

> The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate, and the arbitrability of the Dispute. The arbitrator will decide whether the Dispute can be arbitrated.

Wire Decl. ¶ 12.

Further, the language in the Arbitration Agreement referring to "any and all disputes or claims that have arisen or may arise between you and us (including any affiliates, officers, directors, employees, and agents), **whether or not such dispute or claim involves a third party**" contemplates that the use of the Website may lead to disputes with third parties, and LendVia is now such a third party. Wire Decl. ¶ 12. (*emphasis added*). Therefore, LendVia is an intended beneficiary of the agreement to arbitrate, which includes delegation of arbitrability to the arbitrator. Here, the Arbitration Agreement incorporates the AAA Commercial Arbitration Rules, which delegate questions of arbitrability—including the scope and enforceability of the Arbitration Agreement—to the arbitrator. This incorporation constitutes "clear and unmistakable" evidence of the parties' intent to delegate arbitrability, satisfying the applicable "onerous" standard. *See HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 323-24 (W.D. Pa. 2020) (finding that incorporation of AAA rules

is sufficiently clear and unmistakable to delegate arbitrability issues to the arbitrator where the contract leaves "no room for ambiguity").

The Arbitration Agreement evidences a clear intent to delegate the issue of arbitrability through incorporation of the AAA rules and through its plain language. *Id.* Because the Arbitration Agreement contains a delegation clause giving the arbitrator *exclusive* authority to decide issues relating to the applicability and enforcement of the Arbitration Agreement, it transfers the Court's power to decide arbitrability questions to the arbitrator. *Blueprint Cap. Advisors, LLC,* 2023 WL 8866554 at *2. As such, this Court's analysis should end here, and any questions regarding the scope of the arbitration agreement and its applicability to this dispute should be decided by the arbitrator.

        3.      *Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement.*

Notwithstanding the delegation clause, here there can be no serious dispute that the Arbitration Agreement covers all of Plaintiff's TCPA. Plaintiff's claims turn on his consent to be contacted at the phone number he provided. Specifically, the Arbitration Agreement provides that "You and we each agree to resolve any and all disputes or claims that have arisen or may arise between you and us (including any affiliates, officers, directors, employees, and agents), whether or not such dispute or claim involves a third party… ") through negotiations and in good faith. If we don't resolve the Dispute within 60 days you and we each agree to resolve it ***exclusively through final and binding arbitration***." Wire Decl. at ¶ 12 (*emphasis added*). Further, the disclosure on the Website provides that "By checking this box and clicking SUBMIT(…)I grant my express written consent for Better Debt solutions and Lendvia to contact me by calls and/or test messages at the number provided regarding, my application status and scheduling, using any telephone dialing system, prerecorded/artificial voice messages, and/or automatic dialing devices." Wire Decl. ¶ 7; Ali Decl. ¶ 8. Plaintiff alleges that LendVia called his telephone number in violation of the TCPA. However, without admitting any liability for the alleged calls at issue, the only way LendVia could

9

have obtained Plaintiff's number is via Plaintiff consenting to being contacted by entering her number on the Website and clicking the "Submit" button. Wire Decl. ¶¶ 9, 13. Therefore, Plaintiff's purported TCPA claims against LendVia arise directly from his use of the Website as contemplated by the Terms of Use he agreed to. *Id.*

In evaluating the scope of valid and enforceable arbitration agreements, federal policy dictates that courts should strongly favor compelling arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995). An arbitration clause is broad if it covers "all disputes arising out of a contract" and is a narrow clause if it covers only specific types of disputes. Under a broad arbitration provision—like the one here—a presumption of arbitrability applies and "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T*, 475 U.S. at 649 (holding that only the strongest evidence against arbitration will remove a dispute from the purview of a broad arbitration clause).

Because Plaintiff's TCPA claims arise out of his contacts with the Website, they are within the scope of the Arbitration Agreement that Plaintiff accepted. Therefore, the Court should dismiss or stay this case and compel arbitration.

**B.     Arbitration is Required to Proceed on an Individual Basis, and Plaintiff's Class Claims Must be Dismissed or This Case Must Be Stayed.**

"Parties to an arbitration agreement may specify the issues they choose to arbitrate, may agree on a set of procedural rules to use during the arbitration, and may limit with whom they choose to arbitrate their disputes." *Stolt-Nielsen S.A.,* 559 U.S. at 664. As a result, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party ***agreed to do so***." *Id.* (***emphasis added***). The Supreme Court has held that "[c]ourts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1419 (2019).

It is well-settled in Pennsylvania that class action waivers in arbitration provisions are

10

enforceable so long as the waiver does not "effectively ensures that a defendant will never face liability for wrongdoing." *Clerk v. First Bank of Del.*, 735 F. Supp. 2d 170, 186 (E.D. Pa. 2010) (citing *Cronin v. CitiFinancial Servs., Inc.*, 352 F. App'x 630, 635 (3d Cir. 2009)).

Here, although Plaintiff seeks class treatment in his Complaint, the Arbitration Agreement states that "You and we each agree to resolve any and all disputes or claims that have arisen or may arise between you and us….including all claims under 47 U.S.C. § 227 et. seq. and related state statues ("Dispute") through negotiations and in good faith. If we don't resolve the Dispute within 60 days you and we each agree to resolve it exclusively through final and binding arbitration." Wire Decl. at 12.

Here, dismissal of the matter or staying the case are the most effective paths forward. *R & C Oilfield Servs., LLC v. Am. Wind Transp. Grp., LLC*, 447 F. Supp. 3d 339, 359 (W.D. Pa. 2020) (granting motion to compel arbitration and staying case).

V.  **CONCLUSION**

For the foregoing reasons, LendVia respectfully requests the Court compel the arbitration of Plaintiff's claims.

Dated: April 23, 2025

Respectfully submitted,

*/s/Corey M. Scher*
Corey M. Scher, Esquire (Pa Bar # 326838)
Fox Rothschild LLP
2001 Market Street, Suite 1700
Philadelphia, PA 19103
Tel./Fax: (215) 299-2000/2150
cscher@foxrothschild.com

-and-

Jenniffer Cabrera (*pro hac vice pending*)
Troutman Amin LLP
1825 NW Corporate Blvd - Suite 100
Boca Raton, Florida 33431
Tel.: 561-834-0883
jenniffer@troutmanamin.com
*Attorneys for Defendant LendVia LLC*

11

171091299.1