UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CASE NO. 2:25-cv-01018-GJP

**JOUREY NEWELL**, *individually and on behalf of all persons and entities similarly situated,*

                        Plaintiff,

v.

**LENDVIA LLC**

                        Defendant.

_____/

## DECLARATION OF BRANDI WIRE IN SUPPORT OF DEFENDANT LENDVIA LLC'S MOTION TO DISMISS

I, Brandi Wire, declare:

1. I am over the age of eighteen (18) years. I submit this declaration in support of Defendant LendVia LLC's (hereinafter "LendVia") Motion to Compel Arbitration. The matters set forth below are based upon my personal knowledge and, if called to testify as a witness, I could and would competently testify thereto.

2. I am currently LendVia's Chief Compliance Officer and was employed in this capacity at all relevant times, including December 8, 2024.

3. As part of my duties, I am familiar with LendVia's processes for receiving, maintaining, and reviewing lead records submitted by consumers through these third-party lead generators. These records are created at or near the time a consumer submits their information and are kept by LendVia in the regular course of its business activities as part of its standard recordkeeping practices.

4. In the regular course of business, LendVia contracts with third-party lead generators who gather consumer information through online form. The website https://upfinances.com/apply (the "Website") is one website which LendVia receives information from individuals interested in

LendVia's services.

5. In my role, I am familiar with the Website's content, including its disclosures and terms of use, as they existed on December 8, 2024.

6. LendVia requires that its marketing partners display specific consent language on forms submitted by consumers.

7. At the time Plaintiff Jourey Newell submitted his information, the Website required users to provide express written consent before submitting their information. The disclosure above the submission button read as follows:

> "By checking this box and clicking SUBMIT, I express my understanding and consent electronically via E-sign that I acknowledge and agree to the Privacy Policy and Terms of Use, which includes binding arbitration. I consent to the electronic collection and storage of my application information necessary to evaluate my loan application. I grant express written consent for Better Debt Solutions and Lendvia to contact me by calls and/or text messages at the number provided, regarding my application status and scheduling, using any telephone dialing system, prerecorded/artificial voice messages, and/or automatic dialing devices. I understand that text messages may incur data and message rates and frequency varies (text HELP for help; text STOP to cancel). Even if my phone number is currently listed on any state, federal, or corporate Do-Not-Call list, this consent is provided. I understand I may revoke this consent at any time and am not required to consent as a condition of purchasing any property, goods, or services. Consent for SMS and calls will not be shared with third parties for their marketing purposes."

8. Verified Consent, a third-party digital verification service, generated a Verified Consent certificate documenting Plaintiff's submission. This certificate includes metadata and a video replay of the submission process, confirming that Plaintiff reviewed the disclosures, agreed to the Terms of Use (including arbitration), and provided express written consent to be contacted.

9. I have personally reviewed the lead record for Plaintiff in this case, which LendVia received from Verified Consent and maintains as a regularly kept business record. This lead record shows that on or about December 8, 2024, Plaintiff submitted his contact information through the Website, including his telephone number ending in 4132.

10. The Website, at the time Plaintiff submitted his information, contained clear

disclosures stating that by providing his contact information, the consumer expressly consented to be contacted by LendVia regarding application status and scheduling, including via telephone dialing systems, prerecorded or artificial voice messages, and/or automatic dialing devices.

11. The Website's disclosure located above the "Submit" button includes a notice that the Terms of Use include binding arbitration.

12. On December 8, 2024, the full arbitration agreement in the Terms of Use on https://upfinances.com/apply read as follows:

> **MANDATORY AGREEMENT TO ARBITRATE ON AN INDIVIDUAL BASIS AND WAIVER OF CLASS AND REPRESENTATIVE ACTIONS ("ARBITRATION AGREEMENT")**
>
> **PLEASE READ THIS SECTION CAREFULLY – THIS ARBITRATION AGREEMENT MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT AND TO HAVE A JURY HEAR YOUR CLAIMS. IT CONTAINS PROCEDURES FOR FINAL BINDING ARBITRATION AND A WAIVER OF ANY AND ALL RIGHTS TO PROCEED IN A CLASS, COLLECTIVE, CONSOLIDATED, OR REPRESENTATIVE ACTION (HEREINAFTER "CLASS ACTION"). ARBITRATION REPLACES THE RIGHT TO GO TO COURT. YOU ARE GIVING UP THE RIGHT TO HAVE A JURY TRIAL TO THE FULLEST EXTENT PERMISSIBLE BY LAW, OR TO FILE OR PARTICIPATE IN A CLASS OR REPRESENTATIVE ACTION SUBJECT TO THE LIMITED EXCLUSIONS BELOW.**
>
> You and we each agree to resolve any and all disputes or claims that have arisen or may arise between you and us (including any affiliates, officers, directors, employees, and

agents), whether or not such dispute or claim involves a third party, relating in any way to any aspect of our relationship or any contact between us, direct or indirect, or arising out of this or previous versions of these Terms, your use of or access to our Site or services, or any products or services sold, offered, or purchased through our Site or services including all claims under 47 U.S.C. § 227 et. seq. and related state statues ("Dispute") through negotiations and in good faith. If we don't resolve the Dispute within 60 days you and we each agree to resolve it exclusively through final and binding arbitration.

You and we agree as follows:

(a) To submit the Dispute to a single arbitrator under the then-current Commercial Arbitration Rules of the American Arbitration Association (AAA), including when applicable the Optional Rules for Emergency Measures of Protection and the Consumer Arbitration Rules, or, by separate mutual agreement, at another arbitration institution. The AAA's rules, information regarding initiating a claim, and a description of the arbitration process are available at www.adr.org. The location of the arbitration and the allocation of fees and costs for such arbitration shall be determined in accordance with the AAA rules. As an alternative, you or we may bring a claim in your local "small claims" court, if permitted by that small claims court's rules.

(b) The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate, and the arbitrability of the Dispute. The arbitrator will decide whether the Dispute can be arbitrated.

(c) You and we agree that each of us may bring a Dispute against the other only on our own behalf, and not on behalf of a government official or other person or entity, or a class of persons or entities. You and we agree, if we are a party to the proceeding, not to participate in a class action, a class-wide arbitration, a claim brought in a private attorney general or

representative capacity, or a consolidated claim involving another person's use of the Site or our services. You and we agree not to combine a claim that is subject to arbitration under these Terms with a claim that is not eligible for arbitration under these Terms. You and we agree to waive the right to a trial by jury for all disputes.

(d) If the prohibition against class actions and other claims brought on behalf of third parties is found to be unenforceable, then this prohibition will be null and void as to that Dispute.

(e) This Agreement to Arbitrate will survive the termination of your relationship with us.

To the extent permitted under applicable law, all aspects of the arbitration proceeding, and any ruling, decision, or award by the arbitrator, will be strictly confidential for the benefit of all parties.

Unless you and we agree otherwise, if the Agreement to Arbitrate is found by a court to be unenforceable, if your claim is not covered by the Agreement to Arbitrate, or if you neither are a resident of nor have a principal place of business in the US, you agree that any Dispute that has arisen, or may arise, between you and us must be resolved exclusively by a state or federal court located in Clark County, Nevada. You and we agree to submit to personal jurisdiction in such a court.

Notwithstanding any provision in these Terms to the contrary, you and we agree that if we make a change to this Agreement to Arbitrate (other than a change to the notice address or the Site link provided herein) in the future, that change shall not apply to a claim that was filed in a legal proceeding between you and us prior to the effective date of the change. The change shall apply to all other disputes or claims governed by the Agreement to Arbitrate that have arisen, or may arise, between you and us. We will notify you of a change to this Agreement to Arbitrate by posting the amended terms on the Site.

You may opt out of this Agreement to Arbitrate. If you do so, neither you nor we can require

the other to participate in an arbitration proceeding. To opt out, you must notify us in writing within 30 days of the date that you first became subject to this arbitration provision. Notice must be provided by email to contact@upfinances.com with the subject line "Arbitration Opt-Out."

13. LendVia contacted Plaintiff in reliance on the consent he provided through his Website submission.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 4/23/2025, at Irvine, CA.

DocuSigned by:

*Brandi Wire*
E2B0B0F7FA954F0...

**Brandi Wire**
Chief Compliance Officer of LendVia

6