**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

**JOUREY NEWELL**                                    **Case No. 2:25-cv-01018-GJP**

      Plaintiff,

v.

**LENDVIA LLC,**

      Defendant.

_____/

**PLAINTIFF'S OPPOSITION TO THE**
**DEFENDANT'S MOTION TO COMPEL ARBITRATION**

## Table of Contents

I.    Introduction ................................................................................................................. 1

II.   Background ................................................................................................................ 1

III.  Legal Standard .......................................................................................................... 2

IV.   Argument .................................................................................................................. 3

    A.   Plaintiff has provided evidence showing that he never visited the website and thus never agreed to arbitrate his claims .................................................................................. 3

    B.   The UpFinances website does not even name the Defendant, nor can the plain language of the arbitration clause be read to require the arbitration of Plaintiff's claims against the Defendant, and not UpFinances. ............................................................................. 8

    C.   The purported agreement to arbitrate, even if agreed to between Mr. Newell and LendVia, is legally defective, which forecloses on the arbitrability of the Plaintiff's claims. . 15

V.    CONCLUSION ......................................................................................................... 21

## Table of Authorities

### Cases

*Arnaud v. Doctor's Assocs. Inc.*, 821 F. App'x 54 (2d Cir. 2020) ......................................... 20, 21

*Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325 (11th Cir. 2016) .................................... 8

*Berman v. Freedom Financial Network, LLC*, 30 F.4th, 849 (9th Cir. 2022) ....................... 20, 21

*Bradley v. DentalPlans.com*, No. CV 20-1094-BAH, 2024 WL 2865075 (D. Md. June 6, 2024) ................................................................................................................................. 16

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513 (3d Cir. 2009) ... 2

*Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024) ................................................................................ 9

*Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019) .......................................... 19

*Conrad v. Camping World Holdings Inc.*, No. 4:24-CV-171-CLM, 2025 WL 66689 (N.D. Ala. Jan. 9, 2025) ......................................................................................................................... 7, 8

*Cullinane v. Uber Techs., Inc.*, 893 F.3d 53 (1st Cir. 2018) ....................................................... 14

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995) ....................................................... 14

*Fuller v. Guthrie*, 565 F.2d 259 (2d Cir. 1977) ......................................................................... 12

*Gilliam v. Prince Health Grp. LLC*, No. 1:24-CV-00033, 2025 WL 1126545 (M.D. Tenn. Apr. 16, 2025) ................................................................................................................................. 7

*Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1 (1st Cir. 2014) .................................. 9

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010) ............................................ 12

*Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764 (3d Cir. 2013) ................................ 3

*Hobbs v. Apollo Interactive, Inc.*, No. 4:19-CV-57 (CDL), 2019 WL 6878863 (M.D. Ga. Dec.

17, 2019).......................................................................................................................... 6, 7

*Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002)............................................................ 12

*Interocean Shipping Co. v. National Shipping & Trading Corp.*, 462 F.2d 673 (2d Cir. 1972) .... 3

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156 (3d Cir. 2009) ................................ 2

*Lamps Plus, Inc. v. Varela*, 587 U.S. 176 (2019) ....................................................................... 3

*Larson v. Harman Mgmt. Corp.,* No. 1:16-cv-00219-DAD-SKO, 2016 U.S. Dist. LEXIS 149267 (E.D. Cal. Oct. 26, 2016)................................................................................................. 14, 16

*Mantha v. QuoteWozard.com, LLC*, No. CV 19-12235-LTS, 2021 WL 6061919 (D. Mass. Dec. 13, 2021)............................................................................................................................ 17

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) ....................... 4

*Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63 (2010)................................................................. 9

*Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307 (3d Cir. 2022)........................................... 3, 4

*Rojas v. GoSmith, Inc*., 2020 WL 831585 (N.D. Ind. Feb. 20, 2020)................................... 20, 21

*Ross v. McMillan*, 93 A.2d 874 (Pa. Super. 1953).................................................................... 13

*Schuchmann v. Great Am. Power LLC*, No. 3:23-CV-1604, 2024 WL 219267 (M.D. Pa. Jan. 19, 2024).................................................................................................................................. 21

*Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002) ............................................ 19

*Starling v. OnProcess Tech., Inc.*, No. 1:23-CV-10949-JEK, 2024 WL 1258501 (D. Mass. Mar. 25, 2024), *appeal dismissed sub nom. Starling v. AT&T Servs., Inc.*, No. 24-1341, 2024 WL 4542999 (1st Cir. Sept. 19, 2024) ........................................................................... 10, 11, 14

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010)........................................... 3

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989) ......................................................................................................................... 9

*Walker v. Nautilus, Inc.*, 541 F. Supp. 3d 836 (S.D. Ohio 2021) .............................................. 21

*Williams v. PillPack LLC*, 343 F.R.D. 201 (W.D. Wash. 2022) ................................................ 15

*Woodard v. SmartMatch Ins. Agency, LLC*, No. 23 CV 5246, 2024 WL 4252803 (N.D. Ill. Sept. 20, 2024)............................................................................................................................ 7

## Statutes

15 U.S.C. § 7001(c) .......................................................................................................... 16, 17

15 U.S.C. § 7001(c), (c)(1). ................................................................................................... 17

47 C.F.R. § 64.1200(a)(2).......................................................................................................16

47 C.F.R. § 64.1200(c)(2).......................................................................................................16

47 C.F.R. § 64.1200(f)(8) ................................................................................................. 14, 16

47 U.S.C. § 227 ...................................................................................................................... 1

54 PA. CONS. STAT. § 331 .................................................................................................... 13

9 U.S.C. § 1 ............................................................................................................................ 2

9 U.S.C. § 4 ..................................................................................................................... 2, 4, 9

iii

**Other Authorities**

Defendant's Motion to Compel, ECF No. 11 .................................................................................. 1

Delcaration of Jourey Newell (Newell Dec.)............................................................................. 5, 6

*In re Rules & Regs,* 27 FCC Rcd. 1830 (2012) ........................................................ 14, 15, 16, 17

I.      Introduction

The Court should deny Defendant LendVia LLC's ("LendVia" or "Defendant") motion to compel arbitration (ECF No. 11) for at least three reasons. *First*, the Plaintiff agreed to arbitrate nothing because he did not visit the website alleged, UpFinances.com, and as such is entitled to, at minimum, a summary arbitration jury trial. *Second*, Defendant LendVia cannot be said to be a direct or indirect beneficiary of any purported arbitration agreement as alleged between some mysterious third party and Plaintiff. *Finally*, the agreement to arbitrate is not sufficiently conspicuous and thus is unenforceable.

II.     Background

        This case involves highly-illegal prerecorded telemarketing calls made in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. (hereinafter referred to as the "TCPA") by the Defendant LendVia LLC to market its financial services offerings. Defendant LendVia seeks to avoid this lawsuit by compelling arbitration based on putative "Terms of Use" purportedly appearing on a website to which the Plaintiff is alleged to have submitted his personal information and allegedly consented to receive calls.

        In support of its motion to compel arbitration, Defendant has submitted supplementary materials, whereby it contends that Plaintiff submitted some (unspecified) submission, allegedly on December 8, 2024, to an online form on the website "https://upfinances.com/apply" (the UpFinances website). But tellingly absent from the Defendant's motion to compel is the most basic of evidence which would evidence that the Plaintiff visited the website alleged, or even *who owns that website*. Despite claiming to have information related to the opt-in, including a purported "IP address" and a "video replay of Plaintiff filling out and submitting the form," the Defendants provide *none of* that evidence. (ECF No 11-2, ¶ 6, 7). Instead of providing a copy of

1

the purported video showing the Plaintiff filling out the form, however, Defendants rely instead on a hearsay statement of what the video shows. Simply put, Plaintiff denies ever having visited the UpFinances website, and therefore never agreed to arbitrate any claims. That Defendants do not provide the video or any of the purported information is telling, particularly insofar as the Plaintiff denies ever having visited the UpFinances website, let alone agreed to arbitrate any claims. As such, the Plaintiff's declaration renders the Defendant's contentions incontrovertibly false. In sum, Plaintiff had no knowledge of, never agreed to, and would never agree to, arbitrate his claims against Defendant.

III.    Legal Standard

In evaluating a motion to compel arbitration in a TCPA case, the Federal Arbitration Act ('FAA'), 9 U.S.C. § 1 *et seq.*, governs the enforceability of an arbitration agreement. That statute commands that before compelling arbitration of a dispute, the Court must first be satisfied that the parties agreed to arbitrate that dispute. 9 U.S.C. § 4 (directing that courts must direct the parties to arbitration "upon being satisfied that the making of the agreement for arbitration . . . is not in issue"); *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 532 (3d Cir. 2009). Once an enforceable agreement has been established, the court must then turn to whether the particular dispute factually and legally falls within the scope of the agreement. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160, 163 (3d Cir. 2009).

Courts in the Third Circuit employ a two-standard inquiry when determining whether an enforceable agreement to arbitrate formed when deciding a motion to compel arbitration under the FAA. In evaluating whether to apply the Rule 56 standard or Rule 12(b)(6) standard, the court looks to whether the motion to compel has as a predicate the "requisite clarity to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable

2

evidence that is more than a naked assertion that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013). If it does, and the opposing party has produced no evidence to the contrary, the Rule 12(b)(6) standard is appropriate. *Id.*

Where, instead, *either* "the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity" to determine that a valid agreement to arbitrate was formed, *or* the party opposing the motion has come forth with evidence beyond a "naked assertion . . . that it did not intend to be bound" by such an agreement "to place the question in issue", the motion must be decided under the standard applicable to motions for summary judgment under Rule 56. *Id.* Under that standard, "An unequivocal denial that" the parties agreed to arbitrate, "accompanied by supporting affidavits," is sufficient to require jury determination on whether the parties agreed to arbitrate. *Id.* (ultimately citing *Interocean Shipping Co. v. National Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972)). Moreover, when a motion to compel arbitration cannot be decided on the face of the complaint, both parties must be afforded an opportunity to develop the factual record relevant to the motion through formal discovery. *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 329–30 (3d Cir. 2022).

IV.    Argument

A. *Plaintiff has provided evidence showing that he never visited the website and thus never agreed to arbitrate his claims.*
   "Arbitration is a matter of consent, not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010). The Supreme Court has held time and time again that, despite the liberal policy favoring arbitration, "consent" remains a "first principle that underscores" all arbitration decisions. *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019). Consent is essential under the FAA because arbitrators wield only the authority they are given. *Id.* As the party

3

seeking to arbitrate, the Defendant bears the burden of demonstrating, at the same level as at summary judgment, not only that a valid arbitration agreement exists but also that the *Plaintiff himself* agreed to be bound by the clause of which he had adequate legal notice. *Robert D. Mabe, Inc.*, 43 F.4th at 329 ("Because it is plausible that a number of the pharmacies were never given the terms of their Provider Agreements, it is likewise plausible that holding the pharmacies to the arbitration agreements contained therein would be procedurally unconscionable.").

The Federal Arbitration Act commands that, before compelling arbitration of a dispute, the Court must first be satisfied that the parties agreed to arbitrate that dispute. 9 U.S.C. § 4 (directing that courts must direct the parties to arbitration "upon being satisfied that the making of the agreement for arbitration . . . is not in issue"); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."). And, "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

The Defendant is not entitled to invoke any arbitration clause against Mr. Newell because the factual question of whether the Plaintiff even agreed as a matter of contract is called into issue. On face, and putting aside the Plaintiff's own declaration and evidence, there exist actual issues with the evidence proffered by the Defendant. Defendant repeatedly asserts threadbare, conclusory statements like the one that the "Plaintiff Jourey Newell submitted his information," without production of any evidence. As Mr. Newell's declaration makes clear, that assertion is manifestly untrue, and Defendant has not advanced a *scintilla* of evidence showing that the Plaintiff *himself* submitted any information to the (unnamed) "third-party lead generator[]" who operates the UpFinances website, let alone LendVia itself.

4

Defendant's purported evidence should have been provided to the Court in its motion, particularly under the Third Circuit's standard. Defendant provides no evidence that the website visit even took place as an initial matter, instead relying on two hearsay declarations. Notably, despite claiming that it has smoking gun evidence in the *form of a video replay showing the Plaintiff visiting the website*, Ali Dec. ¶ 7, it has not produced a copy of this purported video, any links to this purported video, or even a screenshot from this purported video showing the Plaintiff's face. It provides no printouts or records of the website visit, any of the information submitted, or any of the attendant metadata, including the *IP address at issue*, which would enable the Plaintiff to further disprove the Defendant's allegations by demonstrating that the IP address from which the website visit took place is not even his.

The Plaintiff's own declaration belies the viability of the Defendant's own motion, which lacks any evidence. The Plaintiff himself independently verifies that he did not visit the website, had nothing to do with the visit, and thus did not agree to arbitrate anything. (Newell Dec. ¶ 11, 17). The Plaintiff has never inputted any information into the UpFinances website, would have no reason to do so, nor did he direct anyone to do so on his behalf. (Newell Dec. ¶ 8, 9, 10). The Plaintiff has never even visited the UpFinances website, or even know who operates it. (Newell Dec. ¶ 11, 12). These serious and genuine factual disputes entitle Plaintiff to a jury trial on the issue of whether Plaintiff agreed to arbitrate anything.

Despite these internal deficiencies, and the Plaintiff's own denials, Defendant's motion is rife with the false assertion that the "Plaintiff" submitted information to the UpFinances website, a website that it does not even own, operate, or control. Defendant refuses to even *identify* who owns, operates, or controls the UpFinances website, or proffer any declaration or evidence from the website operator itself. All Defendant relies upon are hearsay statements of individuals who

5

lack actual knowledge of the website visit itself or UpFinances' business practices. The Plaintiff's own declaration demonstrates that the Defendant's allegations in this regard have no legs and are incontrovertibly false, warranting denial of the motion entirely, or at the very least a summary arbitration jury trial. (Newell Dec.). Not only does the Plaintiff categorically deny each element of the Defendant's theory, Mr. Newell's declaration also makes clear that a trial is unquestionably necessary to disprove any "evidence" that the Defendant may proffer. (Newell Dec. ¶ 19, 21, 24). The Plaintiff will also show through expert testimony and discovery that the Defendant's theory of the case and Defendant's contentions are false. (Newell Dec. ¶ 23).

At least two parallel court decisions dictate that the Defendant's motion ought to be denied on the basis of the Plaintiff's declaration *alone*. The Middle District of Georgia's decision in *Hobbs v. Apollo Interactive, Inc.*, No. 4:19-CV-57 (CDL), 2019 WL 6878863 (M.D. Ga. Dec. 17, 2019), is particularly instructive. There, a TCPA defendant sought to compel the plaintiff's claims to arbitration by contending, like Defendant here, that the plaintiff agreed to an arbitration provision as a result of his visits to the defendant's website. In finding no agreement to arbitrate existed, the court explained:

> Plaintiff presented evidence that he "did not visit www.bestautoinsurance.com" and that it would have been impossible for him to access the website in the manner Defendant says he did. According to Plaintiff, at 3:57 p.m. on August 29, 2018, Plaintiff was driving from a job at the Atlanta Zoo in southeast Atlanta, Georgia to Columbus, Georgia (southwest of Atlanta) and thus could not have been in Norcross, Georgia (northeast of Atlanta). Plaintiff also presented evidence that he does not own a device that uses the Windows 7 operating system; he uses his cellular telephone for internet access. Finally, Plaintiff stated that he "cannot know for certain who accessed" Defendant's website and input his information, but "[w]hat [he] do[es] know for certain is that [he] did not visit www.bestautoinsurance.com." From this, a reasonable factfinder could determine that Plaintiff did not enter his personal information on Defendant's website or click "submit." So, a reasonable factfinder could conclude that Plaintiff did not assent to the website's terms, including the arbitration provision. Accordingly, there is a genuine fact dispute as

to whether Plaintiff entered an arbitration agreement with Defendant, and the Court thus cannot conclude as a matter of law at this stage in the proceedings that the parties had a valid agreement to arbitrate. For this reason, Defendant's motion to dismiss in favor of arbitration is denied.

*Id.* at *1-*2 (cleaned up). Of course, Defendant here doesn't even proffer any of the evidence present there, like a geographic location, the operating system used, or IP address used. The *Hobbs* case is one of several in a long line of cases either denying such motions outright or ultimately concluding that a summary arbitration trial was necessary. *E.g.*, *Gilliam v. Prince Health Grp. LLC*, No. 1:24-CV-00033, 2025 WL 1126545, at *4 (M.D. Tenn. Apr. 16, 2025) ("[O]ther than the fact that Plaintiff's name and phone number were used, Prince Health offers no evidence that Plaintiff was the person who entered the information."); *Woodard v. SmartMatch Ins. Agency, LLC*, No. 23 CV 5246, 2024 WL 4252803, at *3 (N.D. Ill. Sept. 20, 2024).

The Court in *Conrad v. Camping World Holdings Inc.* reached a similar conclusion, reasoning that the factual question of whether or not the plaintiff opted in to receive text messages from the defendant on a website containing an arbitration provision was put at issue and denied a similar motion to compel arbitration. No. 4:24-CV-171-CLM, 2025 WL 66689, at *2 (N.D. Ala. Jan. 9, 2025). There, the court first agreed that its decision "as to whether an arbitration agreement exists is simply a matter of contract," and that when a party does not "sign or otherwise enter the contract, he cannot be bound by its terms." *Id.* The court noted that the defendant provided no evidence to controvert the plaintiff's declaration, as here, that he did not agree to arbitrate any claims because he did not own the telephone number at issue at the time of the alleged opt-in, and thus that the defendant could not "show the parties had a meeting of the minds about arbitrating claims related to the CWH text message service." *Id.*

Accordingly, because Defendant's motion to compel is exclusively predicated on a purported agreement between Plaintiff and some unspecified third party, who is alleged to have

operated the UpFinances website, there is no basis for the court to compel arbitration, and the Defendant's motion should be denied outright, as the Defendant has and will be unable to meet its burden of demonstrating even a genuine issue entitling the Plaintiff to wholesale denial of the motion under the applicable summary judgment standard. The court in *Conrad* did the same, holding as a matter of law that the defendant did not meet its burden of demonstrating a disputed factual issue with respect to the claimed provision to justify an arbitration trial. *Id.* And because the Plaintiff agreed to nothing, he did not agree to any incorporated class waiver or arbitrability provision. Being that there is demonstrably no meeting of the minds as an initial matter, the Defendant's motion is due to be denied as a matter of law.

    B.   *The UpFinances website does not even name the Defendant, nor can the plain language of the arbitration clause be read to require the arbitration of Plaintiff's claims against the Defendant, and not UpFinances.*

Second, by its plain terms and very text, the arbitration provision applies to any purported agreement between the website visitor and the mysterious "upfinances.com," which is a website, and not even a legal entity or company. It does not extend to any dispute, as here, that Plaintiff has between himself and LendVia, a third party. The legal issue of whether the agreement can be said to extend to LendVia is one that the Supreme Court has made clear that this Court retains the ability to decide, as well. The question of whether an arbitration agreement formed as a matter of law, as here, between Plaintiff and LendVia is *not* reserved to the arbitrator, even with a purported delegation provision, as here. While the FAA creates a "presumption of arbitrability" such that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," "the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). Consistent with the "general proposition" that "a contract cannot bind a non-party,"

*Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 9 (1st Cir. 2014), "the FAA does not require parties to arbitrate when they have not agreed to do so," *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

The Supreme Court recently addressed the proper procedure to follow when conflicts arise as to the enforceability of arbitration contracts, such as when one of the contracts is facially subject to an arbitration provision and one which is not. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 143 (2024). The Supreme Court held that the first question in any arbitration dispute must be what the parties agreed to. *Id.* at 145. The Supreme Court clarified that *this* "fundamental" question is one for the *Court*, not the arbitrator, to decide, and is driven by contractual interpretation principles under state contract law. *Id.* In *Coinbase*, the Supreme Court reaffirmed that "where, as here, a challenge applies "equally" to the whole contract and to an arbitration or delegation provision, a *court* must address that challenge." *Id.* at 151 (*quoting Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 71 (2010)). The Court went on to explain that in such cases, just like here, "basic principles of contract and consent require that result. Arbitration and delegation agreements are simply contracts, and, normally, if a party says that a contract is invalid, the court must address that argument before deciding the merits of the contract dispute." *Id.* (quoting *Rent-A-Ctr.*, 561 U.S. at 71 for the proposition that "If a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that [arbitration] agreement."). And the explicit text of Section 4 makes it clear that contract formation is a *jury* issue to the extent it does not rest on solely legal grounds, "upon such demand the court shall . . . specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed." 9 U.S.C. § 4.

The very Terms of Use themselves plainly *concede* that they only are a "binding agreement between you and us." The "agreement," at its outset, defines "us" as "upfinances.com," in pertinent part saying "Welcome to upfinances.com ("we," "us," "our," or "Site"). By using this Site and Service, you agree to be bound by these Terms of Service ("Terms")." Thus, by its very terms, the agreement only is between the website visitor and upfinances.com, which isn't even a cognizable legal entity. But the rest of the purported arbitration "agreement," which is misleadingly titled "Terms of Use" and hidden four links down on the first of two columns containing nine other links, is a hopelessly jumbled and legally deficient mess saying little of anything.

Perplexingly, later on in the agreement, the agreement supposedly clarifies that "us" supposedly includes any (unnamed) "affiliates, officers, directors, employees, and agents," in a parenthetical, but seemingly only for the purposes of an informal dispute resolution process informed through "negotiations and in good faith," and only to claims arising out of "your use of or access to our Site or services, or any products or services sold, offered, or purchased through our Site or services." Defendant selectively quotes only this paragraph of the agreement in its motion, and not the outset of the agreement, which defines the term "us." Such sweeping and hopelessly jumbled word salad is plainly insufficient to allow the Defendant here, LendVia, to claim that it was a beneficiary of such an agreement. On this point, the case of *Starling v. OnProcess Tech., Inc.*, No. 1:23-CV-10949-JEK, 2024 WL 1258501, at *5 (D. Mass. Mar. 25, 2024), is instructive. *appeal dismissed sub nom. Starling v. AT&T Servs., Inc.*, No. 24-1341, 2024 WL 4542999 (1st Cir. Sept. 19, 2024).

In *Starling*, the wireless company AT&T attempted to compel arbitration of a non-signatory's claims against AT&T under the theory that the non-signatory had been listed as an

10

alternate point of contact for a signatory family member's AT&T account. There, the Court
rejected such a sweeping view of the subject arbitration agreement that purported to bind "all
authorized or unauthorized users or beneficiaries of the Service," as well as the parties'
"respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and
assigns," that AT&T argued rendered the non-signatory a beneficiary bound by the agreement.
*Starling*, 2024 WL 1258501, at *5. Unlike here, there, those terms were carefully and exactingly
defined. Nevertheless, the Court still refused to broaden the scope of the agreement. In reaching
that conclusion, the Court reasoned that a "TCPA claim is not a benefit of a contract for internet
service; it is an independent cause of action created by Congress in response to 'a torrent of
vociferous consumer complaints about intrusive robocalls' that could 'automatically dial a
telephone number and deliver an artificial or prerecorded voice message.'" *Id.* at *5–*6. That is
plainly the case here, and even more so when "us" only includes the website itself.

While the scope of the claims subject to arbitration on the UpFinances website may be
broad in some places (a premise that is questionable as an initial matter as, unlike in *Starling*, the
"agreement" doesn't even provide the legal names of the parties to the contract purportedly
bound by it), the broad scope of the arbitration provision does not broaden the parties to the
arbitration agreement beyond the explicit parties named thereon that may have an obligation to
arbitrate claims between them. There is nothing in this arbitration provision that requires the
Plaintiff to arbitrate claims directly against LendVia, who isn't mentioned by name in the
agreement or even as one of its "affiliates, officers, directors, employees, and agents." The
rationale for this rule is obvious. Without naming entities to a contract with sufficient specificity
and exacting language, a contracting party could rely on any purported arbitration agreement
between the parties to bind up family members and associates who could hardly be said to

11

benefit from, let alone be aware of, such an agreement, and in so doing, sidestep the common law principle that the parties to a contract need capable of contracting.

Arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (arbitration may be compelled "only where the court is satisfied that the parties agreed to arbitrate *that dispute*") (emphasis in original). This rule stems from the "first principle" that arbitration is "strictly a matter of consent," and thus "is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Granite Rock*, 561 U.S. at 299 (emphasis in original). Though policy favors arbitration, "federal policy alone cannot be enough to extend the application of an arbitration clause far beyond its extended scope." *Fuller v. Guthrie*, 565 F.2d 259, 261 (2d Cir. 1977).

Here, the scope of the arbitration provision, by its plain text, does not apply to the conduct at issue here, the TCPA violative illegal calls the Plaintiff received, or to the party at issue here, LendVia. It only applies to a dispute with respect to "any aspect of our relationship or any contact between us, direct or indirect, or arising out of this or previous versions of these Terms, your use of or access to our Site or services, or any products or services sold, offered, or purchased through our Site or services." The explicit definition of "us" in the agreement as *only* including UpFinances, not LendVia is manifestly inconsistent with the Defendant's position, stated in its motion, that it is somehow also entitled to benefit from the agreement to which it is not a party. For that matter, the agreement says nothing about telemarketing calls, or even anything about marketing conduct generally. And even this portion of the "agreement," by its plain text, extends only to "us," not "us (including any affiliates, officers, directors, employees,

12

and agents).” To rub salt in the wound, it's unclear who the website visitor is even contracting with. Certainly, LendVia is not named. And “upfinances.com” is a ghost of a fictitious entity incapable of contracting that remains completely unidentified.

Pennsylvania contract law also controls on this issue. The Pennsylvania Fictitious Names Act, 54 PA. CONS. STAT. § 331 was drafted “to protect persons giving credit in reliance on the fictitious name, and to definitely establish the identity of the individuals owning the business, for the information of those who might have dealings with the concern.” *Ross v. McMillan,* 93 A.2d 874, 875 (Pa. Super. 1953). In other words, the Act prevents an entity from concealing its true identity from those parties with which it contracts or otherwise does business. Neither “UpFinances,” nor UpFinances.com” are registered as fictitious entities with the Commonwealth. The Act thus bars LendVia from moving to compel arbitration.

In pertinent part, 54 PA. CONS. STAT. § 331(a) prohibits “any entity which has failed to register a fictitious name” from maintaining “any action in any tribunal of this Commonwealth.” And, of particular relevance here with respect to LendVia, nor can any action be maintained by any “successor or assignee of such entity on any right, claim or demand arising out of a transaction with respect to which such entity used such fictitious name until such entity, or an entity which has acquired all or substantially all of its assets, shall have complied with the provisions of this chapter.” *Id.* Even putting aside the plain language of the contract for a moment, as simple matter of Pennsylvania law, LendVia is estopped from even *attempting* to compel any arbitration rights it may claim to be entitled, because UpFinances has not complied with the provisions requiring registration of its fictitious name under the provisions of Pennsylvania law as against a Pennsylvania resident. Pennsylvania law, therefore, bars the maintenance of “any action,” including one to compel arbitration, absent correct

13

corporate registration under the provisions of the Fictitious Names Act. As Defendant itself concedes, "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 61 (1st Cir. 2018) (*quoting First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

An arbitration agreement is to be interpreted on its plain terms; although it may incorporate entities by reference, it cannot be used to bind anyone and everyone associated with it. *Starling* 2024 WL 1258501, at *5. As a matter of public policy, as supported by well-established Pennsylvania law, therefore, this supposed agreement to arbitrate is not and cannot extend to LendVia. Moreover, because the website did not obtain Plaintiff's consent for LendVia to make telemarketing calls as an initial matter, any purported arbitration language in the website's terms and conditions does not apply to TCPA disputes, nor could it, because TCPA consent rules require naming a *specific seller* on whose behalf consent is obtained. *See Larson v. Harman Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO, 2016 U.S. Dist. LEXIS 149267, *5-7 (E.D. Cal. Oct. 26, 2016) (quoting 47 C.F.R. § 64.1200(f)(8)); *In re Rules & Regs,* 27 FCC Rcd. 1830, 1844 at ¶33 (2012) (holding that consent must include disclosure that the consumer is consenting to receive telemarketing calls *from a specific seller*). If there is no consent with respect to a specific seller who made the illegal telemarketing calls at issue here, there can be no dispute with respect to a specific seller for an arbitrator to arbitrate. Thus, even if the Court were to ignore Defendant's complete lack of evidence of a visit by the Plaintiff to the website, there is no basis to conclude that Defendant is a signatory or non-signatory-beneficiary of the arbitration agreement or any other agreement that would have resulted from the website visit, let alone in a manner complying with Pennsylvania law, and Defendant's motion to compel should be denied.

14

C. *The purported agreement to arbitrate, even if agreed to between Mr. Newell and LendVia, is legally defective, which forecloses on the arbitrability of the Plaintiff's claims.*

The purported agreement to arbitrate based on alleged consent to contact the Plaintiff is legally defective because it fails to name the specific seller or goods being sold here, that is, LendVia's lending services, as LendVia appears *nowhere* on the UpFinances website.

As a matter of law, the UpFinances website contains no language sufficing for "prior express written consent" as required by the TCPA for a prerecorded voice because it does not clearly authorize calls made by or on behalf of LendVia, and thus this dispute falls outside the scope of any arbitration agreement. Without legally sufficient TCPA consent, there is no consent for an arbitrator to arbitrate. Another court examined far less defective "opt in" language and held that such language does not constitute TCPA prior express written consent. *See Williams v. PillPack LLC*, 343 F.R.D. 201, 209 (W.D. Wash. 2022) (certifying a TCPA class, rejecting defence claim that individual issues relating to consent would predominate, and noting the TCPA disclosure relied upon did not disclose the defendant as the "seller"). TCPA consent rules require naming a specific *seller*, like LendVia, on whose behalf consent is obtained. *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 at ¶33 (2012); 47 C.F.R. § 64.1200(f)(9). It follows that, if the website did not conspicuously obtain consent for LendVia to make telemarketing calls as an initial matter, any purported arbitration language in the Terms does not apply to TCPA disputes, nor could it, because TCPA consent rules require naming a *specific seller*, and not some unspecified partner entities or lenders.

In other words, TCPA consent must name the company (like LendVia) whose product is being sold, in addition to being logically and topically related to the product being sold. Consent to receive calls from any manner of "partners" is insufficient consent. It follows that, if the

website did not obtain any purported consent to receive telemarketing calls selling LendVia's products and services, any purported arbitration language on that website does not apply to TCPA disputes, nor can it, because the consent must be obtained to receive such telemarketing calls *from a specific seller*. *See Larson v. Harman Mgmt. Corp*., No. 116CV00219DADSKO, 2016 WL 6298528, at *4 (E.D. Cal. Oct. 27, 2016) (quoting 47 C.F.R. § 64.1200(f)(8)). Nor, for that matter, do courts recognize defective consent under the TCPA. *Bradley v. DentalPlans.com*, No. CV 20-1094-BAH, 2024 WL 2865075, at *7 (D. Md. June 6, 2024), (denying motion for summary judgment on basis that legally sufficient consent was not obtained). Without naming a specific seller, any random website could rely on an arbitration agreement on naming any unspecified "affiliates" to extend to any interaction on the website, even a legally deficient one, and turn the entire arbitration process into one of coercion and "gotcha" tactics.

Second, and independently, the arbitration agreement, and any corresponding consent obtained therefrom, is legally deficient because it did not comply with the requirements of the Federal E-SIGN Act, 15 U.S.C. § 7001(c). As described above, the FCC's regulations implementing the TCPA require a *signed* writing. 47 C.F.R. § 64.1200(c)(2); 47 C.F.R. § 64.1200(a)(2). Of course, one may elect to obtain electronic consent, including to arbitrate, in lieu of a signed writing. But if it does, that TCPA consent, and any associated arbitration agreement, must comply with the requirements under the E-SIGN Act. 47 C.F.R. § 64.1200(f)(9) (defining prior express written consent and requirements for electronic signatures); *see In re Rules 2012* ¶ 34 ("[C]onsent obtained in compliance with the E-SIGN Act will satisfy the requirements of our revised rule, including permission obtained via an email, website form, text message, telephone keypress, or voice recording."). Consent obtained in accordance with the E-SIGN Act's requirements may be sufficient TPCA consent; consent obtained in in violation of

16

those requirements is a legal nullity because it is unsigned. *Id.*

Here, the legal disclosures required by the Act were not included in the websites or purported "Terms of Use" containing the purported arbitration agreement that Defendant identified. The record is devoid of any evidence even showing an *attempt* to comport with the Act's requirements. Indeed, no part of the website or the "Terms of Use" attached to the Defendant's motion indicated the hardware or software requirements for access to and retention of electronic records, nor was any consumer given the opportunity to provide their consent to sign and receive documents electronically. 15 U.S.C. § 7001(c)(1)(C)(i), (ii). Moreover, the website did not give any consumer a "statement" informing them of the procedures for granting or withdrawing consent, or *any* of the other required consumer disclosures, including the very consent to electronic records themselves. 15 U.S.C. § 7001(c), (c)(1).

A defendant lost a motion for summary judgment on substantively similar issue in *Mantha v. QuoteWozard.com, LLC*, No. CV 19-12235-LTS, 2021 WL 6061919, at *8 (D. Mass. Dec. 13, 2021), based on a substantially similar agreement to that proffered here. In *Mantha*, the Court held that the consent to make calls purportedly obtained via a website was legally deficient because it did not meet the requirements of the E-SIGN Act. *Id.* As a result, in *Mantha*, the court entered partial summary judgment *on behalf of a plaintiff* on the issue of consent. *Id.* As the Court held in *Matha*, such a failure to obtain the required E-SIGN disclosures is fatal to compliance with the E-SIGN Act and therefore cannot constitute express written consent. *Id.* Relatedly, a failure to do so is also dispositive of the enforceability of the arbitration provision as no legally-binding contract formed as an initial matter, let alone one purporting to provide consent to receive robocalls or arbitrate this dispute. The *Bradley* court similarly denied relief to the defendant at summary judgment based on a nearly identical failure to comply with E-SIGN's

requirements. *Bradley*, 2024 WL 2865075, at *7. Therefore, even if the Court were to ignore Defendant's complete lack of evidence of Plaintiff's factual agreement to arbitrate, there is no basis to conclude that the purported agreement was legally sufficient and therefore there is no dispute as to consent, including factual issues of whether the Plaintiff consented to receive calls or not, for the arbitrator to arbitrate.

Third, and finally, the website is insufficiently specific enough to put a website visitor on notice that they are agreeing to an arbitration clause. A review of the UpFinances website form reflects that there is a big, yellow "continue" button, and a series of 9 links, spread across two columns, followed by a bigger button that spans the width of the two columns, stating "Struggling to fill out this form?:"



The hallmark of the enforceability of a clickwrap agreement is the conspicuousness of its notice. *See Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 (2d Cir. 2002). An offeree is "not bound by inconspicuous contractual provisions of which he is unaware, contained in a document whose contractual nature is not obvious." *Id.* As numerous courts have held, burying the purported arbitration agreement under the "Terms of Use" link on the page, which is the fourth link in the first column, as illustrated on the proceeding page, is a game of hide-and-seek insufficient to give notice of the fact this link, as opposed to any one of the other 8 links and two large buttons also on the page, contains an arbitration provision. *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 765 (N.D. Cal. 2019) ("Users cannot be reasonably expected to click on every word of the sentence in case one of them is actually a link.").

Nothing in the language on the website gives notice to an ordinary consumer that the "link to "Terms of Use," as opposed to the eight other links and two other large buttons on the website, contain an agreement to arbitrate *at all*. The fact that the Defendant is attempting to compel arbitration based on a "gotcha" clause, on a website it doesn't even own or operate, is all the more obvious because the "Terms of Use" link is simply buried upon the other links on the page. What's more, the "Terms of Use" popup requires the user to scroll through the pop-up box to even be able to read the purported Arbitration Agreement, which appears 75% in:



In *Berman v. Freedom Financial Network, LLC*, the Ninth Circuit affirmed the denial of a motion to compel arbitration in a web form with far fewer maladies then here, but where the link had no "conspicuous notice" of the terms to which the consumer will be bound, nor did it "prominently display . . . proposed contractual terms," just like here. 30 F.4th, 849, 856–57 (9th Cir. 2022). This website in this case is remarkably similar, if not more problematic, than the one in *Arnaud v. Doctor's Assocs. Inc.*, 821 F. App'x 54, 56 (2d Cir. 2020), where the Second Circuit held that a disguised and cluttered link to terms and conditions was insufficient to give notice of a "clickwrap" arbitration provision. *Doctor's Assocs.* and *Berman* are two of many cases in the TCPA and consumer protection context where courts reject clickwrap agreements, particularly when their existence is buried, here among eight other links, or obscured, and when the arbitration clause appears approximately three quarters of the way down a pop up box.

And unlike in *Pricharda*, *Dobbs*, or *Liptak*, though it is true that clickwrap agreements are routinely enforced in the Third Circuit and elsewhere, they are *only enforced when the nature of the link and its legal significance is pointed out to the consumer*. That is manifestly not the case here, where the link to the purported arbitration agreement is buried among eight others in a sea of links and not otherwise distinguishable from other page content. Procedural and substantive conscionability is still a prerequisite to the enforcement of a clickwrap agreement, and such so-called "dark patterns" of hiding relevant contractual terms from consumers renders such clickwrap agreements unconscionable, and, by extension, unenforceable. This is not to mention the fact that, just like in *Rojas v. GoSmith, Inc*., another TCPA case "Defendant did nothing that drew attention to [the arbitration provision] . . . [and] [n]o evidence shows any indication that Plaintiff was advised to read the entirety of the webpage." 2020 WL 831585, at *4 (N.D. Ind. Feb. 20, 2020). Other courts have followed similar reasoning. *See, e.g.*, *Walker v.*

*Nautilus, Inc.*, 541 F. Supp. 3d 836, 841 (S.D. Ohio 2021) (holding that due to the inconspicuous nature of the website's terms of use, plaintiff had neither actual nor constructive notice of arbitration provision and therefore could not assent to it). This makes this case far more similar to *Schuchmann v. Great Am. Power LLC*, where the Middle District denied a motion to compel arbitration in a TCPA case when "the record as developed so far does not indicate that Plaintiff had been informed of the arbitration clause," based on far less problematic website content than here. No. 3:23-CV-1604, 2024 WL 219267, at *4 (M.D. Pa. Jan. 19, 2024).

As such, because the website did not draw notice to the arbitration provision or the link containing it on the text of the purported submission page, in a sea of eight other identical links spread across two columns, that provision is inconspicuous and unenforceable. Like in *Rojas*, *Schuchmann*, *Doctor's Assocs.*, and *Berman* nothing was said to Plaintiff or any website visitor to place a reasonable person on even inquiry notice that they are agreeing to binding arbitration.

Because any alleged agreement to arbitrate does not name LendVia and thus was legally sufficient for the purposes here of obtaining TCPA consent, because the website did not comply with E-SIGN's requirements, and because the website did not provide conspicuous notice of the arbitration provision, the Court must also deny the Defendant's motion on independent legal grounds, even if the Court were to hold, *arguendo*, that the Plaintiff agreed to arbitrate something as a factual matter.

V.    CONCLUSION

For all of the foregoing reasons, Defendant's motion should be denied in its entirety, or in the alternative, a summary arbitration jury trial ordered.

Dated: May 28, 2025

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

May 28, 2025

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com