**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

**JOUREY NEWELL**                                    **Case No. 2:25-cv-01018-GJP**

      Plaintiff,

v.

**LENDVIA LLC,**

      Defendant.

_____/

**PLAINTIFF'S OPPOSITION TO THE**
**DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS**

i

# Table of Contents

INTRODUCTION ......................................................................................................................... 1

BACKGROUND ......................................................................................................................... 1

ARGUMENT .............................................................................................................................. 5

    I.    The Motion is Procedurally Improper, as this Court has Already Found in Response to a Similar Motion Filed by the Same Law Firm. ................................................................. 5

    II.    Striking Class Allegations without Discovery is Premature and The Plaintiff's Class Definitions are Not Overbroad. ......................................................................................... 6

    III.    The Plaintiff's Class Definition Should not be Stricken because of Potential Affirmative Defenses. ..................................................................................................... 11

    IV.    Individuals do not have to Personally Register their Numbers on the National Do Not Call Registry ..................................................................................................................... 14

    V.    For nearly identical reasons, there exist common questions of law or fact applicable to the class. ............................................................................................................................... 16

    VI.    No class definition is impermissibly vague. ................................................................. 17

CONCLUSION ......................................................................................................................... 18

# Table of Authorities

## Cases

*Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, No. 15-cv-6314-YGR, 2017 WL 1806583, at *7 (N.D. Cal. May 5, 2017) ................................................................................................. 11

*Arcare, Inc. v. ITF Pharma, Inc.*, No. 2:21-CV-00953-JDW, 2021 WL 3015409 (E.D. Pa. June 21, 2021) ................................................................................................................................... 10

*Baccari v. Carguard Admin., Inc.*, No. 22-CV-1952, 2022 WL 3213839 (E.D. Pa. Aug. 8, 2022) 6

*Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335 (2020) ............................................... 1

*Bee, Denning, Inc. v. Capital Alliance Group*, No. 13-cv-2654, 2015 U.S. Dist. LEXIS 129495 (S.D. Cal. Sept. 24, 2015) ..................................................................................................... 7

*Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964 (N.D. Cal. 2019) ......................... 13

*Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015) ................................ 12

*Browning v. Anheuser-Busch*, LLC, 539 F. Supp. 3d 965 (W.D. Mo. 2021) .............................. 18

*Callier v. Am.-Amicable Life Ins. Co. of Texas,* No. EP-22-CV-00018-FM, 2022 WL 17732717 (W.D. Tex. Oct. 18, 2022) ..................................................................................................... 15

*D.G. v. William W. Siegel & Assocs.*, 791 F. Supp. 2d 622 (N.D. Ill. 2011) .............................. 15

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013) ...................................................... 6

*Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598 (9th Cir. 2011) ........................................ 18

*Heard v. Nationstar Mortg. LLC*, No. 16-cv-00694- MHH, 2018 WL 4028116, at *5 (N.D. Ala. Aug. 23, 2018)........................................................................................................................... 6

*Jackson v. Meadowbrook Fin. Mortg. Bankers Corp.,* No. 4:22-CV-01659, 2023 U.S. Dist. LEXIS 41211, at *7 (M.D. Pa. Mar. 10, 2023)................................................................... 9

*Johnson v. Comodo Grp., Inc.,* No. 16-4469 (SDW) (LDW), 2020 U.S. Dist. LEXIS 18033, at *25-27 (D.N.J. Jan. 31, 2020). ........................................................................................... 8

*Klassen v. Solid Quote LLC*, No. 23-CV-00318-GPG-NRN, 2023 WL 7544185 (D. Colo. Nov. 14, 2023).............................................................................................................................. 15

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) ............................................. 2, 7

*Lizama v. Venus Labs., Inc.,* 679 F. Supp. 3d 848 (E.D. Mo. 2023) ........................................... 18

*Martinez v. TD Bank USA, N.A.*, No. CV 15-7712(JBS/AMD), 2017 WL 2829601 (D.N.J. June 30, 2017)............................................................................................................................. 13

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012) ................................ 13

*Olney v. Progressive Cas. Ins. Co.,* 993 F. Supp. 2d 1220 (S.D. Cal. 2014)............................... 15

*Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015) ................................................................................................................... 8

*Richardson v. Verde Energy USA, Inc.*, 354 F. Supp. 3d 639 (E.D. Pa. 2018) ........................... 10

*Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278 (N.D. Iowa June 9, 2022) ............................................................................................... 14, 15

*Rosenberg v. LoanDepot.com LLC,* 435 F. Supp. 3d 308, 318 (D. Mass. 2020). ....................... 12

*Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12-cv-2257, 2014 U.S. Dist. LEXIS 166275 (N.D. Ohio Dec. 1, 2014)....................................................................... 7, 17

*Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 U.S. Dist. LEXIS 63122, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014) ..................................................................... 6, 12

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................ 16

*Warnick v. Dish Network LLC*, 301 F.R.D. 551 (D. Colo. 2014)................................................. 13

*Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500 (S.D.N.Y. 2014).................................................. 13

**Statutes**

16 C.F.R. § 310.4 ........................................................................................................................... 2

47 C.F.R. § 64.1200 .................................................................................................................. 2, 14

47 U.S.C. § 227................................................................................................................... 1, 2, 15

Fed. R. Civ. P. 23 ........................................................................................................................ 16

**Other Authorities**

Defendant's Motion to Strike (ECF No. 10) ................................................................................. 1

Plaintiff's Complaint (ECF No. 1) ................................................................................... 2, 3, 4, 5

**INTRODUCTION**

The Court should deny Defendant LendVia LLC's ("LendVia" or "Defendant") motion to strike class allegations (ECF No. 10) because the Plaintiff's proposed class definition is by no means overly broad. Moreover, the class, alleging illegal calling conduct arising out of an automated calling campaign, is the hallmark of commonality, as courts have held with respect to similar TCPA class actions. Multiple courts across the country have rejected identical arguments to here that a class like the one proposed here should be stricken because they are allegedly uncertifiable. Defendant's motion should therefore be denied in its entirety.

**BACKGROUND**

As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

However, the TCPA doesn't only restrict robocalls. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of

1

intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

"The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')...Private suits can seek either monetary or injunctive relief. *Id*...This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace."  *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

Plaintiff alleges as follows. Plaintiff's telephone number (the "Number"), (484)-XXX-XXXX, is a cellular telephone number on the National Do Not Call Registry. *See* ECF No. 1 at ¶ 28-31. The Plaintiff never consented to receive telemarketing calls from the Defendant, , never did business with LendVia, nor asked or inquired to be a customer of LendVia. *Id.* at ¶ 32.

2

Despite that, the Plaintiff received multiple pre-recorded messages that said:

> Hello, this is an update from Community Lending Union. We've been trying to reach you regarding your pending pre-approval for a personal loan or line of credit. You are pre-qualified for a loan up to $65,000 based on your credit profile and current economic situation. This loan could help you consolidate high-interest debt or lower your monthly payments into a single, more manageable and affordable payment, with rates starting as low as 6.99%. To review your options and finalize your approval, please call us back at 855-356-2569 as soon as possible. Our underwriting team is available Monday through Friday from 7 a.m. to 6 p.m. and Saturdays from 8 a.m. to 3 p.m. Again, that's 855-356-2569. Please note, this offer expires at the end of February and is available for a limited time. We look forward to assisting you.

In order to ascertain the identity of the caller behind these aforementioned calls that was calling him illegally, the Plaintiff called the 855-356-2569 number back, as the message instructed, and was connected to an individual named Kevin Parsons, who is a Loan Specialist at LendVia. Mr. Parsons attempted to sell Mr. Newell on LendVia's debt consolidation loan products, and that sales pitch culminated in the Plaintiff requesting an email from Mr. Parsons to verify that he worked for LendVia, which Mr. Parsons sent:



*Id.* at ¶¶ 38-39. Thereafter, on February 13, 2025, the Plaintiff requested that LendVia place the Plaintiff's number on its internal Do Not Call list, which such request was personally acknowledged by Kevin Parsons:

No problem Jourey.

If I may ask, what changed your mind?

Before you mentioned you were looking for a loan and interested in doing business with us so I am just curious why the sudden change of heart?

On Thu, Feb 13, 2025 at 8:59 AM Jourey Newell <elom227@gmail.com> wrote:

> Good morning,
>
> I am hereby requesting to be placed on your company's internal Do not call list.
>
> Sincerely,
>
> Jourey Newell
>
> (484) 213-4132

--



**Kevin Parsons | Lendvia**
Loan Specialist
(949) 606-7447  ☎ (800) 216-5799
kparsons@lendvia.com
www.lendvia.com
2525 Main St Suite 420, Irvine, CA 92614



   

*Id.* at 40. However, he still received more calls. *Id.* at ¶¶ 42-44.

Due to the *en masse* nature of calling campaign, the Plaintiff has filed this matter as a putative class action on behalf of the following class of individuals:

> **Robocall Class:** All persons in the United States who, (1) within four years prior to the commencement of this litigation until the class is certified (2) received one or more calls on their cellular telephone or any other protected telephone service (3) from or on behalf of LendVia, (4) sent using the same, or substantially similar, pre-recorded message used to contact the Plaintiff.

> **National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call, text message, or combination thereof, from Defendant or a third party acting on Defendant's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

4

**Internal Do Not Call Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls in a 12-month period, (3) who were not current customers of the Defendant at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

*Id.* at ¶ 60.

## ARGUMENT

### I.    The Motion is Procedurally Improper, as this Court has Already Found in Response to a Similar Motion Filed by the Same Law Firm.

In denying a similar motion filed by the same lawyers that represent the Plaintiff here,

Judge Beetlestone had held:

> As an initial matter, Carguard's Motion to Strike pursuant to Federal Rule of Civil Procedure is untimely because it falls afoul of Federal Rule of Civil Procedure 12(g)(2), which provides that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes *a motion under this rule* must not make *another motion under this rule* raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12 (emphasis added); *see also Jaroslawicz v. M&T Bank Corp.*, 912 F.3d 96, 105 n.4 (3d Cir. 2018), *reh'g granted, judgment vacated on other grounds*, 925 F.3d 605 (3d Cir. 2019) (stating that Rule 12(g) "prohibits a party from making a successive motion to dismiss if that motion 'rais[es] a defense or objection that was available to the party but omitted from its earlier motion'" (quoting Fed. R. Civ. P. 12(g)(2))). The purpose of the Rule is "to prevent [] dilatory motion practice . . . a course of conduct that was pursued often for the sole purpose of delay." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1384 (3d ed. 2022); *see also Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 n.2 (9th Cir. 1988) (noting that the purpose of Rule 12(g) is "simple and basic: a series of motions should not be permitted because that results in delay and encourages dilatory tactics"). Consequently, "the right to raise [Rule 12] defenses [and objections] by preliminary [*4] motion is lost when the defendant neglects to consolidate them in his initial motion." Wright & Miller, *supra* at § 1385.
>
> A motion to strike is "a motion under" Rule 12; specifically, a motion to strike is one made under Rule 12(f). *See* Fed. R. Civ. P. 12(f); *see also* Wright & Miller, *supra* at § 1388 ("Motions to strike . . . are motions under Rule 12 and thus clearly are within the language of subdivision (g)."). Because Carguard filed a separate motion to strike *after* it already filed a motion to dismiss pursuant to Rule

12(b)(6), it has failed to comply with Rule 12(g)'s mandate to consolidate all motions "available to [it]" into a single motion.

*Baccari v. Carguard Admin., Inc.*, No. 22-CV-1952, 2022 WL 3213839, at *1 (E.D. Pa. Aug. 8, 2022). Here, Defendant filed a motion to strike class allegations, at ECF 10, *after* it had filed a motion to dismiss, at ECF 8. That is procedurally improper, and, as *Baccari* counsels, warrants denial of the motion. This Court should hold the same.

## II.    Striking Class Allegations without Discovery is Premature and The Plaintiff's Class Definitions are Not Overbroad.

Significantly, because "the TCPA is 'a consumer protection statute which is remedial in nature,' this Court must interpret the statute broadly" and certainly not allow it to be turned on its head and weaponized against consumers." *Heard v. Nationstar Mortg. LLC*, No. 16-cv-00694-MHH, 2018 WL 4028116, at *5 (N.D. Ala. Aug. 23, 2018). Indeed, the Third Circuit has held, "because the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013).

"Courts should exercise caution when striking class action allegations based solely on the pleadings, because class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 U.S. Dist. LEXIS 63122, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014) (ultimately finding plaintiff in a TCPA case improperly pled a fail-safe class, but granting plaintiff leave to amend its pleadings to remove reference to consent, which is not included here).

In essence, LendVia asks this Court to hold, as a matter of law, that a TCPA class is not ascertainable. As the Fourth Circuit explained:

> In enacting the law, Congress sought to deter an activity that, while pernicious and disruptive, does not trigger extensive liability in any single case. Since few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows

6

for resolution of issues without extensive individual complications.

*Krakauer*, 925 F.3d at 656 (noting that "the TCPA clearly supports class-wide resolution"). Indeed, courts around the country have certified numerous class actions based on violations of the TCPA. Unsurprisingly, courts routinely find class actions to be the superior method of adjudicating claims in the TCPA context:

> This type of case weighs in favor of the class action as a superior device. Under the TCPA, the maximum recovery for each class member is $1,500, and it does not allow for fee shifting. Hence, individual class members are unlikely to litigate TCPA claims. Second, in finding federal courts have concurrent jurisdiction with state courts over TCPA actions, the Supreme Court effectively found that Congress did not intend state small claims courts to be the sole forum for TCPA claims. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 751, 181 L. Ed. 2d 881 (2012).

*Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12-cv-2257, 2014 U.S. Dist. LEXIS 166275, at *14-15 (N.D. Ohio Dec. 1, 2014). As another federal court found while certifying a TCPA case:

> Jurists and commentators have long debated the merits of the modern class action and the public policies behind Rule 23…It is the view of this Court that the instant case highlights one of the strongest justifications for the class action device: its regulatory function…A statute such as the TCPA, which provides for a relatively small recovery for individual violations but is designed to deter conduct directed against a large number of individuals, can be effectively enforced only if consumers have available a mechanism that makes it economically feasible to bring their claims. Without the prospect of a class action suit, corporations balancing the costs and benefits of violating the TCPA are unlikely to be deterred because individual claims will not impose the level of liability that would outweigh the potential benefits of violating the statute.

*Bee, Denning, Inc. v. Capital Alliance Group*, No. 13-cv-2654, 2015 U.S. Dist. LEXIS 129495, at *37-38 (S.D. Cal. Sept. 24, 2015). At bottom, given that courts regularly certify TCPA class actions, Defendant's suggestion that the Plaintiff cannot meet the elements necessary to certify his proposed TCPA class is not credible.

A class is not fail-safe if "[m]embership … can be determined without reaching any legal conclusions to determine whether someone is in the class, one simply needs to answer questions … determined by objective criteria."  *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015) (internal annotations omitted).  Contrary to what Defendant argues, to determine class membership in this case the Court will ask the following series of objective, factual questions:

- Did LendVia's make pre-recorded calls?

- Did LendVia's make calls to numbers on the National Do Not Call Registry?

- Were those numbers called 2 or more times in a 12 month period?

- Were those numbers "residential"?

- Did LendVia call individuals who had asked not to be contacted?

- Does Defendant claim to have obtained consent to call them in the same manner Defendant claims to have obtained consent to call Plaintiff?

*See id*. at *8-9 (finding that the plaintiff's proposed Class were not fail safe because "one simply needs to answer questions such as whether the person received a certain number of phone calls from Defendants within a certain timeframe").

Finally, this Court should not hold as a matter of law that a TCPA class is not ascertainable. Indeed, identifying class members in a TCPA case is simply a matter of expert work as other Courts in this Circuit have found when certifying a TCPA case. *See e.g. Johnson v. Comodo Grp., Inc.,* No. 16-4469 (SDW) (LDW), 2020 U.S. Dist. LEXIS 18033, at *25-27 (D.N.J. Jan. 31, 2020). The Court should find the same here.

In rejecting a similar argument previously in a TCPA case, the Middle District of

Pennsylvania rejected an identical argument over a substantively identical class definition proposed here in *Jackson v. Meadowbrook Fin. Mortg. Bankers Corp.*, No. 4:22-CV-01659, 2023 U.S. Dist. LEXIS 41211, at *7 (M.D. Pa. Mar. 10, 2023) (footnotes omitted):

> Meadowbrook directs this Court to a 2015 ruling by the Honorable Stewart R. Dalzell of the United States District Court for the Eastern District of Pennsylvania in *Zarichny v. Complete Payment Recovery Services, Inc.* There, the plaintiff brought a putative class action under the TCPA on behalf of herself and similarly situated individuals who received one or more calls on their personal cell phones from the defendants using an automatic telephone dialing system without prior consent. Judge Dalzell concluded that the class was an impermissible fail-safe class because "there is no way to provide notice to that putative class without the [*8] sort of extensive fact-finding that class actions should avoid," and "at the conclusion of the litigation, should [the defendant] prevail against [the plaintiff], any other putative class recipient would be free to litigate the same claim against [the defendant]."

> Nine months after his ruling in *Zarichny*, Judge Dalzell confronted a similar question—but reached a different result. In *Abella v. Student Aid Center, Inc.*, as in *Zarichny*, the defendant moved to strike the class allegations relating to violations of the TCPA, arguing that "the class definition proposed by the plaintiff was an impermissible 'fail-safe' class."**37** But Judge Dalzell concluded that the proposed class in *Abella* did not "meet[] the definition of a fail-safe class," highlighting two distinctions between the proposed classes in *Abella* and *Zarichny*: (1) unlike the proposed class in *Zarichny*, the *Abella* class "makes no reference to [the defendant's] use of an automatic telephone dialing system[,] . . . which is a required element for a claim under the TCPA"; and (2) the plaintiff in *Abella* did not "rely[] on potential class members' word when determining whether they gave [the defendant] consent to send them text messages," relying instead [*9] on the defendant's "internal records that detail whether it received consent to text certain phone numbers."

> Since 2015, district courts within this circuit have consistently emphasized the latter distinction Judge Dalzell highlighted in *Abella*. For example, in *Johnson v. Ally Financial Inc.*, my colleague, the Honorable Christopher C. Conner, declined to strike class allegations concerning the following proposed class: "all persons in the United States who received a call from [the defendant] with the aid of an automatic telephone dialing system when [the defendant's] business records do not indicate it received prior consent." Judge Conner held that this proposed class was not a

"facially uncertifiable" fail-safe class because it was properly defined with reference to objective, factual criteria—i.e., the defendant's "business records [that] may (with discovery) reveal an ascertainable []class"—that fall "outside of the legal requirements of the [TCPA]."…

Here, Jackson argues that like the plaintiffs in *Abella, Johnson, O.P. Schuman*, and *Shelton*, he elided the fail-safe concern present in *Zarichny* by making the "conscious decision to not include language about individuals who have not provided their 'prior express written consent' in the class definition." The Court agrees. The issue of whether Meadowbrook's "conduct constitutes a violation of the TCPA" is arguably a question of law and fact common to Jackson and the other proposed class members. But that alone does not render the proposed class fail-safe. The question here is whether Jackson's proposed class is defined with reference to objective, factual criteria that fall "outside of the legal requirements of the [TCPA]." Consistent with prior district court rulings in this circuit, the Court finds that it may well be.

This Court should hold the same, just as the Middle District did in Meadowbrook and this Court has held, multiple times, including after *Zarichny*, and deny the motion. *See also Arcare, Inc. v. ITF Pharma, Inc.*, No. 2:21-CV-00953-JDW, 2021 WL 3015409, at *3 (E.D. Pa. June 21, 2021) ("Although Arcare's proposed class definition incorporates elements of the TCPA claim, it does not rely on ascertaining whether potential class members consented or gave permission to ITF to send the fax."); *Richardson v. Verde Energy USA, Inc.*, 354 F. Supp. 3d 639, 654 (E.D. Pa. 2018) ("Certainty, given that Plaintiffs have not yet moved to certify the classes, striking the class allegations pursuant to Rule 23(d)(1)(D) at this stage of the litigation would be premature.")

Similarly, LendVia's claim that it will be impossible to certify the class because it will be impossibly to identify what individuals were called "on behalf of" LendVia is also premature. Again, it will be discovery that will determine which calls third parties made for LendVia or not, and the contours of the class definition can be adjusted appropriately. However, to claim that it is

10

*impossible* to certify such a class ignores the well-established body of case law law that a defendant's potential vicarious liability for telemarketing calls is a common question among class members. *See, e.g., Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, No. 15-cv-6314-YGR, 2017 WL 1806583, at *7 (N.D. Cal. May 5, 2017) (finding whether defendant was vicariously liable for calls made by an entity it contracted with was a common question and certifying claims under the TCPA). It is possible, and Plaintiff alleges, that LendVia placed the calls itself, eliminating the analysis entirely. It is also possible that LendVia will not assert that the third parties used to make calls, if any, were independent contractors. The Plaintiff's use of "on behalf of" simply addresses the potential scenario that the Defendant, like many businesses, simply outsourced telemarketing to a separate entity other than the corporation.

### III.    The Plaintiff's Class Definition Should not be Stricken because of Potential Affirmative Defenses.

As to the issues of putativeconsent, it is true that some courts have previously struck class allegations in TCPA cases where the lack of consent was pled as part of the class definition. It is also true that consent under the TCPA at the time of the alleged calls could have been tendered to a third party. However, it is important to note that the cases cited by the Defendant all had class allegations struck at the pleadings stage for precisely that reason: the class definition included some variation of the language that required each class member have not provided their consent.

LendVia's argument focuses on a potential affirmative defense of consent or established business relationship (of which they've produced no evidence to support) to assert that the action in its entirety is incapable of being maintained as a class action. In rejecting the same argument previously in a TCPA case, another Court held:

> The Court finds that the defendant's motion to strike the class allegations is premature before plaintiff can develop the factual record through discovery. Loan

> Depot's citation of consent as a potential affirmative defense is insufficient to warrant striking the putative class solely on the pleadings. The motion to strike class allegations will, therefore, be denied.

*Rosenberg v. LoanDepot.com LLC,* 435 F. Supp. 3d 308, 318 (D. Mass. 2020).

Even though Mr. Newell does not believe that LendVia obtained the appropriate prior express written consent for its calls with the called party because it was a current customer or established business relationship (as the calls were designed to solicit new business), the Plaintiff made a conscious decision to not include language about individuals who have not provided their "prior express written consent" in the class definition, as other federal courts *have found that* to be an impermissible fail-safe class in TCPA cases. In *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076, at *8-9 (S.D. Ohio May 7, 2014), a court held that a TCPA plaintiff needed to amend his class definition because he included that language in a TCPA proposed class definition:

> Each of the Plaintiff's proposed classes is defined to include only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of an ATDS. Because the TCPA prohibits calls to cellular telephones using ATDSs unless prior express consent has been given, defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class…However, if the Plaintiffs are unsuccessful in meeting their burden of proof, the class does not exist and the class is not bound by the judgment in favor of the Defendant.  [*24] This is the definition of a prohibited fail-safe class.

Other courts agree. *See, e.g.*, *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015). Here, the Plaintiff avoided that potentially fatal flaw in drafting.

Nor does the determination of the consent issue necessitate thousands of individual mini-trials as the Defendant claims. Courts do not see consent issues as problematic from a class certification perspective, particularly when there are uniform issues with the offered consent

evidence. *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019),

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012), *Zyburo v.*

*NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014). The *TD Bank* and *Warnick* cases cited

by the Defendant on this point are thus distinguishable. In *TD Bank*, the case revolved around

issues of what individuals may have called to *revoke* consent and whether or not each

consumer's method of revocation was "reasonable." *Martinez v. TD Bank USA, N.A.*, No. CV

15-7712(JBS/AMD), 2017 WL 2829601, at *5 (D.N.J. June 30, 2017). In *TD Bank*, the plaintiff

also happened to adopt a flawed class definition predicated on whether the defendant had the

plaintiff's "prior express consent." *Id.* at *12.

Similarly, in *Warnick v. Dish Network LLC*, 301 F.R.D. 551, 557 (D. Colo. 2014), the

court held that a proposed class was unascertainable based on a twice-revised class definition

that had started out pleading a revocation of consent and ended with an internal list of anomalies

called a "TCPA Tracker." In sum, the issues of consent in this case, if there are any, will be

easily ascertained and resolved long before class certification. In any event, given that no consent

defense has been put forth, let alone any evidence to analyze whether such problems exist, it

would be premature to strike the class allegations at the pleadings stage on this basis. Indeed, the

same argument applies for LendVia's "reconsented" argument, since this is again just an

affirmative defense of consent. Similarly, LendVia's argument that using a prerecord voice is

vague should also fail.

Second, the class definition is not overly broad because it deals with the consent issue

through an analysis of the *Defendant's very own records*. Mr. Newell seeks to represent a class

defined in part by information readily available in Defendant's internal records: whether or not

they received a call from the Defendant and whether or not they provided their number to the

13

Defendant beforehand, and whether or not they had requested the calls stop. Provided that Defendant has records of whom it sent messages, and a record of whether or not they simply cold-called that person or instead had an inquiry or written permission, together with records of any opt-out, they will not have to take a putative class member's say-so that he received a call or that he didn't consent. Thus, the class is not overly broad, but rather will be accurately ascertained and notified long before the jury returns a verdict.

### IV.    Individuals do not have to Personally Register their Numbers on the National Do Not Call Registry.

Nor does the possibility that some class members may not have personally registered their numbers on the National Do Not Call Registry render the NDNC class at all unascertainable or overly broad. Defendant's *sole* case in support of its proposition that a subscriber must personally register their number on the Registry, is *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022), a single case from the Northern District of Iowa uniquely holding that a plaintiff must *personally* register their number on the Do Not Call Registry. Relying on *Rombough*, the Defendant misstates the applicable law. The FCC's regulations permit a "residential telephone subscriber" to register "his or her telephone number" on the Registry. 47 C.F.R. § 64.1200(c)(2). Once a telephone number is registered on the Registry, the "registrations must be honored indefinitely, or until the registration is cancelled by the consumer of the telephone number is removed by the database administrator." *Id*. Previously, such registrations had to be renewed, but this hasn't been the case since at least the mid-2000s.

*Rombough* has been rejected by a multitude of courts, most notably in *Callier v. Am.-Amicable Life Ins. Co. of Texas,* No. EP-22-CV-00018-FM, 2022 WL 17732717, at *5 (W.D.

14

Tex. Oct. 18, 2022), where the Western District of Texas called the argument underlying the

*Rombough* decision one that "borders on the frivolous." The *Callier* court went on to state:

> *Rombough's* nitpicky formality is thoroughly unpersuasive. The DNC is not auto-populated: it is a list of phone numbers for individuals who have requested that telemarketers not contact them. While it is possible a third-party may have registered a plaintiff's phone number before a plaintiff acquired it, this is unlikely given how infrequently people change numbers. And it is particularly unlikely here given Plaintiff's well-documented desire that telemarketers respect his registration with the DNC.

*Id.* at *6 (cleaned up).

*Rombough* also ignores the fact that the subscriber *or regular user* of a telephone line has

standing under the TCPA. *D.G. v. William W. Siegel & Assocs.,* 791 F. Supp. 2d 622, 625 (N.D.

Ill. 2011) ("Plaintiff is the regular user and carrier of the phone, Plaintiff qualifies as a "called

party" under the TCPA."); *Olney v. Progressive Cas. Ins. Co.,* 993 F. Supp. 2d 1220, 1225 (S.D.

Cal. 2014) ("Defendant seeks to arbitrarily limit standing to only the individual whose name

appears on the bill. Notably, Defendant does not cite a single case to support this position.

Further, this position has been rejected by other courts."). This is notwithstanding the fact that

the plain text of the TCPA's DNC standing provision allows any "person who has received" a

call in violation of the FCC's regulations to sue. 47 U.S.C. § 227(c)(5).

Other courts have similarly rejected the *Rombough* court's approach, including at class

certification and in refusing to strike class allegations. *See, e.g.*, *Watson*, 2022 WL 4586407, at

*9 (holding that "whether each class member registered their number on the NDNCR is

irrelevant."); *Klassen v. Solid Quote LLC*, No. 23-CV-00318-GPG-NRN, 2023 WL 7544185, at

*4 (D. Colo. Nov. 14, 2023) (refusing to strike class allegations and reformulating class

definition). As a result, there is no requirement that an individual personally register their

number on the Do Not Call Registry and this Court need not even consider the issue when

determining whether to strike the class allegations at the pleadings stage.

**V.    For nearly identical reasons, there exist common questions of law or fact applicable to the class.**

None of the issues raised above defeat commonality as the Defendant claims. Courts routinely certify TCPA class actions of this sort, including class actions where there are disputed issues of consent.

The commonality requirement dictates that the case have "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The bar for demonstrating commonality is low and does not require that all class members have perfect identify of questions of law or fact. Indeed, "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). The Plaintiff must only demonstrate that there is a common question central to the validity of the class's claims, the "truth or falsity" of the common answers to them will resolve the claims "in one stroke." *Id.* at 350. For the reasons below, this case will satisfy this requirement.

Although consent *might* become an issue in this class action, such contentions do not require an individualized inquiry. The fact of consent, together with its legal effectiveness, are issues capable of classwide resolution since consent under the TCPA must meet certain requirements. For starters, if the legal requirements for consent are not satisfied, for example by using legally insufficient language on a website used to obtain consent, every class member would not have provided legally sufficient consent and consent becomes a nonissue. Similarly, the alleged vagueness and other perceived infirmaries regarding the class definition simply do not exist, and in any event are more appropriately addressed on a full evidentiary record.

Here, because all the telephone calls here originated from the same place, the success and

16

legal sufficiency of the affirmative defense of consent is necessarily a common question with common answers. TCPA cases are routinely certified as common, even when there is evidence of consent, because such cases involve a singular legal question based on a singular set of records, as here. *See, e.g.*, *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 6750690, at *5 (N.D. Ohio Dec. 1, 2014) (discussing remarkable commonality of TCPA cases). Indeed, as described above, the Defendant's own internal books and records will be used by the Court or jury to craft a uniform, objective answer to a common question: did any class member provide their telephone number to the Defendant, as reflected in the Defendant's own records? If yes, they are out of the class; if no, they are in the class.

**VI.    No class definition is impermissibly vague.**

The Plaintiff's Robocall class definition seeks to represent, "All persons in the United States who…received one or more calls on their cellular telephone…(4) sent using the same, or substantially similar, pre-recorded message used to contact the Plaintiff." There is nothing vague or confusing about that "same, or substantially similar" phrase to encourage the extreme remedy of striking the class allegations prior to any discovery. Indeed, the Plaintiff posits that the Defendant's argument would have not even been made if he had simply used the phrase "the same". However, where would that distinction end? What if the Defendants used a different voice actor to send a message on a different day? What if they used the same voice actor but had different words in the message? The possibilities are endless, but by the same token the Plaintiff did not want to allege that *any* recorded message of *any* type for *any* reason would be subject to discovery and his class definition, for that would likely garner similar objection. As such, he used the phrase he did.

In the non-TCPA context other courts have refused to strike class allegations using

similar language. *See, e.g., Lizama v. Venus Labs., Inc.,* 679 F. Supp. 3d 848, 858 (E.D. Mo.

2023) ("The 'overarching question' for standing is whether the named plaintiff's injury

is **substantially similar** to 'the claims of those [he] seeks to represent.' (quoting *Browning v.*

*Anheuser-Busch*, LLC, 539 F. Supp. 3d 965, 977 (W.D. Mo. 2021)) (emphasis added). Indeed,

"[t]he TCPA prohibits persons from (1) making 'any call,' (2) 'using . . . an artificial or

prerecorded voice,' (3) 'to any telephone number assigned to a . . . cellular telephone service. . .

.'" *Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598, 600 (9th Cir. 2011) (internal citation

omitted). As such, despite the fact that the Plaintiff would have commonality with all calls made

"using an artificial or prerecorded voice," he still limited his class, prior to any discovery, to calls

that presumably had the same factual predicate for being sent, as he only intends to pursue

similar types of pre-recorded calls, e.g., sales calls. As Plaintiff's pleading makes clear, a

measure of common sense is necessary, and Defendants used the same or similar message on all

the calls they received.

Defendant's motion on this basis ought be denied as well.

## <u>CONCLUSION</u>

The Court should therefore deny the Defendant's motions to strike class allegations in all

respects.


Dated: May 28, 2025

<div style="text-align:center">

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

</div>

## **CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

May 28, 2025

<div style="margin-left: 40%;">

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

</div>