IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOUREY NEWELL, individually and on behalf of a class of all persons and entities similarly situated,<br><br>   Plaintiff<br><br>vs.<br><br>LENDVIA, LLC<br><br>   Defendant. | Case No. 25-1018-GJP<br><br>Electronically Filed |

**DEFENDANT LENDVIA LLC'S REPLY IN SUPPORT OF
ITS MOTION TO STRIKE CLASS ALLEGATIONS OF PLAINTIFF'S COMPLAINT**

  Defendant LendVia, LLC ("LendVia") respectfully submits this Reply in Support of its Rule 12(f) Motion to Strike Class Allegations ("Motion") of Plaintiff Jourey Newell's ("Plaintiff") Complaint (the "Complaint" or "Compl."), ECF No. 1.

**MEMORANDUM OF LAW**

  **I. INTRODUCTION**

  Rather than proposing straightforward class definitions, Plaintiff openly embraces a fishing expedition—seeking to invade consumer privacy on a broad scale just to figure out later what class(es) he really wants to pursue. In his Opposition, Plaintiff tries to deflect by arguing the motion is procedurally improper under Rule 12(g), which completely misses the mark. This isn't a Rule 12 technicality—it's a straightforward motion to strike overbroad, and vague class definitions that lack commonality and can't be certified as a matter of law.

  Plaintiff's reliance on "common sense" is misplaced. Common sense would have led him to draft a certifiable class from the outset—not a bait-and-switch tactic that forces LendVia to bear the

1

cost and burden while Plaintiff figures out his theory. This motion is not premature. Courts in the Third Circuit routinely grant motions to strike class allegations where it is clear from the pleadings, like here, that certification is impossible. Plaintiff's vague and malleable class definitions, including the "same or substantially similar" language, fail to provide any objective standard, invite individualized inquiries, and sweep in individuals who consented or had business relationships—undermining commonality as required by Fed.R.Civ.P. 23.

This Court should strike these defective class allegations now and require Plaintiff to pursue only what he actually intends to certify—not what he hopes to discover later.

## II.  PLAINTIFF'S OPPOSITION UNDERSCORES THAT THE PROPOSED CLASS DEFINITIONS ARE FACIALLY UNCERTIFIABLE AS A MATTER OF LAW.

### A. The Motion is Procedurally Proper.

Plaintiff misleads the Court by claiming the motion is procedurally improper by asserting that Federal Rule of Civil Procedure 12(g)(2) bars the motion to strike the class allegations from being filed along with a motion to dismiss for failure to state a claim. Opp. at 5. That argument misreads both the rule's purpose and its application.

As the Third Circuit has explained, "The aim of Rule 12 is to afford an easy method for the presentation of defenses but at the same time prevent their use for purposes of delay." *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 720 (3d Cir. 1982) (internal citations and quotations omitted); *In re McCormack*, No. MC 20-56, 2020 WL 2992501, at *2 (E.D. Pa. June 4, 2020) (The general purpose of the Federal Rules is to foster proper administration of justice as to secure "just, speedy, and inexpensive determination of every action."). Under Rule 12(g)(1), "[a] motion under this rule *may* be joined with any other motion allowed by this rule" (emphasis added), making clear that the Rule permits flexibility in the timing and combination of Rule 12 motions. While Rule 12(g)(2) limits successive motions, that limitation applies only to "raising a defense or objection that was available to the party but omitted from its earlier motion."

Here, LendVia has timely moved to strike Plaintiff's proposed class definitions at the outset of the case because the classes, as defined, are facially uncertifiable. The underlying motion is not

only proper—it is necessary to prevent Plaintiff from leveraging *four* overbroad and unmanageable class definitions to impose burdensome discovery, only to later recast the classes in response to what discovery reveals. This is a well-documented tactic in TCPA litigation, and courts within the Third Circuit have appropriately stricken class allegations at this early stage where, as here, the legal defects in the proposed classes are obvious. *See Barabin v. Aramark Corp.*, 210 F.R.D. 152, 162 (E.D.Pa.2002), aff'd, 2003 WL 355417 (3d Cir. Jan.24, 2003) (granting motion to strike class allegations where it was apparent from the complaint that Rule 23 could not be satisfied); *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 516 (W.D. Pa. 2019) (same).

Still, even if the court finds the motion improper – which it is not – the Third Circuit has held that harmless, technical violation of the rule alone does not warrant undue delay. *See Leyse v. Bank of America Nat'l Ass'n*, 804 F.3d 316, at *321 (3d Cir. 2015). Where, as here, the motions were filed contemporaneously and caused no prejudice, the motions will be considered harmless and will not cause undue delay. *See Boback v. Geisler,* No. 2:24-CV-00344, 2024 WL 5340665, at *1 (W.D. Pa. Nov. 18, 2024) (considering a motion to strike after it was filed subsequently to a motion to dismiss on the same day); *Grynberg v. Total Compagnie Francaise Des Petroles*, 891 F. Supp. 2d 663, 676 (D. Del. 2012), *opinion vacated in part on reargument,* No. CV 10-1088-LPS, 2013 WL 5459913 (D. Del. Sept. 30, 2013) ("[i]n light of the fact that the [defendant] filed its Rule 12(b)(6) motion one business day after the filing of its Rule 12(b)(2) motion, … the Court finds no evidence of delay."); *Vinci Inv. Co. v. Mid-Century Ins.* Co., No. SACV08152AHSMLGX, 2008 WL 4447102 (C.D. Cal. Sept. 30, 2008) (same); *Amazon Web Servs., Inc. v. Glob. Equity Mgmt.*, S.A., 2017 WL 4052381, at *5 (E.D. Va. Sept. 13, 2017) (Lauck, J.) (citing Fed. R. Civ. P. 12 (g)(2) (same).

**B. Plaintiff's Opposition Demonstrates He Intends to Change His Class Definition—Which is Precisely Why the Motion to Strike is Not Premature.**

Plaintiff mischaracterizes LendVia's position as a categorical attack on the certifiability of all TCPA class actions—a claim LendVia never makes—and seeks to avoid meaningful review by labeling the motion "premature." Opp. at 6. Both assertions are not only inaccurate, but legally unsupported and misleading.

3

Courts in this Circuit recognize that when a proposed class is clearly uncertifiable from the outset, it is appropriate to address the issue early—before costly and burdensome discovery begins. Certainly, "class allegations may be struck where no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23." *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449, at *9 (M.D. Pa. Jan. 17, 2024) (internal quotations omitted. *See also*, *Trunzo v. Citi Mortg.*, No. 2:11-CV-01124, 2014 WL 1317577, at *15 (W.D. Pa. Mar. 31, 2014) (granting defendant's motion to strike class allegations because "a defendant may move to dismiss class allegations *prior to discovery* where the complaint demonstrates that the requirements for maintaining a class action cannot be met.") (internal citations omitted and emphasis added); *Davis v. Bank of Am., N.A.*, No. CV 13-4396, 2016 WL 427049, at *7 (E.D. Pa. Feb. 3, 2016) (same); *McIntyre v. Trans Union LLC*, No. CV 18-3865, 2020 WL 1150443, at *7 (E.D. Pa. Mar. 5, 2020) (considered defendant's motion to strike allegations prior to discovery).

While Plaintiff is correct that a motion to strike may be premature where discovery might support class certification, that is *not* the case here. As LendVia's motion explains, the four proposed classes are facially uncertifiable and cannot be cured through discovery. Plaintiff claims "it will be discovery that will determine which calls third parties made for LendVia or not, and the contours of the class definition can be adjusted appropriately." Opp. at 10. But the only party burdened by this fishing expedition is LendVia, who is expected to shoulder the cost and disruption of discovery. Plaintiff is not even subtle about this tactic—indeed, he boasts in his Opposition that the Court will need to ask a long series of "objective, factual questions," including: Did LendVia's make pre-recorded calls[;] Did LendVia's make calls to numbers on the National Do Not Call Registry[;] Were those numbers called 2 or more times in a 12 month period[;] Were those numbers "residential"[;] Did LendVia call individuals who had asked not to be contacted[;] Does Defendant claim to have obtained consent to call them in the same manner[;] Defendant claims to have obtained consent to

4

call Plaintiff?" Opp. at 8. This list underscores the problem: all four proposed classes rely on individualized, merits-based determinations, in direct conflict with Rule 23's requirements for commonality and predominance.

Indeed, this is a textbook example of a bait-and-switch tactic—assert an overbroad, facially uncertifiable class at the pleading stage, then rely on an implied promise to redefine it later once discovery has concluded. Plaintiff will inevitably need to abandon or substantially revise the class definitions. In short, the current definitions are a moving target—one Plaintiff has no real intent to certify. Until they are meaningfully narrowed, the proposed classes remain impermissibly broad and fail to meet Rule 23's commonality requirement.

### C. The Plaintiff's Overbroad Class Definitions Should Be Stricken Because They Include Individuals Who Gave Prior Express Consent And Those Who Have An Established Business Relationship.

Plaintiff claims to have "made a conscious decision to not include language about individuals who have not provided their 'prior express written consent' in the class definition, as other federal courts have found that to be an impermissible fail-safe class in TCPA cases." Opp. at 12. This argument entirely misconstrues LendVia's argument as LendVia never claimed that the proposed class was failsafe. The proposed classes are not overly broad due to a lack of objective criteria—they are overly broad because the objective characteristics sweep in far more individuals than could ever assert a valid TCPA claim. Not every call at issue would give rise to liability, and a substantial number of calls would fail based on individualized defenses, including consent and the existence of an established business relationship. Plaintiff cannot justify the improper scope of these class definitions, which aim to include individuals who have no viable claim under the statute. As a result, Plaintiff seeks to represent a class far larger than the law could support.

Plaintiff's futile attempt to downplay the individualized nature of consent in this case by distinguishing *Martinez* and *Warnick* is unavailing. In *Martinez*, the court denied class certification

5

in part because consent and revocation issues could not be resolved on a classwide basis. Specifically, the court found that consumers may have revoked consent "in different ways and at different times," including by phone, email, or through vague oral requests—requiring individualized inquiries into whether each revocation was made, how it was communicated, and whether it was "reasonable." *Martinez v. TD Bank USA, N.A.*, No. 15-7712, 2017 WL 2829601, at *5 (D.N.J. June 30, 2017). The court also rejected a class definition that turned on whether the defendant had "prior express consent," noting that it "impermissibly incorporates a legal conclusion" and could not be adjudicated without "individualized mini-trials." *Id.* at *12. These were not merely pleading defects—they were substantive barriers to class certification that are equally present here.

Likewise, in *Warnick*, the court denied certification because consent-related issues precluded ascertainability and commonality. The class definition had been revised multiple times in an attempt to sidestep these issues, but the court ultimately found that determining class membership required case-by-case assessments that could not be resolved through uniform proof. *Warnick v. Dish Network LLC*, 301 F.R.D. 551, at *559 (D. Colo. 2014). Plaintiff's assurance here that consent issues "will be easily ascertained and resolved" is unsupported by the pleadings and contradicts settled precedent. Opp. at 13.

Plaintiff further suggests that the class definition is not overly broad because class membership can allegedly be determined by reviewing Defendant's internal records. *See* Opp at 13-14. But this argument oversimplifies the issue and ignores the individualized nature of consent in TCPA cases. The result is an overbroad class that sweeps in individuals with no valid claim, triggering intrusive discovery into private consumer records. The Court should intervene now, strike the proposed class definitions at this early stage, and require Plaintiff to pursue only those class definitions he actually intends to certify.

6

**D. Individuals Must Personally Register their Numbers on the National Do Not Call Registry.**

Plaintiff is mistaken in his argument that "the possibility that some class members may not have personally registered their numbers on the National Do Not Call Registry [does not] render the NDNC class at all unascertainable or overly broad." Opp. at 14.

*Rombough* is properly decided. The language of the applicable statute and code of regulations provisions is clear and unambiguous. *See Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022) (stating Section 64.1200(c) is unambiguous). Section 64.1200(c) prohibits telephone solicitations to "[a] residential telephone *subscriber who has registered* his or her telephone number on the national do not call registry[.]" 47 C.F.R. § 64.1200(c) (alterations added) (emphasis added). The subject is the "residential telephone subscriber," and the phrase "who has registered" makes clear that the subject must have personally taken action to register. The reference to "his or her telephone number" confirms ownership by that same individual. Read together, the text unambiguously requires that the subscriber personally register their own number.

As the Supreme Court has explained, when "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). While some courts have strayed in pursuit of policy outcomes, the rule against disregarding clear statutory text exists precisely for cases like this—where courts may be tempted to expand protections beyond what Congress provided. As it turns out the courts Plaintiff relies on appear to have overlooked the plain language of the regulation. But the "most fundamental semantic rule of interpretation" is that "[w]ords are to be understood in their ordinary, everyday meanings." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 6 (2012). While perhaps well-intentioned, their reasoning departs from what the statute actually says. *Rombough* is not a "nitpicky

formality." Opp. at 15. It is a correct application of the canons of statutory construction.

**E. Plaintiff Ignores the Individualized Inquiries That Defeat Commonality and Preclude Class Certification.**

Plaintiff's assertion that the issue of consent presents a "common question with common answers" ignores the reality that consent under the TCPA is inherently individualized. *See Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 328-29 (5th Cir. 2008) ("In short, there is no class-wide proof available to decide consent and only mini-trials can determine this issue."). The assumption that all class members either provided or failed to provide "legally sufficient consent" in a uniform manner is both factually unsupported and legally incorrect. *See Alpha Tech Pet Inc. v. LaGasse, LLC*, No. 16 C 513, 2017 WL 5069946, at *6 (N.D. Ill. Nov. 3, 2017) (finding individual issues predominate where "for each putative class member, the Court would have to undertake an inquiry as to whether that member provided a consent form, was marked as having consented in the [defendant's] database, or otherwise consented, including…as reflected in the customer account file.").

Courts have repeatedly rejected attempts to reduce complex and individualized consent issues into a binary question of compliance with some singular standard. See *Brown v. Nano Hearing Tech Opco, LLC*, No. 3:24-CV-00221-BTM-JLB, 2024 WL 3367536, at *8-9 (S.D. Cal. July 9, 2024) (finding that the plaintiff's class was flawed because it included individuals who may have consented to receiving calls from the defendant, thereby lacking standing under the TCPA); *Martinez*, at *5; *Warnick*, at *556–57; *Conrad v. Gen. Motors Acceptance Corp.*, 283 F.R.D. 326, 330 (N.D. Tex. 2012).

As illustrated in the underlying motion, the proposed classes fail to meet the commonality requirement because they encompass a range of individual factual and legal issues – including consent – thereby, making it impossible to adjudicate the claims uniformly across all members. The same reasons that render these classes overly broad also cause their members to lack the requisite

Rule 23 commonality.

Moreover, Plaintiff's reliance on Defendant's internal records as a purported "uniform" basis for resolving class membership is misplaced. Plaintiff's contention that consent presents a common question simply because the calls "originated from the same place" ignores the core problem: *how, when, where, and how many times* consent was obtained varies widely and cannot be resolved through a single review of Defendant's internal records.

### F. The Robocall Class Definition Is Impermissibly Vague.

Although Plaintiff argues in his Opposition that the class definition is not impermissibly vague, he effectively concedes the point by admitting that a narrower, more precise definition would "invite objections" over minor differences. Opp. at 17. Rather than drafting a class definition that is capable of certification, Plaintiff opts for vague, catch-all language—hoping to cast a wide net, engage in broad discovery, and sort out the details later. This approach underscores the very problem LendVia identified: the proposed Robocall class is not clearly defined and cannot be certified as written.

And Plaintiff's claim that he limited the class to a narrower group of prerecorded calls—such as sales calls using the "same or similar" message—does not resolve the vagueness problem. Rather, it highlights it. While he asserts that the calls share a common factual predicate, he still fails to define what qualifies as "similar," leaving the class boundary entirely subjective. This reliance on "common sense" rather than objective criteria makes the class definition inherently indeterminate and unfit for certification. If Plaintiff truly intends to pursue a specific category of prerecorded calls, he should define that category with clarity *now*.

Plaintiff's attempt to justify his vagueness by relying on *Lizama* is misplaced. The class in *Lizama* did not include the phrase "substantially similar" but rather proposed a straightforward and objectively defined class. *See Lizama v. Venus Labs., Inc.*, 679 F. Supp. 3d 848, 858 (E.D. Mo. 2023)

(proposing a class of "all California residents, who within the relevant statute of limitations periods, purchased the Products for personal, family, or household use"). Indeed, Plaintiff's reliance on *Lizama* only highlights the contrast between a clear class definition and the ambiguous ones he proposes here.

### III. CONCLUSION

The Court should therefore grant the Defendant's motions to strike class allegations.

Dated: June 4, 2025                              TROUTMAN AMIN, LLP

<u>*/s/ Jenniffer Cabrera*</u>
Jenniffer Cabrera (pro hac vice)
Troutman Amin LLP
1825 NW Corporate Blvd - Suite 100
Boca Raton, Florida 33431
Tel.: 561-834-0883
jenniffer@troutmanamin.com
*Counsel for Defendant LendVia, LLC.*

## CERTIFICATE OF SERVICE

     I hereby certify that on June 4, 2025, a copy of the foregoing was filed electronically and served by other electronic means on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

Dated: June 4, 2025

TROUTMAN AMIN, LLP

By: */s/Jenniffer Cabrera*
    Jenniffer Cabrera (*pro hac vice*)
    Troutman Amin LLP
    1825 NW Corporate Blvd - Suite 100
    Boca Raton, Florida 33431
    Tel.: 561-834-0883
    jenniffer@troutmanamin.com