## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOUREY NEWELL, individually and on behalf of a class of all persons and entities similarly situated,

       Plaintiff

vs.

LENDVIA, LLC

       Defendant.

Case No. 25-1018-GJP

## **DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO INDIVIDUAL ARBITRATION**

Defendant LendVia LLC ("LendVia"), by and through its undersigned counsel, hereby moves this Honorable Court for an Order compelling arbitration and dismissing or staying the above-captioned (the "Motion" or "Mot."). Pursuant to Local Rule 7.1 (a)-(c), LendVia submits the attached Memorandum of Law and proposed form of Order.

WHEREFORE, LendVia respectfully requests that this Court grant the Motion and enter the proposed form of Order.

Dated: July 24, 2025

    TROUTMAN AMIN, LLP

    By: _/s/ Jenniffer Cabrera____
       Jenniffer Cabrera
       1825 NW Corporate Blvd, Ste. 100
       Boca Raton, Florida 33431
       Telephone: 561-834-0883
       jenniffer@troutmanamin.com

    *Attorneys for Defendant LendVia, LLC*

## Table of Contents

I.   INTRODUCTION ..................................................................................................6

II.   RELEVANT BACKGROUND ...........................................................................7

   A.   Procedural Background ...............................................................................7

   B.   Factual Background .....................................................................................7

   C.   Discovery related to Arbitration ................................................................9

III.   LEGAL STANDARD ......................................................................................10

IV.   PLAINTIFF AGREED TO ARBITRATE HIS CLAIMS INDIVIDUALLY AND LENDVIA IS ENTITLED TO ENFORCE THIS ARBITRATION AGREEMENT. ..........13

   A.   Plaintiff Entered into a Valid Arbitration Agreement. ..............................13

   B.   Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement. ..................17

   C.   LendVia May Enforce the Arbitration Agreement. ...................................18

      1.   LendVia may enforce the Arbitration Agreement as a non-signatory. .................18

      2.   LendVia May Enforce the Arbitration Agreement as a Third-Party Beneficiary. 20

      3.   LendVia May Enforce the Arbitration Agreement Under the Principle of Estoppel. ....................................................................................22

   D.   The Delegation Clause Authorizes the Arbitrator to Decide the Issue of Whether Lendvia Can Enforce the Agreement as a Non-Signatory. ................................23

      1.   The Arbitration Agreement Contains a Valid Delegation Clause.........................23

      2.   The Delegation Clause authorizes the arbitrator to decide the issue of enforceability. ....................................................................24

V.   CONCLUSION .................................................................................................27

## Table of Authorities

**Cases**

*Adler v. Gruma Corp.*, 135 F.4th 55 (3d Cir. 2025) ....................................................................11

*Advanced Disposal Servs. Tennessee Holdings, Inc. v. Lusk Disposal Servs., Inc.*, 478 F. Supp. 3d 716 (E.D. Tenn. 2020) .........................................................................................................10

*Advanced Disposal Servs. Tennessee Holdings, Inc. v. Lusk Disposal Servs., Inc.*, 478 F. Supp. 3d 716 (E.D. Tenn. 2020) .........................................................................................................18

*Altenhofen v. Energy Transfer Partners, LP.*, No. 20-200, 2020 WL 7336082 (W.D. Pa. Dec. 14, 2020) .............................................................................................................................................23

*Asesores y Consejeros Aconsec CIA, S.A. v. Glob. Emerging Markets N. Am., Inc.*, 841 F. Supp. 2d 762 (S.D.N.Y. 2012) ..............................................................................................................11, 18

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ..........................................................9, 16

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986) ......................................9, 15

*Becker v. Delek US Energy, Inc.*, 39 F.4th 351 (6th Cir. 2022) .....................................................24

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) .....................................13, 14

*Booth v. BMO Harris Bank, N.A.*, No. CIV.A. 13-5968, 2014 WL 3952945, at *4 (E.D. Pa. Aug. 11, 2014) ...................................................................................................................................6

*Bouriez v. Carnegie Mellon Univ.*, 359 F.3d 292 (3d. Cir.2004) .................................................19

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) ...........................................................21, 22

*Bruzzese v. Chesapeake Expl., LLC*, 998 F. Supp. 2d 663 (S.D. Ohio 2014) .........................10, 18

*Cadena v. Am. Honda Motor Co.*, No. CV 20-511-MWF (PJWX), 2020 WL 3107797 (C.D. Cal. June 10, 2020) ...........................................................................................................................22

*Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. 2548 (1986) ..............................................11

*Com. Standard Ins. Co. v. Garrett*, 70 F.2d 969 (10th Cir. 1934) ...........................................10, 18

*Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006) ..............................................................19, 20

*Cristales v. Scion Grp. LLC*, 478 F. Supp. 3d 845 (D. Ariz. 2020) .............................................19

*Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).22

*Dylag v. W. Las Vegas Surgery Ctr., LLC*, 719 F. App'x 568 (9th Cir. 2017) ..............................20

*Echols v. Pelullo*, 377 F.3d 272 (3d Cir. 2004) ............................................................................12

*Epiq Sys. Corp. v. Lewis*, 584 U.S. 497, 505-06 (2018) ...............................................................8

*Evans v. PayPal, Inc.*, No. 22-15979, 2023 WL 6058490  (9th Cir. Sept. 18, 2023) ....................13

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) .............................................12, 21

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) .......................................................8

*Golden Boy Promotions LLC v. Haymon*, No. CV153378JFWMRWX, 2015 WL 12827758 (C.D. Cal. Aug. 18, 2015) ..........................................................................................................22, 23

*Gregoria v. Total Asset Recovery, Inc.*, No. 12-4315, 2025 WL 115501 (E.D. Pa. Jan. 8, 2015) 11

*Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764 (3d Cir. 2013) .................................11

*Hammersmith v. TIG Ins. Co.*, 480 F.3d 220 (3d Cir. 2007) ........................................................12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 3 (2019) .................................21, 23

*Hicks v. Hartman Income Reit, Inc.*, No. 3:23-CV-1294-X, 2023 WL 8437057 (N.D. Tex. Dec. 4, 2023) ...........................................................................................................................10

*Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002) .......................................................9

*In re Washington Mut., Inc.*, 421 B.R. 143 (Bankr. D. Del. 2009)..............................10, 18

*Jackson v. Zep Mfg.*, No. 5:23-CV-2622, 2024 WL 1175713 (E.D. Pa. Mar. 19, 2024).............23

*Johnson v. Oracle Am., Inc.*, 764 F. App'x 607 (9th Cir. 2019).....................................21

*Keddie v. Beneficial Ins., Inc.*, 580 P.2d 955 (Nev. 1978) ...........................................12

*Keebaugh v. Warner Bros. Entmt. Inc.*, 100 F.4th 1005 (9th Cir. 2024) .......................13

*Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52 (3d Cir. 1994)......................................12

*Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185 (9th Cir. 1986) .........................17

*Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988).................18

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995)............................15

*May v. Anderson*, 119 P.3d 1254 (Nev. 2005)...............................................................12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1986)..............9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ................8, 10

*Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009)..............................20

*Murphy v. DirecTV, Inc.,* 724 F.3d 1218 (9th Cir. 2013) ..............................................17

*Oberstein v. Live Nation Entmt., Inc.*, 60 F.4th 505 (9th Cir. 2023) ......................12, 13

*PaineWebber, Inc. v. Hartmann*, 921 F.2d 507 (3d Cir. 1990) ......................................9

*Reno v. Western Cab Co.*, No. 2:18-cv-00840, 2020 WL 5606897 (D. Nev. Sept. 18, 2020)......16

*Robertson v. Enbridge (U.S.) Inc.*, No. CV 19-1080, 2020 WL 5751641, at *9 (W.D. Pa. July 31, 2020) *report and recommendation adopted*, No. 2:19-CV-1080, 2020 WL 5702419 (W.D. Pa. Sept. 24, 2020)....................................................................................................23

*Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279 (5th Cir. 2023) ...............................24

*Rothschild v. Pac. Companies*, No. 23-CV-01721-LJC, 2025 WL 690388, (N.D. Cal. Mar. 4, 2025) ..........................................................................................................................10

*S.S. by & through Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019 (S.D. Cal. 2021)......19

*Skyline Constr. Grp., LLC v. Annex Constr., LLC*, No. 18-CV-381, 2019 WL 699964 (E.D. Wis. Feb. 20, 2019), aff'd, 956 F.3d 950 (7th Cir. 2020).........................................11, 18

*Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354 (2d Cir. 2008)......................20

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010)..................................................................................................................5, 15

*Stover v. Experian Holdings, Inc.*, 978 F.3d 1082 (9th Cir. 2020).................................13

*Sunline USA LLC v. Ezzi Grp., Inc.*, 708 F. Supp. 3d 585 (E.D. Pa. 2023) ...................11

*Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529 (3d Cir. 2005).............................9

*Trujillo v. Volt Mgmt. Corp.*, 846 F. App'x 233 (5th Cir. 2021) ............................10, 17

*Volt Info. Scis., Inc. v. Bd. Of Trs. Of Leland Standford Junior Univ.*, 489 U.S. 468 (1989).........9

*Wagner v. Clifton*, 62 P.3d 440 (Utah 2002)..................................................................19

*White v. Sunoco Inc.*, 189 F. Supp. 3d 486 (E.D. Pa. 2016), <u>aff'd,</u> 870 F.3d 257 (3d Cir. 2017)..17

**Statutes**

47 U.S.C. § 227..............................................................................................16

47 U.S.C. § 227(c)..........................................................................................16

9 U.S.C. § 2 ............................................................................................5, 8, 11

**Rules**

Fed.R.Civ.P. 56(e). ........................................................................................11

## MEMORANDUM OF LAW

### I.    INTRODUCTION

This case does not belong in court. Plaintiff clearly and knowingly agreed to resolve any disputes through individual arbitration, not through litigation, and certainly not on a classwide basis. That provision was presented in plain language, prominently displayed directly above the "Submit" button on https://upfinances.com/apply (the "Website"). By clicking that button, Plaintiff accepted the terms, including the binding arbitration provision and express waiver of class proceedings.

Although Plaintiff now attempts to deny ever visiting the website, that assertion is directly rebutted by the discovery record. Specifically, a screen recording captures Plaintiff affirmatively providing his consent, including entering accurate and identifying personal information. Ex. A, Verified Consent. Indeed, the evidence confirms that Plaintiff interacted with the Website, reviewed the consent language, and voluntarily agreed to its terms. *Id.*

The law is equally clear: parties may agree to resolve disputes through arbitration and to delegate threshold questions, such as who decides arbitrability, to the arbitrator. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010) (This Court has said that the FAA's central purpose is to ensure that "private agreements to arbitrate are enforced according to their terms."). The arbitration agreement here contains a valid delegation clause, which means it is the arbitrator—not this Court—who must decide any challenge to the scope or enforceability of arbitration. Ex. B, Terms of Use.

Plaintiff's futile attempt to sidestep that agreement ignores both the factual record and binding precedent under the Federal Arbitration Act, which requires courts to compel arbitration where, as here, a valid agreement exists. *See* 9 U.S.C. § 2. LendVia is entitled to enforce the agreement as a contracting party and under established principles of third-party beneficiary rights

and equitable estoppel. A physical signature is not required. *See Booth v. BMO Harris Bank, N.A.*, No. CIV.A. 13-5968, 2014 WL 3952945, at *4 (E.D. Pa. Aug. 11, 2014) (holding that non-signatory entities could enforce arbitration provisions by virtue of their contracting party status.).

In the end, Plaintiff agreed to arbitrate his claims individually. The agreement delegates arbitrability to the arbitrator. The FAA mandates enforcement. This Court should compel arbitration and dismiss or stay the action accordingly.

## II.    RELEVANT BACKGROUND

### A.  Procedural Background

On April 23, 2025, LendVia filed a Motion to Compel Arbitration, ECF 11, which was opposed by Plaintiff in his Response in Opposition, ECF 18. Thereafter, LendVia filed a Reply in support of its Motion to Compel Arbitration, ECF 23.

On June 5, 2025, this Court denied without prejudice LendVia's Motion to Compel Arbitration, ECF 25, and ordered the parties to conduct limited discovery concerning the validity and enforceability of the purported arbitration agreement by June 26, 2025. The Court further ordered that LendVia may file a new motion to compel arbitration on or before July 10, 2025.

On July 9, 2025, upon LendVia's Unopposed Motion for Extension of Time, ECF 26, this Court granted and extended LendVia's deadline to file a new motion to compel arbitration until July 24, 2025, ECF 27.

### B.  Factual Background

On December 8, 2024, Plaintiff visited https://upfinances.com/apply (the "Website"). Ex. F – Decl. E. Ovalle. While on the Website, Plaintiff entered the name "Jourey Newell," his phone number ending in 4132, and accepted the following disclosure:

By checking this box and clicking SUBMIT, I express my understanding and consent electronically via E-sign that I acknowledge and agree to the Privacy Policy and Terms of Use, which includes binding arbitration. I consent to the electronic collection and storage of my application information necessary to evaluate my loan application. I grant express written consent for Better Debt Solutions and Lendvia to contact me by calls and/or text messages at the number provided, regarding my application status and scheduling, using any telephone dialing system, prerecorded/artificial voice messages, and/or automatic dialing devices. I understand that text messages may incur data and message rates and frequency varies (text HELP for help; text STOP to cancel). Even if my phone number is currently listed on any state, federal, or corporate Do-Not-Call list, this consent is provided. I understand I may revoke this consent at any time and am not required to consent as a condition of purchase any property, goods, or services. Consent for SMS and calls will not be shared with third parties for their marketing purposes.

Ex. A – Verified Consent; Ex. D – Decl. P. Sadeghi. This disclosure clearly states that by checking the box and clicking the "Submit" button underneath the disclosure, the user agrees to the Website's Terms of Use, "which include[] binding arbitration." Ex. A. The Terms of use are hyperlinked in bright blue underlined text within the disclosure and again underneath the "Submit" button beneath the disclosure. *Id*.



Verified Consent, a third-party digital verification service, generated a Verified Consent certificate documenting Plaintiff's submission. Ex. E – Decl. R. Adhikary. This certificate includes metadata and a video replay of the submission process, confirming that Plaintiff reviewed the disclosures, agreed to the Terms of Use (including arbitration), and provided express written consent to be contacted. Ex. A – Verified Consent; Ex. E – Decl. R. Adhikary.

The Website's Terms of Use were in effect as of January 1, 2023, and remained in place at the time Plaintiff visited the site on December 8, 2024. Ex. B – Website's Terms of Use; Ex. F – Decl. E. Ovalle. The Terms of Use of the Website begin by stating that: "By using this Site [https://upfinances.com/apply] and Service, you agree to be bound by these Terms of Service ("Terms"). *Id.* If you disagree with any part of these Terms, please don't use our Site or Service." *Id.* The Terms of Use specifically identify that by using the Site you agree to the terms and the terms "we", "our" and "us" refer to five identified entities including Lendvia LLC. *Id.* The Terms of Use repeatedly state that they include mandatory binding arbitration and a waiver of class actions. *Id.*

## C. Discovery related to Arbitration

On June 26, 2025, the parties exchanged discovery responses, objections and production of documents via email correspondence. Ex. G – Decl. J. Cabrera. LendVia's document production to Plaintiff's discovery demands was labeled as LendVia001-017. *Id.* LendVia's document production included a Verified Consent Certificate which was automatically generated at the time of Plaintiff's submission. *Id.* ¶6; Ex. A – Verified Consent. The Certificate includes a 43-second video replay showing Plaintiff completing several form fields on https://upfinances.com/apply, including loan amount, loan purpose, email address, phone number, first and last name, social security number, and date of birth. *Id.*; Ex. G – Decl. J. Cabrera ¶7. The live link of the Verified

Consent Certificate was emailed to Plaintiff's counsel on June 26, 2025. *Id.* ¶8. LendVia is willing to provide a copy to the Court underseal given that the video discloses Plaintiff's social security number. *Id.* LendVia's document production included the Terms of Use for the website https://upfinances.com/apply. *Id.* ¶9; *See* Exhibit B – Website's Term of Use.

## III.    <u>LEGAL STANDARD</u>

The Federal Arbitration Act ("FAA") codifies a strong federal policy in favor of enforcing arbitration agreements, including agreements to arbitrate statutory claims. *See* 9 U.S.C. § 2 (providing that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]"); *Epiq Sys. Corp. v. Lewis*, 584 U.S. 497, 505-06 (2018) ("The [FAA], this Court has said, establishes 'a liberal federal policy favoring arbitration agreements.'") (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-25 (1991) (holding that the FAA demonstrates a federal policy favoring arbitration and that it was intended to reverse longstanding judicial hostility to arbitration agreements); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'") (quoting *Volt Info. Scis., Inc. v. Bd. Of Trs. Of Leland Standford Junior Univ.*, 489 U.S. 468, 478 (1989)) (alteration in original).

"[I]n Congress's judgment arbitration ha[s] more to offer than courts recognized—not least the promise of quicker, more informal, and often cheaper resolutions for everyone involved." *Epiq Sys.*, 584 U.S. at 505 (noting that arbitration allows parties to resolve their claims for "lower costs greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes."). Thus, "'[b]y agreeing to arbitrate a statutory claim, a party does not forgo the

substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" *Gilmer*, 500 U.S. at 26 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1986)) (alteration in original).

The FAA permits a party to move to compel arbitration when an opposing party refuses to arbitrate as required by a valid arbitration agreement. *Id*. at 25. On a motion to compel arbitration, the court must conduct "a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether that particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) (citing *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 711 (3d Cir. 1990), overruled on other grounds by *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 85 (2002)). The "presumption in favor of arbitrability" applies to both steps. *Id*. In this vein, the Supeme Court has explained that "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). If the court finds these two requirements to be present, the court *must* compel arbitration irrespective of the merits of the issue. *Id*. at 649-50 ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims."); *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22 (noting "Congress's clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.").

Further, contracting parties do not need to physically sign an agreement in order to enforce it. *See Rothschild v. Pac. Companies*, No. 23-CV-01721-LJC, 2025 WL 690388, at *6 (N.D. Cal. Mar. 4, 2025) ("[C]ontracts do not need to be signed to be enforceable…"); *see also BMO Harris Bank, N.A.*, 2014 WL 3952945, at *4 (E.D. Pa. Aug. 11, 2014) (loan companies had click-wrap

agreements with the Plaintiff and they were considered contracting parties' even though Plaintiff was the only party to sign the agreement. The Court found these non-signatory entities could enforce arbitration provisions by virtue of their contracting party status.). Other courts have consistently agreed with this Court that contracting parties who are not signatories may nonetheless enforce an arbitration agreement, provided they are parties to it.  "[A]signature is not required to bind [] parties to a contract…" *Trujillo v. Volt Mgmt. Corp.*, 846 F. App'x 233, 236 (5th Cir. 2021); *Hicks v. Hartman Income Reit, Inc.*, No. 3:23-CV-1294-X, 2023 WL 8437057, at *2 (N.D. Tex. Dec. 4, 2023) (same); *Bruzzese v. Chesapeake Expl., LLC*, 998 F. Supp. 2d 663, 674 (S.D. Ohio 2014) (same); "[A] signature is not always required to establish a binding contract." *Advanced Disposal Servs. Tennessee Holdings, Inc. v. Lusk Disposal Servs., Inc.*, 478 F. Supp. 3d 716, 722 (E.D. Tenn. 2020) (same); *Com. Standard Ins. Co. v. Garrett*, 70 F.2d 969, 974 (10th Cir. 1934) (same); *In re Washington Mut., Inc.*, 421 B.R. 143, 148 (Bankr. D. Del. 2009) (same); *Skyrise Constr. Grp., LLC v. Annex Constr., LLC*, No. 18-CV-381, 2019 WL 699964, at *3 (E.D. Wis. Feb. 20, 2019), <u>aff'd,</u> 956 F.3d 950 (7th Cir. 2020) (same); *Asesores y Consejeros Aconsec CIA, S.A. v. Glob. Emerging Markets N. Am., Inc.*, 841 F. Supp. 2d 762, 767 (S.D.N.Y. 2012) (same).

If the motion to compel can be decided "based on the face of a complaint, and documents relied upon in the complaint," a motion-to-dismiss standard should be used; otherwise, the summary judgment standard should be applied. *Adler v. Gruma Corp.*, 135 F.4th 55, 63 (3d Cir. 2025) citing *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (quotation marks omitted). Under a summary judgment standard, the moving party bears the initial burden of showing that the non-movant has failed to establish one or more essential elements of its case, and, once that initial burden is met, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Guidotti at 773*

quoting *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. 2548 (1986) (quoting Fed.R.Civ.P.

56(e)).

**IV.    PLAINTIFF AGREED TO ARBITRATE HIS CLAIMS INDIVIDUALLY AND LENDVIA IS ENTITLED TO ENFORCE THIS ARBITRATION AGREEMENT.**

### A.  Plaintiff Entered into a Valid Arbitration Agreement.

Plaintiff's claims against LendVia are governed by the FAA. *See* 9 U.S.C. § 2. This Court

has made it clear that "[i]n a federal question case, [we] look to the choice of law principles of the

forum state to determine which state's law applies." *Sunline USA LLC v. Ezzi Grp., Inc.*, 708 F.

Supp. 3d 585, 598 (E.D. Pa. 2023) (quoting *Gregoria v. Total Asset Recovery, Inc.*, No. 12-4315,

2025 WL 115501, at *3 (E.D. Pa. Jan. 8, 2015)). And while Pennsylvania's choice-of-law rules

typically require a three-step inquiry, this inquiry is "truncated" by the existence of a choice-of-

law provision in a contract. *Id.* (citing *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir.

2007)). Indeed, where a choice-of-law provision exists, Pennsylvania courts generally honor them.

*Id.* ("Pennsylvania courts generally enforce choice-of-law provisions in contracts.") (quoting

*Echols v. Pelullo*, 377 F.3d 272, 275 (3d Cir. 2004)); *see also Kruzits v. Okuma Mach. Tool, Inc.*,

40 F.3d 52, 55 (3d Cir. 1994) ("Pennsylvania courts generally honor the intent of the contracting

parties and enforce choice of law provisions in contracts executed by them.").

Though this Court sits in Pennsylvania, the Terms of Use specify that it is to be "treated as

though [it] were executed and performed in Las Vegas, Nevada and shall be governed by and

construed in accordance with the substantive laws of the State of Nevada without regard to its

conflict of law principles." Ex. B – Website Terms of Use; Ex. D – Decl. P. Sadeghi. It further

states that this principle "includ[es] without limitation this Agreement's interpretation[.]" Ex. B –

Website Terms of Use. Accordingly, this Court will look to the choice-of-law principles of the

forum state, which is Pennsylvania, to determine which state's law applies. Since Pennsylvania honors choice-of-law provisions and the Terms of Use specify Nevada law, Pennsylvania's choice-of-law rules confirm that Nevada law governs the Terms of Use.

To determine whether a valid arbitration agreement exists, this court "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Like most jurisdictions, Nevada adheres to "basic contract principles requir[ing], for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005) (citing *Keddie v. Beneficial Ins., Inc.*, 580 P.2d 955, 956 (Nev. 1978)).

The form Plaintiff filled out on https://upfinances.com/apply is undoubtedly a clickwrap agreement. A clickwrap agreement is one in which "a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Oberstein v. Live Nation Entmt., Inc.*, 60 F.4th 505, 513 (9th Cir. 2023) (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). In accordance with this definition, the Website required Plaintiff to signify his affirmative acceptance of the consent language containing the Terms of Use by checking a box and clicking the "Submit" button to proceed. Clickwrap agreements are grounded in and reviewed "consistent with basic principles of contract law." *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1088 (9th Cir. 2020).

"Courts routinely find clickwrap agreements to be enforceable." *Oberstein*, 60 F.4th at 513; *see also Keebaugh v. Warner Bros. Entmt. Inc.*, 100 F.4th 1005, 1014, 1021 (9th Cir. 2024) (quoting same and finding that the online agreement is "conspicuous and puts the reasonable user on notice that they are agreeing to be bound by the Terms of Service."); *Evans v. PayPal, Inc.*, No. 22-15979, 2023 WL 6058490, at *1 (9th Cir. Sept. 18, 2023) (finding that PayPal sufficiently

demonstrated that plaintiffs entered into agreement where "PayPal produced a PayPal employee's declaration describing the process by which each plaintiff signed up for his or her PayPal account (including a screenshot of a checkbox assenting to the User Agreement that must be selected, as well as a button stating 'agree and create account.'"). The Ninth Circuit has even stated that "clickwrap represents 'clearest manifestations of assent' and is 'certainly the easiest method of ensuring the terms are agreed to[.]" *Oberstein*, 60 F.4th at 514 (quoting *Berman*, 30 F.4th at 856-58).

Here, Plaintiff assented and was well aware of the arbitration terms, which were clearly and prominently displayed in the consent language directly above the "Submit" button that Plaintiff affirmatively clicked. Ex. A – Verified Consent; Ex. D – Decl. P. Sadeghi; Ex. E – Decl. R. Adhikary; Ex. F – Decl. E. Ovalle. The arbitration provision was not hidden or buried; rather, it was presented in a manner sufficient to inform any reasonable user of its existence. Ex. A – Verified Consent; Ex. D – Decl. P. Sadeghi. While Plaintiff now denies visiting the website and entering personal information—including full name, date of birth, Social Security number, phone number, email, and current address—the level of *accurate* detail provided and the video capturing Plaintiff's consent strongly contradicts that claim. Ex. A – Verified Consent; Ex. C – Plaintiff's Discovery Production.

Even assuming Plaintiff's denial, the website's presentation satisfies the standard for inquiry notice. Ex. A – Verified Consent; Ex. E – Decl. R. Adhikary. Inquiry notice will establish an enforceable contract where "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856. Under the first prong, notice is conspicuous where it is "displayed in a

font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id.* Under the second prong, unambiguous assent requires the user to be "explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Id.* at 857.

Under the first prong, the Website offered Plaintiff reasonably conspicuous notice of the relevant terms. Because the Website places the consent language above the "Submit" button, users are forced to see it before submitting the form. Ex. A – Verified Consent; Ex. E – Decl. R. Adhikary. The text of the consent language appears in black on a white background, except for the hyperlinked Terms of Use and Privacy Policy, which are underlined and highlighted in bright blue lettering. Ex. A – Verified Consent. The formatting is clear, and the size is consistent with the rest of the webpage. *Id.* Further, the consent language warns by clicking submit, the user is agreeing to the Terms of Use, "includ[ing] binding arbitration." *Id.* And should the user choose to click on the Terms of Use, he would be confronted with a document, the first page of which contains the following in all capital letters and bold font:

> These terms contain a binding arbitration agreement and a class action waiver. These provisions require you to arbitrate any disputes or claims you have with us on an individual basis. You will not be able to participate in a class action or multi-party arbitration. You have the right to opt out of this requirement.

Ex. A – Verified Consent; Ex – B Website's Terms of Use. As such, users are given clear notice.

Under the second prong, users are also advised that clicking constitutes assent to the Terms of Use. The consent language states that "[b]y checking this box and clicking SUBMIT, I express my understanding and consent electronically via E-sign that I acknowledge and agree to the Privacy Policy and Terms of Use, which includes binding arbitration." Ex. A – Verified Consent. The second prong is therefore satisfied.

Thus, Plaintiff was provided with conspicuous notice that by checking the box and clicking submit as shown in the video capture, Ex. A – Verified Consent, he was manifesting his agreement with the Website's Terms of Use. As such, Plaintiff assented to the arbitration agreement therein. Further, the Terms of Use stated that "[a]s used herein the terms 'we', 'our' and 'us' refer to LendVia, LLC[.]" Ex – B Website's Terms of Use. Thus, not only is the Clickwrap Agreement valid, but LendVia is a direct contracting party to the agreement.

**B.  Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement.**

In evaluating the scope of arbitration agreements, federal policy dictates that courts should strongly favor compelling arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995). An arbitration clause is broad if it covers "all disputes arising out of a contract[,]" and narrow if it covers only specific types of disputes. Under a broad provision like the one at issue, a presumption of arbitrability applies and "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Commc'ns Workers of Am.*, 475 U.S. at 650 (internal citation omitted).

"Parties to an arbitration agreement may specify the issues they choose to arbitrate, may agree on a set of procedural rules to use during the arbitration, and may limit with whom they choose to arbitrate their disputes." *Stolt-Nielsen*, 559 U.S. at 664. This includes class action waivers. Indeed, the Supreme Court has explained that "under the FAA, class or collective action waivers in arbitration agreements are enforceable even if state law would find those provisions unconscionable or against state public policy." *Reno v. Western Cab Co.*, No. 2:18-cv-00840, 2020 WL 5606897, at *4 (D. Nev. Sept. 18, 2020) (discussing the effect of *Concepcion*, 563 U.S. at 343-44).

Although Plaintiff now seeks to pursue a class action, he agreed to the following class action waiver:

> You and we agree that each of us may bring a Dispute against the other only on our own behalf, and not on behalf of a government official or other person or entity, or a class of persons or entities. You and we agree, if we are a party to a proceeding not to participate in a class action, a class-wide arbitration, a claim brought in a private attorney general or representative capacity, or a consolidated claim involving another person's use of the Site or our services.

Ex – B Website's Terms of Use. This language is unequivocal and plainly enforceable under the FAA.

The Arbitration Agreement undisputably encompasses Plaintiff's claims. The Agreement provides that "any and all disputes or claims that have arisen or may arise between you and us (including any affiliates, officers, directors, employees, and agents) … including all claims under 47 U.S.C. § 227 et. seq. [the TCPA] and related state statutes" are to be resolved "exclusively through final and binding arbitration." Ex – B Website's Terms of Use. And the Terms of Use specifically state that "the terms 'we', 'our' and 'use' refer to LendVia, LLC [.]" *Id.* Needless to say, Plaintiff's claims fall within "any and all disputes or claims[,]" and invoke 47 U.S.C. § 227(c). As such, this Court should either dismiss this matter or stay the case. *See Reno*, 2020 WL 5606897, at *6 (compelling arbitration and dismissing plaintiffs' claims).

## C.  LendVia May Enforce the Arbitration Agreement.

### 1.  LendVia may enforce the Arbitration Agreement as a non-signatory.

LendVia may enforce the Arbitration Agreement because it expressly includes LendVia as part of the defined contracting entity. Contracting parties do not need to physically sign an agreement in order to enforce it. *See BMO Harris Bank, N.A.,* 2014 WL 3952945, at *4 (E.D. Pa. Aug. 11, 2014) (loan companies had click-wrap agreements with the Plaintiff and they were

considered contracting parties' even though Plaintiff was the only party to sign the agreement. The Court found these non-signatory entities could enforce arbitration provisions by virtue of their contracting party status.).

The Third and Ninth Circuits both apply ordinary principles of contract and agency law in determining whether a non-signatory may enforce an arbitration agreement. *White v. Sunoco Inc*., 189 F. Supp. 3d 486, 492 (E.D. Pa. 2016), aff'd, 870 F.3d 257 (3d Cir. 2017) ("When asked to enforce an arbitration agreement against a nonsignatory, we ask whether he or she is bound by that agreement under traditional principles of contract and agency law."); *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986) ("[N]onsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles"); *see also Murphy v. DirecTV, Inc.,* 724 F.3d 1218, 1234 (9th Cir. 2013) (acknowledging that a non-signatory may seek enforcement of an arbitration agreement through basic contract principles, including equitable estoppel, third-party beneficiary doctrine, and agency).

Although LendVia is a non-signatory to the Arbitration Agreement, it may nevertheless enforce the Arbitration Agreement through basic contract principles as a contracting party. Other courts have consistently agreed with this Court that contracting parties who are not signatories may nonetheless enforce an arbitration agreement, provided they are parties to it. "[A]signature is not required to bind [] parties to a contract…" *Trujillo*, 846 F. App'x at 236 (5th Cir. 2021); *Hicks v. Hartman Income Reit, Inc.*, No. 3:23-CV-1294-X, 2023 WL 8437057, at *2 (N.D. Tex. Dec. 4, 2023) (same); *Bruzzese v. Chesapeake Expl., LLC*, 998 F. Supp. 2d 663, 674 (S.D. Ohio 2014) (same); "[A] signature is not always required to establish a binding contract." *Advanced Disposal Servs. Tennessee Holdings, Inc. v. Lusk Disposal Servs., Inc.*, 478 F. Supp. 3d 716, 722 (E.D. Tenn. 2020) (same); *Com. Standard Ins. Co. v. Garrett*, 70 F.2d 969, 974 (10th Cir. 1934) (same); *In re*

*Washington Mut., Inc.*, 421 B.R. 143, 148 (Bankr. D. Del. 2009) (same); *Skyrise Constr. Grp., LLC v. Annex Constr., LLC*, No. 18-CV-381, 2019 WL 699964, at *3 (E.D. Wis. Feb. 20, 2019), <u>aff'd</u>, 956 F.3d 950 (7th Cir. 2020) (same); *Asesores y Consejeros Aconsec CIA, S.A. v. Glob. Emerging Markets N. Am., Inc.*, 841 F. Supp. 2d 762, 767 (S.D.N.Y. 2012) (same).

Here, LendVia is clearly a contracting party to the Arbitration Agreement because the agreement itself expressly includes LendVia as part of the defined contracting entity. Ex – B Website's Terms of Use. The Terms of Use define "we," "our," and "us" to include "Lendvia LLC" and its affiliated entities, and the arbitration clause binds users to resolve disputes with "us (including any affiliates, officers, directors, employees, and agents)." *Id.;* Ex. F – Decl. E. Ovalle. This language shows that LendVia was not a mere third-party mentioned in passing, but was intended to be bound by—and benefit from—the agreement.

Moreover, under the reasoning in *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988), even nonsignatories may be bound by (or enforce) a contractual clause like a forum selection provision where the claims against them "relate in some way to the rights and duties" established under the agreement. Just as in *Manetti-Farrow*, where Gucci America— though not a signatory—was found to fall within the scope of the forum clause due to its deep involvement in the contractual relationship, LendVia is equally integrated into the contract at issue. LendVia's role as a named recipient of data, marketer of services, and a key actor in the transaction the agreement governs, renders it a true party in interest. Therefore, it may enforce the Arbitration Agreement despite not having physically signed the contract.

   2.   <u>LendVia May Enforce the Arbitration Agreement as a Third-Party Beneficiary.</u>

Even if the Court did not agree that LendVia was a contracting party to the agreement—it is—LendVia may still enforce the Arbitration Agreement as a third-party beneficiary.

"[N]onsignatories can enforce arbitration agreements as third party beneficiaries." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006); *Bouriez v. Carnegie Mellon Univ.*, 359 F.3d 292, 294 (3d. Cir.2004) (Common law theories used to bind a non-signatory to an arbitration clause include third party beneficiary, agency and equitable estoppel.). Under third party beneficiary theory, a court must look to the intentions of the parties at the time the contract was executed. *Cristales v. Scion Grp. LLC*, 478 F. Supp. 3d 845, 851 (D. Ariz. 2020) (citations omitted). "The existence of third party beneficiary status is determined by examining a written contract." *Wagner v. Clifton*, 62 P.3d 440, 442 (Utah 2002) (citation omitted). If a contract confers a benefit upon "a nonsignatory…[it would make] the nonsignatory a third party beneficiary of the arbitration agreement." *S.S. by & through Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019, 1034 (S.D. Cal. 2021).

Here, LendVia may enforce the arbitration agreement as a third-party beneficiary because the Plaintiff expressly agreed to terms that confer direct and substantial benefits on LendVia. The clickwrap agreement expressly states: "I grant express written consent for Better Debt Solutions and Lendvia to contact me by calls and/or text messages, including calls made using an automatic telephone dialing system or prerecorded voice messages, regarding my application status and scheduling." Ex. A – Verified Consent; Ex. E – Decl. R. Adhikary. This consent was not passive; Plaintiff manifested assent by checking a box and clicking submit, as evidenced by discovery, thereby agreeing to the website's "Privacy Policy and Terms of Use," which include a binding arbitration clause. In doing so, Plaintiff not only authorized LendVia to engage in direct outreach, but also enabled it to use Plaintiff's information to facilitate a potential financial transaction. These rights—contact authority, marketing permission, and data processing—are not incidental; they are central to the agreement's purpose of connecting consumers with service providers. By conferring

these express rights and privileges, the agreement reflects a clear intent to benefit LendVia and positions it within the category of third-party beneficiaries entitled to enforce the Arbitration Agreement.

      3.  <u>LendVia May Enforce the Arbitration Agreement Under the Principle of Estoppel.</u>

LendVia is entitled to enforce the Arbitration Agreement under the doctrine of equitable estoppel. "Nevada recognizes equitable estoppel's application in the arbitration context." *Dylag v. W. Las Vegas Surgery Ctr., LLC*, 719 F. App'x 568, 570 (9th Cir. 2017). "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir.2006) (internal quotation marks and citation omitted). The Ninth Circuit, citing *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008), emphasized that "the subject matter of the dispute [must be] intertwined with the contract providing for arbitration" in order for equitable estoppel to apply. *See Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009).

Even though Plaintiff does not expressly invoke the Arbitration Agreement, his claims necessarily depend on its terms—specifically, whether he gave prior express consent to be contacted. That question cannot be resolved without reference to the website submission and the governing Terms of Use, which include both the consent language and an arbitration clause. Under prong (1) of the equitable estoppel doctrine, a signatory cannot assert claims that are "intertwined with" or dependent on the terms of a contract while seeking to avoid its arbitration provision. *Comer*, at *1101. Plaintiff's core allegation is that LendVia lacked the valid consent to place calls. *See* ECF 1, Compl. ¶¶5, 33, 45, and 55. LendVia's defense—and its right to enforce arbitration— rests on the fact that Plaintiff did provide such consent through his submission on upfinances.com, which is governed by a written agreement. Ex. A – Verified Consent; Ex. E – Decl. R. Adhikary.

Accordingly, Plaintiff's claim and LendVia's defense are both inextricably tied to the contract's terms, and equitable estoppel permits LendVia to compel arbitration.

### D. The Delegation Clause Authorizes the Arbitrator to Decide the Issue of Whether Lendvia Can Enforce the Agreement as a Non-Signatory.

Indeed, "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." *First Options,* 514 U.S. at 943 (1995). And where the parties "clearly and unmistakably" delegate this power to the arbitrator, "a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 3, 69 (2019) (quoting *First Options*, 514 U.S. at 944).

1. <u>The Arbitration Agreement Contains a Valid Delegation Clause.</u>

"A court must enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator[.]" *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015). Clear as day, the Arbitration Agreement states that disputes are to be submitted "to a single arbitrator under the then-current Commercial Arbitration Rules of the American Arbitration Association (AAA)" and that "[t]he arbitrator will decide whether the Dispute can be arbitrated." Ex. B – Website's Terms of Use.

"[I]ssues concerning arbitrability can be delegated to the arbitrator so long as the delegation is clear." *See Johnson v. Oracle Am., Inc.*, 764 F. App'x 607, 608 (9th Cir. 2019). "[T]he question of [arbitrability]… is properly addressed by the arbitrator, not the Court." *Cadena v. Am. Honda Motor Co.*, No. CV 20-511-MWF (PJWX), 2020 WL 3107797, at *8 (C.D. Cal. June 10, 2020). "The Ninth Circuit has held and recently reaffirmed that the incorporation of arbitration rules…constitutes clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability. *Golden Boy Promotions LLC v. Haymon*, No. CV153378JFWMRWX, 2015

WL 12827758, at *3 (C.D. Cal. Aug. 18, 2015). "Relevantly, the arbitration clause in the [Arbitration] Agreement states: 'The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate, and the arbitrability of the Dispute. The arbitrator will decide whether the Dispute can be arbitrated.'" *Id.*; Ex. B – Website's Terms of Use. Accordingly, "it is up to the arbitrator, and not this Court, to determine [arbitrability]." *Cadena*, 2020 WL 3107797, at *8.

However, even ignoring this language, the AAA Rules submit the arbitrability question to the arbitrator. Specifically, they state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Rule R7(a). By itself, "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130.

The combination of the Arbitration Agreement's express language and its incorporation of the AAA rules makes it undeniable that the arbitrability question is delegated to the arbitrator. As such, this Court's analysis should end here.

2.   The Delegation Clause authorizes the arbitrator to decide the issue of enforceability.

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *See Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). "The question of whether a non-signatory can enforce the Agreement is an issue pertaining to the 'enforceability, applicability, or interpretation of this Agreement' and must be resolved by the arbitrator." *See Jackson v. Zep Mfg.*, No. 5:23-CV-2622, 2024 WL 1175713, at *6 (E.D. Pa. Mar. 19, 2024) (quoting *Henry Schein, Inc.*, 139 S. Ct. at 529

(holding that when a "contract delegates the arbitrability question to an arbitrator, a court ... possesses no power to decide the arbitrability issue"); *Altenhofen v. Energy Transfer Partners, LP.*, No. 20-200, 2020 WL 7336082 (W.D. Pa. Dec. 14, 2020) (holding that whether the non-signatory defendant can enforce the arbitration agreement is a question reserved for arbitration); *Robertson v. Enbridge (U.S.) Inc.*, No. CV 19-1080, 2020 WL 5751641, at *9 (W.D. Pa. July 31, 2020)  (recommending that the motion to compel arbitration filed by a non-signatory to an arbitration agreement be granted because the question of whether a non signatory can enforce the agreement is an issue pertaining to the "interpretation, applicability, [or] enforceability" of the Arbitration Agreements between the plaintiff-employee and the employer), *report and recommendation adopted*, No. 2:19-CV-1080, 2020 WL 5702419 (W.D. Pa. Sept. 24, 2020).

Here, the Terms of Use on upfinances.com contain a binding arbitration agreement that expressly delegates arbitrability issues to the arbitrator: "The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate, and the arbitrability of the Dispute. The arbitrator will decide whether the Dispute can be arbitrated." Ex. B – Website's Terms of Use. Courts in the Third and Ninth Circuit have repeatedly held that where an agreement delegates arbitrability to the arbitrator, as it does here, a court "possesses no power to decide the arbitrability issue." *Jackson v. Zep Mfg.*, 2024 WL 1175713, at *6 (E.D. Pa. Mar. 19, 2024) (quoting *Henry Schein, Inc.*). And where the agreement incorporates AAA rules—as this one does—that is "clear and unmistakable" evidence that arbitrability is for the arbitrator to decide. *Golden Boy Promotions LLC v. Haymon*, 2015 WL 12827758, at *3 (C.D. Cal. Aug. 18, 2015).

*Becker v. Delek US Energy, Inc.*, 39 F.4th 351 (6th Cir. 2022), is instructive and supports enforcement of the arbitration agreement and delegation clause in this case especially given the stronger factual record here. In *Becker*, the plaintiff argued that no agreement to arbitrate existed

with the defendant, Delek, because Delek was a non-signatory to the employment agreement. *Id.* at 355. The Sixth Circuit found that issues of enforceability and scope must be decided by the arbitrator when, like here, a valid delegation clause exists. *Id.* Becker's challenge rested on the fact that Delek was not named in the agreement. Despite this, the court held that challenges to the delegation provision based on enforceability such as whether a non-signatory can compel arbitration must go to the arbitrator when a clear delegation clause exists.  *Id.* at 356.

This case presents a stronger basis for compelling arbitration than *Becker*. Here, unlike in *Becker*, LendVia *is* expressly identified in the arbitration agreement accepted by Plaintiff. Furthermore, while both plaintiffs claimed that no arbitration agreement existed, in this case, discovery revealed concrete evidence showing that Plaintiff visited the website, entered his personal information, and clicked "Submit" directly beneath clear language referencing the arbitration terms—actions captured in a screen recording. Ex. A – Verified Consent; Ex. E – Decl. R. Adhikary. That level of proof goes beyond what was present in *Becker* and confirms both the formation of the agreement and Plaintiff's assent. Accordingly, under *Becker*, the delegation clause must be enforced, and the arbitrator—not the court—should decide any questions about who can enforce the agreement and whether the dispute is arbitrable.

Similarly, *Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279 (5th Cir. 2023), is also instructive and ultimately supports compelling arbitration in this case when viewed in contrast to the facts and language at issue here. In *Rogers*, the court declined to compel arbitration because the arbitration clause was narrowly written to apply only to disputes between the recruiter and contractor, with no mention of the defendant company. *Id.* at 289-290. The court emphasized that arbitration is a matter of contract and that courts must first determine whether a valid agreement to arbitrate exists under ordinary contract principles. *Id.* at 288.

That threshold question is clearly met here. Unlike in *Rogers*, the arbitration clause in this case does not limit its scope to only certain parties. Instead, it expressly names LendVia as a party covered by the agreement. Ex. B – Website's Terms of Use; Ex. F – Decl. E. Ovalle. Plaintiff affirmatively agreed to those terms by clicking "Submit" directly beneath clear language referencing both the arbitration terms and LendVia. Ex. A – Verified Consent; Ex. E – Decl. R. Adhikary. That's a much stronger showing of assent than in *Rogers*, where the agreement didn't even bother to mention the defendant.

While *Rogers* properly held that courts must determine contract formation, the facts in this case present a much clearer basis for finding a valid arbitration agreement that encompasses LendVia. Even as a non-signatory, legal principles such as third-party beneficiary status or equitable estoppel apply to LendVia. Tellingly, LendVia is named in the contract, and Plaintiff expressly agreed to arbitrate disputes when he used the website and clicked Submit. Ex. A – Verified Consent; Ex. E – Decl. R. Adhikary. So, *Rogers'* reasoning actually supports sending this case to arbitration.

Because the Plaintiff expressly agreed to these Terms, which name LendVia as a party to the agreement and bind him to arbitrate all disputes—including those under the TCPA—with LendVia, the question of whether LendVia can enforce the agreement as a non-signatory is itself subject to arbitration. Accordingly, the Court must refer all issues—including enforceability—to the arbitrator and compel arbitration and this Court's analysis should end here.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, LendVia respectfully requests that this Court compel Plaintiff to arbitrate his claims individually.

Dated: July 24, 2025                          TROUTMAN AMIN, LLP

_/s/ Jenniffer Cabrera_
Jenniffer Cabrera (*pro hac vice*)
1825 NW Corporate Blvd, Ste. 100
Boca Raton, Florida 33431
Telephone: 561-834-0883
jenniffer@troutmanamin.com
*Counsel for Defendant LendVia, LLC*

## **CERTIFICATION**

Pursuant to E.D. Pa. L.R. 7.1(d), I hereby certify that on July 24, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

*/s/ Jenniffer Cabrera*
Jenniffer Cabrera