IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOUREY NEWELL, *individually and on behalf of a class of all persons and entities similarly situated*,<br><br>    Plaintiff,<br><br>    v.<br><br>LendVia, LLC,<br><br>    *Defendant.* | CIVIL ACTION<br>NO. 25-1018 |

**Pappert, J.** August 15, 2025

### MEMORANDUM

Jourey Newell filed this putative class action against LendVia LLC for alleged violations of the Telephone Consumer Protection Act. LendVia then moved pursuant to the Federal Arbitration Act to compel arbitration of Newell's claims, asserting that Newell agreed to arbitrate when he submitted an online loan application. The initial motion and Newell's response relied on facts outside the Complaint, so the Court denied the motion without prejudice pursuant to *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013), and ordered the parties to exchange discovery on the issue of arbitrability. That discovery has concluded and LendVia now renews its motion. Issues of fact remain with respect to "the making of the arbitration agreement," so the Court will hold the motion in abeyance and proceed to a trial.

\*

The Federal Arbitration Act "enables judicial enforcement of a contract to arbitrate after the court 'hear[s] the parties' and is 'satisfied that the making of the agreement for arbitration . . . is not in issue.'" *Young v. Experian Info. Sols., Inc.*, 119

1

F.4th 314, 318 (3d Cir. 2024) (alterations in original) (quoting 9 U.S.C. § 4). A court will thus compel arbitration if it concludes that (1) the parties formed a valid arbitration agreement, and (2) the dispute before it falls within the scope of that agreement. *Id.*[1] The Court reviews the parties' submissions using the summary judgment standard set out in Rule 56. *Guidotti*, 716 F.3d at 776. If the submissions create "a genuine issue of material fact" with respect to "the making of the agreement," the Court must proceed to trial of the issue. *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 406 (3d Cir. 2020); 9 U.S.C. § 4. The parties' submissions here create two genuine issues of material fact.

The first is whether Newell agreed to be bound by upfinances.com's terms of use. LendVia, contending that Newell did so agree, points to a "certificate of authenticity" generated by Verified Consent, a firm that "provides independent documentation of a consumer's interaction with a website." (Adhikary Aff. ¶ 3, ECF No. 28-5.) The certificate states that on December 8, 2024, a user with a specified IP address visited upfinances.com/apply from an iPhone. (Certificate of Authenticity, ECF No. 28-1.) The certificate also includes a screen recording that shows the user's "inputs, mouse movements and clicks." *Id.* The screen recording purports to show the user inputting various pieces of personal information, including the name "Jourey Newell," the email address jnewell1311@yahoo.com, and a social security number, telephone number and birthdate that belong to Plaintiff Newell. *See* (Ovalle Decl. ¶ 5, ECF No. 28-6); (Newell

---

[1] These questions are both governed by state contract law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 832 (2009). The parties disagree over whether Nevada or Pennsylvania law governs here, but the Court won't dwell on that dispute because none of the issues to be resolved at this point turn on principles of contract law.

Decl. ¶¶ 23–24, ECF No. 31-3).  The recording also captures the user checking a box situated next to the following disclosure: "By checking this box and clicking SUBMIT, I express my understanding and consent . . . that I acknowledge and agree to the Privacy Policy and Terms of Use, which includes binding arbitration."  (Sadeghi Decl. ¶ 10, ECF No. 28-4.)  The words "Terms of Use" were hyperlinked and if clicked, would have taken the user to the full Terms of Use.  (*Id.* ¶¶ 10–14); (Adhikary Decl. ¶ 9, ECF No. 28-5.)

For his part, Newell doesn't dispute that LendVia's certificate of authenticity and screen recording establish that *somebody* agreed to be bound by the Terms of Use.  Rather, he says the user whose actions were captured by Verified Consent is not him.  (Resp. 4–12.)  Indeed, he maintains that he has never in his life visited upfinances.com, (Newell Decl. ¶ 11), and suggests that the real upfinances.com user must have obtained his personal information illicitly, (Resp. ¶ 12, ECF No. 31).  He states in his declaration that his phone number and social security number were disclosed in a recent data breach and then used by an unknown person to, among other things, register for electricity service in Texas.  (Newell Decl. ¶ 24.)[2]  In light of the competing evidence, a factfinder could reasonably find for either party.

---

[2]     Newell also states in his declaration that the service provider for the IP address from which the loan request originated was AT&T, and that the IP address "geolocates to Chambersberg, Pennsylvania."  (Newell Decl. ¶¶ 19–20.)  If true, these facts would suggest that the IP address isn't his because he lives in King of Prussia, Pennsylvania and doesn't use AT&T phone or internet service.  (*Id.* ¶¶ 18, 21.)  But affidavits in support or opposition of a motion "must be made on personal knowledge" and "set out facts that would be admissible in evidence."  Rule 56(c)(4). Nothing in Newell's declaration explains how he came to know the identity of the relevant internet service provider and the "geolocat[ion]" of the IP address.  These are not obviously things he would know (like his social security and telephone numbers), so without an explanation, there's no basis for the Court to conclude that he personally knows them and is not, for example, reciting inadmissible hearsay.  And Newell's other exhibits don't establish these facts either.  He attaches only a "declaration of authenticity of AT&T records" from an AT&T employee that says the employee "was unable to find any information responsive to [his] request."  (Lang Decl., ECF No. 31-1.)  But Newell doesn't provide the language of the request he sent to AT&T, and it's otherwise unclear how the employee's declaration could establish that AT&T is the service provider.

The second issue of fact is what upfinances.com's Terms of Use actually said on December 8, 2024. LendVia attached to its motion a document that purports to be the Terms of Use in effect on that date. (Terms of Use, ECF No. 28-2.) It also attached declarations by the President of LendVia and an Account Onboarding Specialist at Utel USA LLC (the company who owns upfinances.com), each stating that the terms attached to LendVia's Motion were operative beginning January 1, 2023 and remained so on December 8, 2024. (Sadeghi Decl. 10–14); (Ovalle Decl. ¶¶ 6–7.) The relevant provision begins on page twelve with a bolded, all-caps heading that says "mandatory agreement to arbitrate on an individual basis." (Terms of Use 12.) The terms then provide that the user and LendVia agree to arbitrate any dispute "relating in any way to any aspect of our relationship," and that an arbitrator also will decide whether a given dispute is arbitrable. (*Id.* at 1, 12–13.)

Newell doesn't dispute (nor could he) that LendVia's proffered Terms of Service contain an arbitration agreement. He disputes only that LendVia's proffered terms were operative on December 8. (Resp. 12–16.) He attached to his motion a screenshot that purports to show what the Terms of use page looked like a month before the December 8 loan-application submission. (Upfinances.com Nov. 9 2024 Version at 1, ECF No. 31-2.) The November 2024 version of the webpage was captured by Internet Archive's "wayback machine," (*id.*), a tool that "allows users to browse versions of pages and documents as they existed at various points in history," *Perera v. Att'y Gen. U.S.*, 536 F. App'x 240, 242 n.3 (3d Cir. 2013).[3] The terms of use that appear on this version

---

[3] Courts have admitted at trial screenshots from the wayback machine in similar circumstances, so long as the proponent produces an employee of Internet Archive or someone else with "experience in its operation and reliability." *Gavrieli Brands LLC v. Soto Massini (USA) Corp.*,

of the site are much different from the terms of use that LendVia's affiants say were operative from January of 2023 onward. These terms purport only to create an "agreement between upfinances.com and [the user]," with no mention of LendVia anywhere on the webpage. (*Id.*) The terms also state at the outset that they "contain a mandatory arbitration provision," but the remainder of the page says nothing further about arbitration. (*Id.*) A trial is necessary to determine which version of the Terms of Service were operative on December 8.[4]

*

Notwithstanding these issues of fact, Newell argues that the Court should deny the motion outright because LendVia cannot, as a matter of law, compel arbitration here. First, Newell says that even if he agreed to the mandatory-arbitration provision, the agreement is unenforceable because LendVia failed to comply with the Electronic Signatures in Global and National Commerce ("E-Sign") Act. (Resp. 21–22.) He specifically invokes 15 U.S.C. § 7001(c), which sets out the conditions a party must satisfy if it wishes to provide legally mandated written information to another party *via* "electronic record." Newell doesn't explain what information LendVia or Utel was

---

No. CV 18-462 2019 WL 10248462, at *2 (D. Del. Apr. 18, 2019) (collecting cases); *accord United States v. Bansal*, 663 F.3d 634, 667 (3d Cir. 2011).

[4] As Newell recognizes, additional issues may arise if the factfinder concludes that Newell was the user who submitted the loan request *and* that the relevant terms of use are the ones Newell has proffered. (Resp. 17–18.) Specifically, the Court may have to resolve (1) whether those terms contain an arbitration agreement, and (2) whether LendVia may enforce the agreement despite the fact that the Terms of Use do not refer to LendVia. LendVia has not had an opportunity to brief these issues, so the Court will defer their resolution.

obligated, but failed, to provide in writing, so he hasn't established noncompliance with § 7001(c).[5]

Newell additionally argues that LendVia is prohibited from enforcing the arbitration agreement by Pennsylvania's Fictitious Names Act. (Resp. 20–21.) That Act bars an "entity which has failed to register a fictitious name" from "maintain[ing] any action in any tribunal of this Commonwealth[6] until such entity shall have" registered its fictitious name. 54 Pa. Cons. Stat. § 331(a). The Act also applies to "any successor or assignee" of an entity that has failed to register a fictitious name, prohibiting such successors or assignees from maintaining an action "on any right, claim or demand arising out of a transaction with respect to which [its predecessor or assignor] used such fictitious name." *Id.*

Newell doesn't contend that LendVia itself is in breach of its obligation to register a fictitious name. Rather, he says that LendVia is barred from enforcing the arbitration agreement because Utel USA has not registered the name upfinances.com. (Resp. 20.) The argument is meritless because Newell makes no attempt to show that LendVia is a successor or assignee of Utel USA. A successor is one who "replaces or follows a predecessor" or "[a] corporation that, through amalgamation, consolidation, or

---

[5] Newell's argument also appears to rest on an erroneous premise. He vaguely refers to written-information requirements under TCPA and says that "TCPA consent, *and any associated arbitration agreement*, must comply with" the E-SIGN Act. (Resp. 22 (emphasis added).) But an arbitration agreement is severable from the remainder of the contract in which it's contained, so rules that might invalidate consumer consent under TCPA won't necessarily invalidate an arbitration agreement contained in the same instrument. *See Rent-A-Center*, 561 U.S. at 70–71.

[6] Though the statute, by its terms, appears only to bar lawsuits in Pennsylvania state courts, federal courts have apparently assumed that the statute applies to federal suits as well. *See, e.g.*, *Icebox-Scoops v. Finanz St. Honore, B.V.*, 676 F. Supp. 2d 100, 108–09 (E.D.N.Y. 2009); *Miller v. O'Brien Constr., Inc.*, No. 4:19-CV-01611, 2020 WL 2571487, at *1–2 (M.D. Pa. May 21, 2020); *Leonetti's Frozen Foods, Inc. v. Am. Kitchen Delights, Inc.*, No. CIV.A. 11-6736, 2012 WL 1138590, at *3, *3 n.3 (E.D. Pa. Apr. 4, 2012).

other assumption of interests, is vested with the rights and duties of an earlier corporation." *Successor*, Black's Law Dictionary (12th ed. 2024). And an assignee is "[s]omeone to whom property rights or powers are transferred by another." *Assignee*, Black's Law Dictionary (12th ed. 2024). Nothing in the record suggests that LendVia now possesses rights, duties or powers previously possessed by Utel USA.

Finally, Newell argues that the online loan-application form contains insufficiently conspicuous notice that submission of the request constitutes agreement to be bound by the hyperlinked Terms of Use. (Resp. 23–24.) But Newell's arguments are all based on the version of the loan-submission form that Newell says *currently* appears on upfinances.com/apply, not the version that appears in the screen recording captured by Verified Consent on December 8. *Compare* (Resp. 23), *with* (Adhikary Decl. ¶ 9). Newell doesn't attach a screenshot of the supposed current form or offer any other evidence of what the form and its terms-of-use notice look like. Nor does he offer any evidence that the current loan-application form, rather than the one shown in the screen recording, is the one that the user saw on December 8. The Court thus has no basis to evaluate Newell complaints about the terms-of-use notice, nor any basis to conclude that the notice he complains of was the one that appeared to the user who submitted the loan request on December 8.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.

7